The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

EAGLE HARBOR HOLDINGS, LLC, and MEDIUSTECH, LLC,

    Plaintiffs,

    v.

FORD MOTOR COMPANY,

    Defendant.

NO.   3:11-cv-05503-BHS

**DEFENDANT FORD MOTOR COMPANY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S CLAIM CONSTRUCTION ORDER**

DEFENDANT FORD MOTOR COMPANY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S CLAIM CONSTRUCTION ORDER
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

# TABLE OF CONTENTS

I. INTRODUCTION .......................................................................................................... 1

II. ARGUMENT ................................................................................................................ 1

    A. "processor for selectively connecting…" ('073 Patent, Claim 1). ..................... 1

        1. Plaintiffs unequivocally represented during prosecution that their invention did not include systems that could not connect multiple devices simultaneously. ........................................................................... 2

        2. The Special Master's construction is supported by the specification. ........................................................................................... 6

    B. "process[es] the . . . data [types] received from the additional audio [third data] source" ('268 Patent, Claims 1, 11, and 21). ............................................. 7

        1. The claim language and the prosecution history confirm that the "processes the . . . data" term requires the system to be capable of processing data from two sources concurrently. .................................... 8

III. CONCLUSION ........................................................................................................... 15

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - i
No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

# TABLE OF AUTHORITIES

**Page(s)**

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
    182 Fed. Appx. 994 (Fed. Cir. 2006) ...................................................................................9

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008) .........................................................................................13

*Cordis Corp. v. Boston Scientific Corp.*,
    658 F.3d 1347 (Fed. Cir. 2011) .........................................................................................13

*Ekchian v. Home Depot, Inc.*,
    104 F.3d 1299 (Fed. Cir. 1997) .........................................................................................13

*Graham v. John Deere Co.*,
    383 U.S. 1 (1966) ..............................................................................................................13

*Honeywell Int'l v. ITT Indus., Inc.*,
    452 F.3d 1312 (Fed. Cir. 2006) ...........................................................................................7

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
    474 F.3d 1323 (Fed. Cir. 2007) .........................................................................................12

*Ormco Corp. v. Align Tech., Inc.*,
    498 F.3d 1307 (Fed. Cir. 2007) .........................................................................................12

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
    717 F.3d 929 (Fed. Cir. 2013) ...........................................................................................12

*Springs Window Fashions LP v. Novo Indus., L.P.*,
    323 F.3d 989 (Fed. Cir. 2003) ....................................................................................passim

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - ii
No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## I. INTRODUCTION

Plaintiffs argue that the Special Master erred in construing the terms "processor for selectively connecting" ('073 patent, claim 1) and "processes the data [types]" ('268 patent, claims 1, 11, and 21) on the grounds that he somehow "misinterpreted" the prosecution histories. Dkt. 169 at 5, 6. As the Special Master correctly found, however, the Plaintiffs made unequivocal statements regarding the scope of their claimed inventions during prosecution of the asserted patents. Having argued to the Patent Office that their claimed inventions required certain elements in order to obtain the patents, the Plaintiffs cannot now properly argue that such elements are not required elements of the claims. The Special Master's constructions of the claim 1 "processor for selectively connecting" and "processes the data [types]" terms properly held Plaintiffs to the representations they made during prosecution and should be adopted.

## II. ARGUMENT

### A. "processor for selectively connecting…" ('073 Patent, Claim 1).

Plaintiffs object to the Special Master's construction of the claim term "processor for selectively connecting" as that term is used in Claim 1 of the '073 patent. Plaintiffs argue that the Special Master erred in construing the term to require a first audio source connected to a first set of output devices "while" (*i.e.*, at the same time that) a second audio source is connected to a second set of output devices. Dkt. 169 at 2-3. Plaintiffs make two principal arguments in support of their objection: first, that the Special Master's construction is allegedly not supported by the file history; and, second, that the construction is purportedly contrary to the '073 patent's written description. *Id*. at 4-7. Both of these arguments fail. The Special Master was correct to conclude that asserted claim 1 requires a system that allows for simultaneous connections between audio sources and output devices.

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 1
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

1. **Plaintiffs unequivocally represented during prosecution that their invention did not include systems that could not connect multiple devices simultaneously.**

As the Special Master correctly found, in order to obtain the '073 patent, Plaintiffs specifically represented to the Patent Office that their alleged invention did *not* include systems that could not connect multiple audio sources simultaneously.

During prosecution, the Examiner rejected the claims (including asserted claims 1 and 10) over U.S. Patent No. 6,275,231 to Obradovich.  '073 File History [Aug. 1, 2002 Office Action] at Dkt. 90-2, pp. 89-91 (rejecting claims 1-5 and 10-13 as obvious over Juntunen in view of Obradovich).  Obradovich discloses connecting multiple audio sources to multiple output devices sequentially.  Figure 18 shows multiple audio sources (including a radio, cassette, and CD player) and multiple output devices (multiple speakers):



U.S. Patent No. 6,275,231 to Obradovich ("Obradovich '231 patent") [Dkt. 149-2, pp. 2-38] at Fig. 18.  The specification then specifically states that the Obradovich system can connect the different audio sources to different sets of output devices based on user selection:

DEFENDANT FORD MOTOR COMPANY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S CLAIM CONSTRUCTION ORDER - 2
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

> [The] user is able to distribute *selected audio signals* to *driver and passenger locations*. These signals are communicated, through processor 103, *to such subsystems as headsets, earphones, directional speakers*, etc.

*Id*. at 20:16-20; *see also* '073 File History [Aug. 1, 2002 Office Action] at Dkt. 90-2, p. 91 (noting that Obradovich disclosed a vehicle audio system in which "[s]pecific speakers within the vehicle can be controlled to output the sound based on the user's selection").[1]

The Obradovich system, however, could only connect a single audio source to one set of output devices at a time. *See* Obradovich '231 patent [Dkt. 149-2, pp. 2-38] at Fig. 18, 20:16-20. As a result, in order to overcome the Examiner's rejection, Plaintiffs amended claim 1 to further require selectively connecting a second audio source to a second set of audio output devices. '073 File History [Jan. 7, 2003 Supp. Amend.] at Dkt. 90-1, p. 88. Plaintiffs then specifically argued in connection with this amendment that that their invention—including claims 1 and 10 (which already required connecting multiple sources to multiple outputs)—was novel over Obradovich because it allowed a passenger to listen to one audio source "while" the driver listened to a different audio source:

> *Referring to claims 1-5 and 10-13*, the examiner acknowledges that Juntunen does not disclose a processor for selectively connecting different audio source to the audio output devices. However, the Examiner states that Obradovich discloses an audio system that allows a user to relocate speakers by clicking and dragging speaker icons.
>
> Claim 1 has been amended to clarify that a processor selectively connects a first one of the identified audio sources identified on the display to a first set of the audio output devices and selectively connecting a second one of the audio sources to a second set of the audio output devices. This is shown in FIG. 2 and described on page 4 starting at line 23.
>
> Selecting different speaker locations is different from selecting different audio sources for different speakers. *This allows a passenger in a rear part of the vehicle to listen to a portable CD player on rear speakers while a drive[r] can listen to a cell phone on the front speakers. This is not possible with the audio systems described in Juntunen or Obradovich.*

---

[1] All emphases have been added unless otherwise indicated.

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 3
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

'073 File History [Jan. 7, 2003 Supp. Amend.] at Dkt. 90-1, pp. 86-87.  Plaintiffs were thus unequivocal that their alleged invention—including both claims 1 and 10—did ***not*** include systems in which only one device could be connected at a time.[2]

Based on this representation, the Patent Office allowed asserted claims 1 and 10.  *See* '073 File History [Feb. 20, 2003 Office Action] at Dkt. 90-2, p. 73.  The Patent Office specifically stated that the claims were purportedly distinct over the art because, among other limitations, they both included the "selectively connecting" limitation:

> The following is an examiner's statement of reasons for allowance: ***The above claims [claims 1- 13] are allowed for the following reasons: None of the prior art of record disclose*** the claimed vehicle audio system comprising a wireless audio sensor configured to wirelessly detect different audio sources brought into or next to a vehicle and identify the detected audio sources on a display; audio output devices for outputting audio data; and ***a processor for selectively connecting a first one of the identified audio sources identified on the display to a first set of audio output devices and selectively connecting a second one of the audio sources to a second set of the audio output devices.***

*Id*.

Plaintiffs now advance a number of arguments in support of their assertion that they should not be held to their representations during prosecution.  Each is wrong.

***First***, Plaintiffs argue that the Special Master "misunderstood" Obradovich.  Dkt. 169 at 4. Specifically, Plaintiffs argue that Obradovich only discloses physically or manually moving speakers, and that it does not disclose connecting different audio sources to different sets of speakers.  *Id*. at 4-5, 6-7.  This is incorrect.  Although Obradovich does disclose moving speakers, it also explicitly discloses connecting different audio sources (*e.g*., a radio, cassette,

---

[2] Plaintiffs' suggestion that claim 10 is broader than claim 1 (Dkt. 169 at 3) is incorrect.  Both claims 1 and 10 require "selectively connecting" multiple audio sources to multiple output devices.  *Compare* Claim 1 ("a processor for selectively connecting a first one of the identified audio sources on the display to a first set of the audio output devices and selectively connecting a second one of the audio sources to a second set of the audio output devices") *with* Claim 10 ("a processor for selectively connecting the different audio sources to the audio output devices").  Moreover, as the above excerpt from the prosecution history shows, Plaintiffs distinguished both claims 1 and 10 over the prior art on the same grounds—that their claimed system allowed a "passenger in a rear part of the vehicle to listen to a portable CD player on rear speakers ***while*** a drive[r] can listen to a cell phone on the front speakers." '073 File History [Jan. 7, 2003 Supp. Amend.] at Dkt. 90-1, pp. 86-87.

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 4
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

or CD player) to different sets of output devices (*e.g.*, headsets, earphones, or pairs of directional speakers). *See* Obradovich '231 patent [Dkt. 149-2, pp. 2-38] at Fig. 18, 20:16-20. Specifically, it describes a system in which the "user is able to distribute *selected audio signals . . . to such subsystems as headsets, earphones, directional speakers*, etc." *Id*. at 20:16-20. A user could therefore select to connect the radio to the headsets, to a set of directional speakers, or to both. *Id.* In fact, this is precisely what the Patent Office found when it rejected the '073 claims over Obradovich. '073 File History [Aug. 1, 2002 Office Action] at Dkt. 90-2, p. 91 (noting that Obradovich disclosed a vehicle audio system in which "[s]pecific speakers within the vehicle can be controlled to output the sound based on the user's selection").[3]

*Second*, Plaintiffs argue that the Special Master misinterpreted the nature of the amendment to claim 1. Plaintiffs argue (for the first time) that the thrust of the amendment was merely to add the concept of connecting different sources to different *sets* of audio output devices. Dkt. 169 at 5. As an initial matter, this is contrary to Plaintiffs' own arguments during prosecution that their invention (after the amendment) was distinct because it allowed a passenger to listen to one audio source "while" the driver listened to a different source. '073 File History [Jan. 7, 2003 Supp. Amend.] at Dkt. 90-1, pp. 86-87. In any event, adding the concept of connecting different sources to different *sets* of audio output devices would not have created a distinction over Obradovich. Obradovich unequivocally discloses that the different audio sources (*e.g.*, a radio) could be connected to different *sets* of speakers (*e.g.*, head*sets*, earphones, or sets of directional speakers). *See* Obradovich '231 patent [Dkt. 149-2, pp. 2-38]

---

[3] Plaintiffs' current argument that the distinction they were drawing between Obradovich and their alleged invention was that Obradovich disclosed relocating speakers rather than selecting them (Dkt. 169 at 5) is also directly contrary to Plaintiffs' own statements in their initial claim construction brief. There, Plaintiffs argued that the distinction they were drawing over Obradovich was that their claimed invention could connect multiple sources to multiple output devices. *See* Dkt. 145 at 36 ("[T]he distinction over Obradovich … was that the claimed invention could connect <u>multiple audio sources</u> to <u>multiple audio outputs</u>, where the prior art described connecting <u>one audio source</u> to multiple audio outputs.") (emphasis in original).

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 5
No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

at 20:16-20 ("These signals are communicated, through processor 103, *to such subsystems as headsets, earphones, directional speakers*, etc."); *id*. at Fig. 18.

*Third*, Plaintiffs argue that the Special Master misinterpreted Plaintiffs' remarks during prosecution—that Plaintiffs offered simultaneous connection as merely "an example" of one use of the invention. Dkt. 169 at 6. But this argument cannot be reconciled with Plaintiffs' actual statements to the Patent Office. Plaintiffs represented that their invention was distinct over the prior art because it, unlike the prior art, allowed for simultaneous connections:

> This allows a passenger in a rear part of the vehicle to listen to a portable CD player on rear speakers *while* a drive[r] can listen to a cell phone on the front speakers. ***This is not possible with the audio systems described in Juntunen or Obradovich***.

'073 File History [Jan. 7, 2003 Supp. Amend.] at Dkt. 90-1, pp. 86-87; *id.* at 88 (amending claim). As the Special Master correctly found, Plaintiffs thus specifically disclaimed systems in which such simultaneous connections were not possible.[4]  Dkt. 165 at 26-27.

### 2. *The Special Master's construction is supported by the specification.*

Plaintiffs are also wrong that the Special Master's construction is inconsistent with the specification. The Special Master concluded—consistent with Plaintiffs' statements during prosecution—that the claimed invention must allow for multiple audio sources to be connected to multiple output devices at the same time. This does not require that the multiple sources must always *be* connected at the same time but rather only that the claimed system *allow* for simultaneous connection of the multiple devices. This is entirely consistent with the specification which describes a system that allows for audio sources to be connected to

---

[4] Plaintiffs argue that "while" could mean "whereas" and thus it is possible the patentees were not using it to convey any temporal meaning. Dkt. 169 at 6. But if "while" only meant whereas—meaning that a passenger could listen to one source at one time and a driver could listen to another source at a different time (*i.e*., sequential connection)—it would not have provided any distinction over Obradovich, which indisputably discloses the sequential connection of multiple audio sources to different output devices. *See* Obradovich '231 patent [Dkt. 149-2, pp. 2-38] at Fig. 18, 20:16-20. Accordingly, the context makes clear that Plaintiffs were using "while" in accordance with its plain meaning, to mean at the same time. Dkt. 149-2 [*American Heritage College Dictionary*, 4th Ed. Houghton Mifflin Co. (2004)] at 42 ("while... conj. 1….during the time that …. 2. At the same time that").

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 6
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

different speakers simultaneously.  *See* Dkt. 165 at 22-23, citing to '073, 4:55-5:2 (specification "specifically refers to sources (plural) being connected to outputs (plural), and reasonably conveys that the connections are simultaneous"); Obradovich '231 patent [Dkt. 149-2, pp. 2-38] at Fig. 2.[5]

\* \* \*

It is well-settled that a patentee cannot tell the Patent Office that a term means one thing in order to obtain a patent and then later argue it means something else in an attempt to establish infringement.  *See Honeywell Int'l v. ITT Indus., Inc.,* 452 F.3d 1312, 1318 (Fed. Cir. 2006) ("The public is entitled to take the patentee at his word and the word was that the invention is a fuel filter."); *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent."). Plaintiffs characterize their disagreement with the Special Master's construction as "limited" (Dkt. 169 at 3), but they seek to eliminate the element that they represented to the Patent Office was the distinguishing feature of their invention.  Plaintiffs should be held to the statements they made during prosecution.  The Special Master correctly concluded that the "selectively connecting" limitation of claim 1 requires a system that allows one passenger to listen to one audio source "while" another listens to a different audio source.  Dkt. 165 at 27, 30.

B.  **"process[es] the . . . data [types] received from the additional audio [third data] source" ('268 Patent, Claims 1, 11, and 21).**

The Special Master correctly concluded that the "processes the . . . data" term in the '268 patent requires the claimed system to be capable of processing data from two audio or data sources ***concurrently***.  The plain language of the claims requires the system to be connected to,

---

[5] Plaintiffs further argue that the language of claims 1 and 10, both of which indisputably require multiple connections between the audio sources and output devices, does not make clear that the connections must be simultaneous.  Dkt. 169 at 6.  But it is well-settled that the claim language must be viewed in light of the file history.  And Plaintiffs made clear during prosecution that the claimed multiple connections, in contrast to the prior art, were simultaneous.

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 7
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

and process data from, one source and an "additional" source. During prosecution, Plaintiffs confirmed that the claims required concurrent processing by definitively distinguishing their claimed invention from the prior art on the basis that their claimed invention could connect to, and process data from, multiple sources at the same time. *See, e.g.*, '268 File History [Apr. 22, 2011 Amendment] at Dkt. 106-1, p. 85 (unlike the claimed invention, the prior art "only describes a *single* electronic device 12 communicating with vehicle 14…."). Plaintiffs' representations to the Patent Office are dispositive. *See Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003).

During the claim construction hearing, Ford explained in detail how the claim language and file history require the processing of data from one audio or data source to occur concurrently with the processing of data from another audio or data source. Plaintiffs made no responsive argument on this term at the hearing. Despite that, Plaintiffs now object that the Special Master erred in concluding that the processing of data from the different sources must occur concurrently. Plaintiffs make two principal arguments: first, that the claim language does not require that the processing of data be concurrent; and second, that Plaintiffs' statements from the prosecution history do not constitute a disclaimer. Both arguments are without merit. Plaintiffs are improperly trying to use claim construction to recover subject matter that they told the Patent Office was in the prior art and thus *different* from their claimed invention.

1. ***The claim language and the prosecution history confirm that the "processes the . . . data" term requires the system to be capable of processing data from two sources concurrently.***

The three asserted independent claims of the '268 patent require either an "on-board processor" or a "vehicle audio system" to wirelessly receive and process data from one audio or data source, and to wirelessly receive and process data from an "additional" (or "third") audio or data source. *See* '268 patent, claims 1, 11, 21. The Special Master correctly found that, contrary to Plaintiffs' arguments, the plain language of the claims establishes that the system

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 8
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

needs to be connected to, and process data from, multiple audio or data sources at the same time.

Claims 1 and 21 of the '268 patent specifically require the system to connect to and process data from both "an audio source" and an *"additional"* audio source. '268 patent, 9:25-26, 31-41; 12:42-43, 46-50.  As the Special Master recognized, a source can be "additional" only if the system is already connected to another source.  *See* Dkt. 165 at 74 ("A person of ordinary skill in the art would expect that the term 'additional' conveys a concurrency requirement….").

Plaintiffs argue that the Special Master erred to the extent he relied on the word "additional" to indicate a requirement of concurrency, because the word "additional" appears in only two of the three asserted independent claims (claims 1 and 21).  But claim 11—the only disputed claim that does not use the word "additional"—requires the system to connect to, and process data from, both "second" and "third" data sources.  *See* '268 patent, 10:27-29, 35-41, 51-52, 61-67.  Although the claim does not use the term "additional," the same analysis applies: a claimed data source is "second" or "third" because other data sources are *already connected*. *See Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 182 Fed. Appx. 994, 998-99 (Fed. Cir. 2006) (noting the "established rule of claim interpretation that dictates that like

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 9
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1  terms should be construed consistently across related claims"). The Special Master thus

2  properly concluded that the claim language supports a concurrency requirement.[6]

3        As the Special Master also correctly recognized, the Plaintiffs confirmed this

4  concurrency requirement during prosecution. Specifically, Plaintiffs represented to the Patent

5  Office that the claimed invention must be able to not only **connect to** two sources concurrently,

6  but also **communicate with**—*i.e.*, receive and process data from—two sources concurrently.

7  The Special Master correctly found that these representations by Plaintiffs were binding and

8  that the claims thus had to be construed to require that data be processed ***simultaneously*** from

9  the different sources.

10       During the prosecution of the parent '739 patent to the asserted '268 patent, Plaintiffs

11 distinguished their alleged invention from the prior-art Bluetooth Specification version 1.1. As

12 illustrated in the figure below, the Bluetooth standard allows for multiple "slave" devices

13 (shown with black dots) to be connected to a "master" device (shown with a blue dot) at the

14 same time:

---

[6] The Special Master also found that "[t]he ***structure*** of the claims in the '268 patent indicates that two different audio or data sources must be connected, and the data must be processed, at the same time." Dkt. 165 at 77. The Special Master noted that claim 1 "repeats separate steps of identifying, connecting, configuring, and processing for each of a first and an 'additional' audio source." *Id*. at 74. He concluded that "repeating each of the limitations for the additional audio source . . . ***confirms the concurrency requirement***." *Id*. Plaintiffs argue that repeating these limitations for each of the audio sources does not suggest concurrency. *See* Dkt. 169 at 10. But Plaintiffs' argument would render the second set of limitations redundant. If (as Plaintiffs argue) the claims merely required connecting to, and processing data from, only one source at a time, the claim could simply recite a single set of limitations for connecting to, and processing data from, a device. Such a claim would cover the sequential—but not the concurrent—connection of multiple devices. The second set of limitations must be read to have a meaning, and the Special Master therefore correctly determined that "contrary to Medius' position[,] the structure of the claims more fairly suggests a ***concurrent*** processing than a sequential one." Dkt. 165 at 73-74.

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 10
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500



*See* Dkt. 155-9, p. 6 [Bluetooth Specification 1.1] at Fig. 1.2 (highlighted).  Despite the fact that Bluetooth was able to *connect* to multiple devices at the same time, the Bluetooth specification could *"communicate"*—*i.e.*, "stream[] data"—with only one device at a time.  As Plaintiffs told the Patent Office, "[Bluetooth is] restricted in connection capability to *only a single communications link* between one host device and 1 remote device for *streaming data*."  '739 File History [Aug. 14, 2008 Third Supp. Response] at Dkt. 93-1, p. 121 n.3.  Plaintiffs distinguished their invention from the Bluetooth standard on this basis, arguing that "in contrast" to Bluetooth, the invention of the parent '739 patent was novel because it "recites a method that *is not limited to communicating with one device* but instead *is able to communicate with <u>multiple</u> devices*."  *Id*.  In other words, while the prior-art Bluetooth standard allowed communication (streaming data) with only one device at a time, Plaintiffs

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 11
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1  represented that their invention was different because it allowed communication (streaming

2  data) with multiple devices at the same time.[7]

3        Plaintiffs repeated this distinction during the prosecution of the asserted '268 patent.

4  Specifically, Plaintiffs encountered the same issue—and made the same argument—when they

5  distinguished a prior-art patent to Witkowski.  The Witkowski patent explicitly disclosed using

6  the Bluetooth standard to communicate between audio devices in a vehicle.  *See, e.g.*, U.S.

7  Patent No. 7,257,426 to Witkowski ("Witkowski '426 patent"), 5:59-6:4 ("Each RF transceiver

8  10a and 10b operates in accordance with a suitable wireless communications protocol or

9  standard to enable wireless communications between the transceivers l0a and l0b. . . . ***The***

10  ***specific protocol or standard may be the Bluetooth communications standard*** . . .").  Just as

11  they did when attempting to overcome the Bluetooth reference during the '739 prosecution,

12  Plaintiffs distinguished their '268 patent from Witkowski on the grounds that, in contrast to

13  their alleged invention, Witkowski *"only describes a <u>single electronic device 12</u>*

14  *<u>communicating</u> with vehicle 14. . . ."*  '268 File History [Apr. 22, 2011 Amendment] at Dkt.

15  106-1, p. 85.

---

[7] Ford's primary argument is not that Plaintiffs' statements during the '739 patent prosecution, by themselves, constitute a disclaimer for the '268 patent claims, but rather that Plaintiffs' statements ***during the '268 patent prosecution—particularly when read in light of Plaintiffs' prior statements during the '739 prosecution***—constitute a clear disclaimer of claim scope.  It is well-settled that a parent application's prosecution history is part of the intrinsic evidence for a child patent and is therefore relevant for purposes of claim construction.  *See MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1327 (Fed. Cir. 2007) ("The RE '885 patent is the only one asserted in this litigation, but ***the entire prosecution history of its relatives is relevant to the claim construction analysis***.").  Thus, although the Special Master found that Plaintiffs' statements during the parent '739 patent prosecution were not, by themselves, sufficient to constitute a disclaimer for the child '268 patent since it used non-identical claim language (*see* Dkt. 165 at 75), the statements during the '739 patent prosecution are still relevant to understanding Plaintiffs' statements disclaiming subject matter during the prosecution of the child '268 patent.  Moreover, the Federal Circuit has held that where, as here, a patentee makes broad statements about the invention as a whole, a disclaimer in a parent application ***can*** create a disclaimer in a child patent, even where the claim language is not the same.  *See Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 943 n.8 (Fed. Cir. 2013) (confirming that, "when the disclaimer is directed to the scope of the invention as a whole," disclaimer attaches from statements made during prosecution of a parent application); *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007).

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 12
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

Plaintiffs thus repeatedly distinguished their claimed invention over the prior art—which allowed devices to be connected at the same time but communicate only one at a time—on the basis that their invention could connect to **and** communicate with (*i.e.*, process streaming data from) multiple sources at the same time. As the Special Master correctly concluded, Plaintiffs should be held to what they told the Patent Office. *See Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1356-57 (Fed. Cir. 2011) (finding prosecution disclaimer based on patentee's argument to Patent Office distinguishing prior art); *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374-75 (Fed. Cir. 2008) ("Claims should not be construed one way in order to obtain their allowance and in a different way against accused infringers.") (internal quotation omitted).[8]

Plaintiffs argue that the statements they made during prosecution do not clearly and unequivocally indicate that the connections to, and communications with, the two sources must be simultaneous. This cannot be reconciled with Plaintiffs' actual statements in prosecution. Plaintiffs distinguished their '268 patent from Witkowski on the grounds that, in contrast to their alleged invention, Witkowski ***"only describes a <u>single electronic device 12 communicating with vehicle 14</u>. . . ."*** '268 File History [Apr. 22, 2011 Amendment] at Dkt. 106-1, p. 85. The Special Master thus correctly concluded that Plaintiffs' statements during the prosecution of the '268 patent "cemented th[e] understanding" that the two different sources must be connected, and the data processed, at the same time. Dkt. 165 at 77; *see also Springs Window Fashions*, 323 F.3d at 994 ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'" (quoting *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1294 (Fed. Cir. 2000))).

---

[8] *See also Graham v. John Deere Co.*, 383 U.S. 1, 33 (1966) ("It is, of course, well settled that an invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office. . . . [C]laims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent."); *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection.").

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 13
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

Plaintiffs also argue that the Special Master erroneously treated the separate limitations of "connecting the source" and "processing the data" as the same limitation. This too is incorrect. The Special Master noted no fewer than four times that the "connecting" and "processing" required by the claims are separate steps. *See, e.g.*, Dkt. 165 at 74 ("claim 1 is a lengthy claim that repeats *separate steps* of identifying, **connecting**, configuring, and **processing** for each of a first and an "additional" audio source").[9] Indeed, Plaintiffs acknowledged that the Special Master "recognized that the claims require a separate set of independent elements or steps with respect to each source," including separate steps of "connecting" and "processing." Dkt. 169 at 9. Rather than conflating the "connecting" and "processing" limitations, the Special Master specifically noted that they are separate steps, and concluded that both the connecting to and processing of data from one source must occur concurrently with the connecting to and processing of data from the additional source. *See* Dkt. 165 at 77.[10]

* * *

The Special Master thus correctly concluded that "[t]he structure of the claims in the '268 patent indicates that two different audio or data sources must be connected, and the data must be processed, *at the same time*," and that "[t]his plain and ordinary understanding is confirmed by the prosecution history." Dkt. 165 at 77.

---

[9] *See also* Dkt. 165 at 75-76 ("At the time of a response submitted on April 22, 2011, application claim 1 required detection, **connection,** configuration, and **processing** for a single audio source brought into or next to a vehicle. Dependent claim 3 required the system to detect, **connect,** configure, and **process data** from an additional audio source."); *id*. at 77 ("The structure of the claims in the '268 patent indicates that two different audio or data sources must be **connected,** and the **data must be processed**, at the same time.").

[10] Moreover, Plaintiffs' statements during the prosecution of the '268 patent addressed both the "connecting" *and* "processing" (*i.e.*, communicating) limitations: "Claim 3 recites connecting both the audio source and an additional audio source to the on-board processor. . . . Both Witkowski and Stuempfle only describe a single **connection** between the vehicle and the data source. For example, Witkowski only describes a single electronic device 12 **communicating** with the vehicle 14 . . . ." '268 File History [Apr. 22, 2011 Amendment] at Dkt. 106-1, p. 85.

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 14
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

## III. CONCLUSION

In order to obtain the asserted patents, Plaintiffs made specific and unambiguous statements to the Patent Office about the scope of their purported inventions and the alleged differences between the claims and the prior art. Plaintiffs should be held to those representations. Ford therefore respectfully requests that Plaintiffs' objections be overruled and that the term "processor for selectively connecting," as it appears in claim 1 of the '073 patent, and the '268 patent term "process[es] the data [types]" be construed as the Special Master has proposed.

DATED: September 6, 2013

**SAVITT BRUCE & WILLEY LLP**

By:    /s/ *Duncan E. Manville*
      Duncan E. Manville, WSBA #30304
      Fax: (206) 749-0600
      Email: dmanville@sbwllp.com

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Michael J. Summersgill (*pro hac vice*)
Sarah Beigbeder Petty (*pro hac vice*)
60 State Street
Boston, Massachusetts 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
Emails: michael.summersgill@wilmerhale.com
        sarah.petty@wilmerhale.com

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Todd C. Zubler (*pro hac vice*)
Grant K. Rowan (*pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Tel.: (202) 663-6636
Fax: (202) 663-6363
Emails: todd.zubler@wilmerhale.com
        grant.rowan@wilmerhale.com

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 15
No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

|   |   |
|---|---|
| 1 |   |
| 2 | **BROOKS KUSHMAN P.C.** |
|   | Frank A. Angileri (*pro hac vice*) |
| 3 | John S. Le Roy (*pro hac vice*) |
|   | 1000 Town Center, 22nd Floor |
| 4 | Southfield, Michigan  48075 |
|   | Tel.:  (248) 358-4400 |
| 5 | Fax:  (248) 358-3351 |
|   | Emails: fangileri@brookskushman.com |
| 6 | jleroy@brookskushman.com |
| 7 |   |
|   | Attorneys for Defendant Ford Motor Company |

DEFENDANT FORD MOTOR COMPANY'S RESPONSE
TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL
MASTER'S CLAIM CONSTRUCTION ORDER - 16
No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**CERTIFICATE OF SERVICE**

I certify that this pleading was filed electronically with the Court and thus served simultaneously upon all counsel of record, this 6th day of September, 2013.

          */s/ Duncan E. Manville*
          Duncan E. Manville

DEFENDANT FORD MOTOR COMPANY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S CLAIM CONSTRUCTION ORDER - 17
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500