UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EAGLE HARBOR HOLDINGS, LLC, and MEDIUSTECH, LLC,

    Plaintiffs,

 v.

FORD MOTOR COMPANY,

    Defendant.

CASE NO. C11-5503 BHS

ORDER ADOPTING CLAIM CONSTRUCTIONS

This matter comes before the Court on Plaintiffs Eagle Harbor Holdings, LLC and MediusTech, LLC's, ("Plaintiffs") objections and motion to modify and adopt order of the special master regarding claim construction (Dkt. 169) and Defendant Ford Motor Company's ("Ford") motion to adopt-in-part and modify-in-part the special master's claim construction order (Dkt. 171). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants in part and denies in part the motions for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On June 30, 2011, Plaintiffs filed a complaint for patent infringement against Ford. Dkt. 1. On October 20, 2011, Plaintiffs filed an Amended Complaint asserting U.S. Patents Nos. 6,615,137, 6,629,033, 6,778,073 ("'073 Patent"), 7,146,260, 7,778,739, 7,793,136, 8,006,117, 8,006,118, 8,006,119, 8,020,028, and 8,027,268 (the "'268 Patent") (the "Patents in Suit"). Dkt. 33.


1  On February 24, 2012, Plaintiffs filed a second amended complaint asserting the

2 Patents in Suit.  Dkt. 61.  On February 25, 2013, the parties agreed to a stipulated

3 dismissal of Plaintiffs' claim of infringement of the 6,629,033 patent.  Dkt. 135.

4  On March 18, 2013, the Court appointed Lawrence Graham as a Special Master to

5 assist the Court with the issues of claim construction.  Dkt. 140.

6  On May 10, 2013, both parties filed opening claim construction briefs.  Dkts. 145

7 & 148.  On May 31, 2013, both parties responded.  Dkts. 151 & 153.

8  On June 14, 2013 and July 11, 2013, the Special Master held claim construction

9 hearings.  Dkts. 160 & 164.  On July 29, 2013, the Special Master filed his order

10 regarding claim constructions of terms of the Patents in Suit.

11  On August 19, 2013, Plaintiffs filed objections to two of the Special Master's

12 proposed constructions (Dkt. 169) and Ford filed objections to three of the proposed

13 constructions (Dkt. 171).  On September 16, 2013, the parties responded.  Dkts. 173 &

14 174.

15 **II. DISCUSSION**

16  The parties disputed the construction of the following twelve terms: kinematic

17 state, steering queue, processor for selectively connecting . . . audio sources,

18 multiprocessor system, distributed processing system, application, select and identify,

19 reconfigure/configure to run an application, dynamically configure . . . application, take

20 over control and operation of the new device, processes the data received from the

21 additional audio source, and link.  With regard to the terms that neither party has objected

22

to or requested modification, the Court grants the motions to adopt the special master's constructions.

**A.     Processing Audio**

The parties disputed two phrases in the '073 Patent and three claims in the '268 Patent regarding the processing of audio sources.

   **1.     Claim 1, '073 Patent**

Claim 1 of the '073 consists of four phrases. Dkt. 1, Exh. D, col. 7. The last phrase provides as follows:

> a processor for selectively connecting a first one of the identified audio sources identified on the display to a first set of the audio output devices and selectively connecting a second one of the audio sources to a second set of the audio output devices.

*Id*. The parties disputed the construction of this phrase, and the special master construed the phrase as follows:

> a processor for selectively connecting a first one of the identified audio sources identified on the display to a first set of the audio output devices **while** selectively connecting a second one of the audio sources to a second set of the audio output devices.

Dkt. 165 at 30 (emphasis added). Plaintiffs object to the special master's substitution of "while" for "and." Dkt. 169 at 5–10.

In this case, the special master concluded that claim 1 includes a simultaneity limitation. Dkt. 165 at 21–28. First, the special master concluded that the specification "lacked sufficient clarity" and "provides little guidance as to the interpretation" of the claim on the issue of simultaneous connections. *Id*. at 22–23. Plaintiffs, however, contend that there is "strong intrinsic evidence in support of [their] construction . . . ."

Dkt. 169 at 7.  The Court disagrees because, at most, the specification discloses an embodiment in support of Plaintiffs' construction.  The disclosure of an embodiment does not provide guidance on the issue of whether that particular embodiment is within the scope of the particular claim at issue.  Therefore, the Court adopts the special master's conclusion that the specification is inconclusive on the issue of simultaneous connections.

After addressing the specification, the special master turned to the prosecution history, which is the last piece of intrinsic evidence that a court should consider when construing the claims of the patent.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).  The prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent.  *Id*.  In certain instances, the prosecution history may provide guidance of an applicant's intent to specifically limit the scope of a given claim term.  *Id*. at 1319.  For example,

> where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender.

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).  The Federal Circuit, however, has "declined to apply the doctrine of prosecution disclaimer where the alleged disavowal of claim scope is ambiguous."  *Id*.; *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1347 (Fed. Cir. 2001) (refusing to limit the ordinary meaning of the claim because the alleged disclaimer in the file wrapper was at best "inconclusive").

1  In this case, Plaintiffs assert that the special master based the simultaneity

2 limitation on a disavowal of claim scope.  Dkt. 169 at 7 ("the Special Master erred in

3 concluding that there was a clear, unambiguous, and unequivocal disclaimer of claim

4 scope.")  The special master, however, correctly concluded that the finding of a

5 disavowal was not necessary because "the remarks [in the prosecution history] confirm

6 the construction that would already be discerned from the claim language and written

7 description."  Dkt. 165 at 27.  In other words, the special master consulted the

8 prosecution history "as support for" the plain reading of the claim and not "to limit the

9 meaning of a claim term that would otherwise be read broadly."  *800 Adept, Inc. v. Murex*

10 *Securities, Ltd.*, 539 F.3d 1354, 1364–1365 (Fed. Cir. 2008).  Therefore, the Court rejects

11 Plaintiffs' contention that the special master incorrectly found disavowal based on the

12 prosecution history.

13  With regard to the plain reading of the claim, the Court agrees with the special

14 master's construction.  One of ordinary skill in the art would read the word "and" as

15 requiring the first set of sources and devices to be connected at the same time as the

16 second set of sources and devices.  This reading is especially true in light of the

17 prosecution history, which in part provides as follows:

18  Selecting different speaker locations is different from selecting different audio sources for different speakers. [Plaintiffs' invention] allows
19  a passenger in a rear part of the vehicle to listen to a portable CD player on rear speakers while a drive[r] can listen to a cell phone on the front
20  speakers. This is not possible with the audio systems described in [the prior art].

21

22

Dkt. 90-1 at 87. Substituting the word "while" for "and" clarifies this meaning. Therefore, the Court adopts the special master's construction for claim 1 of the '073 Patent.

### 2. Claim 10, '073 Patent

The special master concluded that no construction was required for the disputed phrase in claim 10 of the '073 Patent. Dkt. 165 at 30. Ford objects and argues that the construction should be consistent with the construction of the phrase in claim 1 because the terms are substantively identical. Dkt. 171 at 5-10. The terms are not substantively identical and claim 10 includes the additional limitation of assigning priority values. Therefore, neither the principle of consistency nor the prosecution history requires claim 10 to be construed identical to claim 1. The Court denies Ford's motion on this issue.

### 3. The '268 Patent

The parties disputed terms in claims 1, 11, and 21 of the '268 Patent. The special master construed the terms as follows:

> As used in the '268 patent, the limitation "process the data received from the additional audio source," found in claim 1, must occur concurrently with the limitation "process the data received from the audio source."
> The limitation "process the data received from the third data source," found in claim 11, must occur concurrently with the limitation "process the data received from the second data source."
> The limitation "processes the identified data types received from the additional audio source," found in claim 21, must occur concurrently with the limitation "processes the identified data types received from the audio source."

Dkt. 165 at 77. Plaintiffs object to the inclusion of the concurrent limitations. Dkt. 169 at 10–15.

First, Plaintiffs argue that any disavowal of claim scope was not clear and unequivocal. Dkt. 169 at 11–12. The special master's construction, however, is **not** based on the principle of prosecution history disclaimer. The special master only referred to the prosecution history to provide support for the plain reading of the claim. Therefore, the Court denies Plaintiffs' motion on this issue.

Second, Plaintiffs argue that the concurrency limitation is "otherwise unsupported by the patent claims and specifications." Dkt. 169 at 11, 13–15. The Court disagrees. With regard to claims 1 and 21, they refer to an "additional" audio source, which conveys the idea of dealing with concurrent sources. Finding that one of ordinary skill in the art would understand the claim to include such a requirement is reasonable. Plaintiffs' arguments to the contrary are unpersuasive. With regard to claim 11, it refers to processing multiple data sources. Although the claim does not include the word "additional," the plain reading of the claim conveys the idea that the data from the multiple sources is processed concurrently. Therefore, the Court denies Plaintiffs' motion on this issue and adopts the special master's constructions.

**B.     "kinematic state"**

The special master construed the term "kinematic state" to mean "one or more of distance, position, velocity, acceleration, deceleration, and/or direction." Dkt. 165 at 11. "Ford respectfully submits that this is incorrect for three reasons." Dkt. 171 at 11. Ford's arguments are based on extrinsic evidence, intrinsic evidence, and the purpose of the invention. *Id*. at 11–14. With regard to the intrinsic evidence, Ford's argument is based on embodiments wherein the kinematic state includes a combination of variables

and reading the patent specification so that it is internally consistent. Ford concedes that the specification discloses an embodiment wherein the kinematic state is position data alone (Dkt. 171 at 12 (citing 165 at 6)), but contends that the particular sentence in question "cannot be read in isolation." Dkt. 171 at 12. The Court disagrees because construing the claim term to cover this disclosure does not render the specification internally inconsistent. While it is true that the majority of the disclosed embodiments refer to embodiments with multiple variables, the inventor is entitled to the entire scope of his disclosures, which includes determining kinematic state by position alone. Therefore, the Court denies Ford's motion on this issue.

With regard to the extrinsic evidence, Ford's arguments are based on dictionary definitions of "kinematic." Dkt. 171 at 11. Dictionaries and other external sources can be useful in claim construction, "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1322–23 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996)). Adopting Ford's extrinsic evidence would contradict a construction ascertained by reading the patent. Therefore, the Court denies Ford's motion on this issue.

With regard to the purpose of the invention, Ford argues that the "the claimed collision avoidance system would not work if 'kinematic state' could be merely position data alone." Dkt. 171 at 14 (citing '137 Patent, col. 8, ll. 26–28). The special master adequately addressed this argument (Dkt. 165 at 7–8). Moreover, the Court agrees with Plaintiffs that "[n]othing in the patent precludes the application of the disclosed

techniques to avoid collisions with stationary objects using position data alone in circumstances where it can be assumed or inferred that the object is, in fact, stationary." Dkt. 173 at 14. Therefore, the Court denies Ford's motion on this issue and adopts the special master's construction of the term "kinematic state."

**C.     Multiprocessor Terms**

The parties requested the special master to construe the terms "multiprocessor system," a "multiprocessor network," or "a processor system, wherein a processor is coupled to at least a second processor." The special master found the terms to be introductory preambles, and, "[a]s such, they should be given their plain and ordinary meaning as defined by the limitations that follow these terms, and need not be separately construed." Dkt. 165 at 38. Ford objects to this conclusion and requests that the Court construe the terms by adopting its proposed constructions. Dkt. 171 at 14–22.

Whether to treat a preamble term as a claim limitation is "determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003). Generally, a preamble is not limiting if it "offers no distinct definition of any of the claimed invention's limitations, but rather merely states, . . . the purpose or intended use of the invention." *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). A preamble may be limiting, however, "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes, Inc.*, 182 F.3d at 1305). For instance, "[w]hen limitations in the body of the claim

rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005) (quoting *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003)).

In this case, Ford argues that the special master's determination that the terms are non-limiting preambles "reads the alleged invention out of the claims." Dkt. 171 at 16. The special master, however, concluded that a "person of ordinary skill in the art would understand that the limitations following the preamble or the 'configured to' transition would define the requirements of the multiprocessor system." Dkt. 165 at 36–37. The Court agrees and finds that adopting Ford's additional limitations would only add unnecessary and redundant limitations. Moreover, Ford requests that, for the terms in question, the Court apply the special rules of construction instead of the general rule that preambles are not limiting. Ford has failed to persuade the Court that the special rules should apply to these terms. Therefore, the Court denies Ford's motion on this issue.

Ford also argues that the special master is incorrect because the terms appear in both the preamble and the body of the claims in question. Dkt. 171 at 20. While Ford is correct that case law supports the proposition that duplicative use of a preamble term or phrase in the body of a claim specifically limits the scope of that claim, there is no case law for the proposition that the construction of the second, more limiting use of a term should be applied to every other use of the term throughout six patents. Herein lies the problem with the parties' agreement that the terms "should be interpreted to mean the same thing." In order to correctly apply the law and dispense of any prejudice to Ford,

1  the Court will allow an additional request by motion to construe specific duplicative uses

2  of these terms. Ford must identify a standalone term that is not in a preamble and is not

3  followed by the "configured to" phrase. With this limited exception, the Court adopts the

4  special master's constructions of these terms.

### III. ORDER

6  Therefore, it is hereby **ORDERED** that Plaintiffs' objections and motion to

7  modify and adopt order of the special master regarding claim construction (Dkt. 169) and

8  Ford's motion to adopt-in-part and modify-in-part the special master's claim construction

9  order (Dkt. 171) are **GRANTED in part** and **DENIED in part** as stated herein, and the

10  Court **ADOPTS** the special master's claim constructions (Dkt. 165).

11  Dated this 13th day of November, 2013.

_____
BENJAMIN H. SETTLE
United States District Judge