The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| EAGLE HARBOR HOLDINGS, LLC, and MEDIUSTECH, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | NO.   3:11-cv-05503-BHS<br><br>**DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER**<br><br>NOTE ON MOTION CALENDAR:<br>January 10, 2014 |

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER
Case No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## I. INTRODUCTION

Pursuant to the Court's Order Adopting Claim Constructions (Dkt. 184), Defendant Ford Motor Company respectfully requests that the Court construe certain "standalone" uses of the "multiprocessor" claim terms. For these uses of the "multiprocessor" terms, Ford requests that the Court adopt the following constructions, which are tailored to the specific patent families in which those terms appear:

- For patents in the '260 family ('260, '739), the multiprocessor terms should be construed as *"two or more processors that run a dynamic configuration system to control the execution of applications across processors."*

- For patents in the '136 family ('136, '028, '118, '119), the multiprocessor terms should be construed as *"two or more processors that run a secure real-time executive to control the execution of applications across processors."*

As explained below, there are numerous "standalone" uses of the multiprocessor terms that can and should be construed under the Court's order. (Dkt. 184 at 11.) Moreover, construction of these terms is particularly important here because Ford's proposed constructions capture an important feature of the patents—common software on multiple processors (specifically, the DC system in the '260 family, and the SRE in the '136 family)—that the patents themselves characterize as the critical part of the alleged "invention." Without further claim construction, the alleged "invention" would effectively be read out of the claims.

## II. BACKGROUND

The parties' original claim construction briefing addressed what the parties jointly referred to as the "multiprocessor" claim terms, including the terms "multiprocessor system" and "multiprocessor network."[1] (*See* Dkt. 165 [Order of the Special Master Regarding Claim Construction] at 30.) The parties both briefed these terms pursuant to an agreement that the terms would be construed to have the same meaning throughout all of the six asserted patents in which they appeared. (*Id.*; Dkt. 184 at 10.)

---

[1] The "multiprocessor" terms appear in six of the eight asserted "Processor Patents": U.S. Patent Nos. 7,146,260; 7,778,739; 7,793,136; 8,020,028; 8,006,118; and 8,006,119.

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER - 1
Case No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

In his Order Regarding Claim Construction, the Special Master found that the terms "multiprocessor system" and "multiprocessor network" were non-limiting. (Dkt. 165 at 37-38.) According to the Special Master, those terms were used either (1) in a non-limiting preamble, or (2) in the body of claim but in a "nominative" sense that also was non-limiting—*i.e.*, as "providing a descriptive name to the set of limitations that follow, and in which the further limitations completely set forth the invention." *Id*. at 37. The Special Master therefore found that the "multiprocessor" terms did not need to be construed. *Id*. at 38 ("The terms 'multiprocessor system,' 'multiprocessor network,' . . . are used in a nominative sense and are defined by the limitations that follow. As such, they should be given their plain and ordinary meaning as defined by the limitations that follow these terms, and need not be separately construed.").

In its Order Adopting Claim Constructions, the Court agreed with the Special Master that the "multiprocessor" terms were non-limiting where they appeared either (1) in the preamble of a claim; or (2) in the body of a claim, followed by the phrase "configured to." (Dkt. 184 at 10-11.) The Court recognized, however, a third usage of the "multiprocessor" terms—so-called "standalone" uses of the terms, where the term "is ***not*** in a preamble and is ***not*** followed by the 'configured to' phrase."[2] *Id.* The Court acknowledged that "case law supports the proposition that duplicative use of a preamble term or phrase in the body of a claim ***specifically limits the scope of that claim***." *Id*. at 10; *see also Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 810-11 (Fed. Cir. 2002) (where the disputed term appears in both the preamble and the body of a claim, the term is limiting). The Court therefore stated that Ford could file an additional motion "to construe specific duplicative uses of these terms." Dkt. 184 at 10-11.

Pursuant to the Court's order, Ford hereby requests that the Court construe the terms "multiprocessor system" and "multiprocessor network" in the remaining asserted claims where

---

[2] Unless otherwise noted, all emphases have been added.

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER - 2
Case No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

the terms are neither in a preamble nor followed by the "configured to" phrase.  Ford has identified those uses in the attached Exhibit A.[3]

The Court also expressed concern that the multiprocessor terms should not necessarily be given the same meaning across patents.  *See* Dkt. 184 at 10 ("[T]here is no case law for the proposition that the construction of the second, more limiting use of a term should be applied to every other use of the term *throughout six patents*.").  In light of the Court's order, Ford proposes that the multiprocessor terms be given constructions tied directly to the specifications associated with each patent and the common software described in those specifications.  Specifically, where the multiprocessor terms appear in the patents in the '260 family ('260, '739), they should be construed as "two or more processors that run *a dynamic configuration system* to control the execution of applications across processors."  Where the multiprocessor terms appear in the patents in the '136 family ('136, '028, '118, '119), they should be construed as "two or more processors that run *a secure real-time executive* to control the execution of applications across processors."[4]

---

[3] Adopting Ford's proposed constructions of the "multiprocessor" terms would also affect any claim using the term "distributed processing system," in light of the Special Master's construction of this term (and the Court's adoption thereof) and the Special Master's recognition that there was "common ground that a distributed processing system is a subset of a multiprocessor system . . ." Dkt. 165 at 39; *see also id.* at 45 (construing the term "distributed processing system" as "a *multiprocessor system* in which the processing tasks for applications can be distributed among multiple processors").

[4] For purposes of appeal, Ford respectfully preserves its position that the "multiprocessor" terms are limiting where they appear in the preamble, and that any use of the "multiprocessor" terms in the body of the claims—even if followed by the "configured to" phrase—is likewise limiting.  *See* Dkt. 171 [Ford's Motion to Adopt-in-Part and Modify-in-Part the Special Master's Claim Construction Order] at 16-19.

Ford also respectfully maintains its position that these terms warrant the same meaning wherever they appear in the asserted patents.  As the Special Master specifically found, a term "should presumptively be interpreted to mean the same thing in all claims." Dkt. 165 at 63 (citing *Pods, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007)); *see also Pods* at 1366 ("We apply a 'presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.'").  That is particularly true here, where all of the patent claims derive from and/or incorporate by reference the same three patent specifications (those of the '260 patent, the '136 patent, and the previously-asserted '033 patent).

Ford therefore respectfully preserves its original position that the proper construction of the "multiprocessor" terms—regardless of where they appear in the asserted patents—is "two or more processors that run common software to control the execution of applications across processors."

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER - 3
Case No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

### III. ARGUMENT

**A.  "Standalone" Uses of the "Multiprocessor" Terms in the Body of Claims Should Be Construed as Claim Limitations.**

The asserted "Processor Patents"—including the "Summary of the Invention" sections of the patents—repeatedly make clear that the running of common software on multiple processors to control the execution of applications across the processors is the key element that makes the required "multiprocessor" system or network.  Despite this fact, the Special Master held that the multiprocessor terms are used exclusively in a non-limiting "nominative sense," defined only by the surrounding claim limitations.  Respectfully, that finding was in error, and as this Court has recognized, "case law supports the proposition that duplicative use of a preamble term or phrase in the body of a claim *specifically limits the scope of that claim*." Dkt. 184 at 10; *see also Catalina Mktg. Int'l, Inc.*, 289 F.3d at 810-11 (Fed. Cir. 2002).  Consistent with this Federal Circuit precedent—and particularly here, where the patents describe these supposedly non-limiting claim terms as a key aspect of the alleged invention— the Court should construe the multiprocessor terms as requested by Ford.  Where the terms are used in a "standalone" manner (*i.e.*, not in preamble and not followed by the "configured to" phrase), the Court should construe the terms as limiting and as reflecting the key aspect of each patent identified by the named inventors.

The "Processor Patents" all derive from and/or incorporate by reference three patent specifications (those of the '260 patent, the '136 patent, and the previously-asserted '033 patent).  All of the Processor Patents are directed to vehicle "multiprocessor systems" consisting of multiple processors in a vehicle that operate together as an integrated processing system.  The claims of the Processor Patents show that a multiprocessor system is something more than simply multiple processors that are linked together—it is multiple processors that operate together as a "system."  Claim 31 of the '028 patent, for instance, discloses "[a]

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER - 4
Case No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

multiprocessor system, comprising:  multiple processors *operating together as a multiprocessor system. . . .*"  '028 patent, 9:55-57.

Consistent with the claim language, all three specifications—the '260, the '136, and the previously-asserted '033—explain that the multiple processors are able to operate together as a system *because* they each run common software that coordinates their execution of applications.  Specifically, in the "Summary of the Invention" sections of each patent, and in *every embodiment* in the patents, each processor is described as running such common software.[5]  Indeed, every single one of the 29 figures in the three patents is expressly described as showing some aspect of the common software (the DC, OC, or SRE systems).[6]

**The '260 patent family.**  The Summary of the Invention section of the '260 patent—incorporated by reference into every asserted Processor Patent—describes a "multiprocessor system" and a "*dynamic configuration system* [that] runs on *the* multiple processors. . . ."  '260 patent, 1:55-60.  The patent emphasizes that this "DC" system runs on each processor in the system, as illustrated in yellow below.  '260 patent, Fig. 1, 2:31-34; *see also id.* at 2:3-4 ("Fig. 1 is a diagram of a car that has multiple processors that <u>*each run a Dynamic Configuration (DC) system*</u>.").  The specification makes clear that it is the DC software that *enables* the multiple processors to act as a multiprocessor system, explaining that it is "[t]he DC system" that "automatically reconfigures the applications running on different processors according to application failures and other system processing requirements."  '260 patent, 2:34-37; *see also id.* at 3:26-36.[7]

---

[5] *See, e.g.*, '260 patent, Fig. 1 (showing common "DC" software 10 running on four processors 14, 16, 18, and 20); '260 patent, Fig. 3 (showing common "DC" software 10 running on two processors (*i.e.*, processor 40 and DVD 86)); '136 patent, Fig. 2 (showing common "SRE" software 14 running on processors 16, 18, 20, 22, and 24); '033 patent, Fig. 1 (showing common "OC" software 10 running on four processors 14, 16, 18, and 20); '260 patent, 1:55-61, 2:31-34; '033 patent, 1:52-64; '136 patent, 2:56-57, 5:10-14.

[6] *See* '260 patent, 2:1-16; '033 patent, 1:64-2:24; '136 patent, 2:7-18.

[7] The Summary of the Invention section of the '033 patent—also incorporated by reference into every asserted Processor Patent—explains that *"each"* of the multiple processors in a multiprocessor system runs an Open Communication (OC) system that coordinates their functions:  "Summary of the Invention. . . . *The multiple processors <u>each</u> run an Open Communication system* that controls how data is transferred between processors . .

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER - 5
Case No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500



('260 Patent, Fig. 1)

**The '136 patent family.**  Similarly, the Summary of the Invention section of the '136 patent discloses multiple processors each running a secure real-time executive (SRE) or operating system software.  The '136 Summary of the Invention expressly describes the "invention" as involving the use of this SRE software:  "The ***present invention*** allows construction of a ***secure, real-time operating system [SRE]***. . . . This allows portable languages, such as Java, to be used for secure embedded ***multiprocessor*** environments."  '136 patent, 1:60-67.  The specification makes clear that it is the SRE that allows the multiple processors to operate as one integrated system, as shown in yellow below.  '136 patent, 5:10-14 ("The ***SRE 14 . . . allows the applications on these different processors to operate as <u>one integrated system</u>***."); *see also id.* at 2:56 ("The SRE 14 runs below the JVMs 10 in each processor . . ."); 2:11-12 ("Fig. 2 is a diagram of a multiprocessor system that runs multiple Java Virtual Machines that each include a SRE").

---

. ." '033 patent, 1:52-63.  The '033 patent makes clear that it is the OC system that enables the multiple processors disclosed in the patent to work together as a system.  *See, e.g.*, '033 patent, 2:58-61.

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR
FURTHER CLAIM CONSTRUCTION PURSUANT TO THE
COURT'S CLAIM CONSTRUCTION ORDER - 6
Case No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

('136 Patent, Fig. 2)

The Federal Circuit has made clear that the specification is the "***single best guide*** to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005). As the Special Master correctly noted, the Plaintiffs were ***"generally unable to point to textual support"*** for their position that the processors of the multiprocessor system need not run common software. (Dkt. 165 at 33.) The Special Master emphasized that ***"Medius does not cite to any passages from descriptions of the inventions of the asserted patents that state that the control software can operate on fewer than all of the processors,"*** and further, that "Medius does not cite to any exemplary embodiments in the patents in which a system is described as having control software running on some but not all of the processors in the system." *Id*.

Furthermore, when an inventor tells the public that his invention involves the use of a particular element—especially when he does so in the "Summary of the Invention" section of a patent—the claims should be construed to include that element. *See Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1337 (Fed. Cir. 2011) ("The ***summary of the invention*** explains what [the disputed term] is. . . ."); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1348 (Fed. Cir. 2004) ("Those statements, some of which are found in the ***'Summary of the Invention'*** portion of the specification, are not limited to describing a preferred embodiment, but more broadly describe the overall inventions of all three patents."); *see also Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 ("The public is entitled to take the

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER - 7
Case No. 3:11-cv-05503-BHS

S<small>AVITT</small> B<small>RUCE</small> & W<small>ILLEY</small> <small>LLP</small>
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1  patentee at his word and the word was that the invention is a fuel filter.")  The Special Master

2  concluded that the multiprocessor system terms were non-limiting and thus that this common

3  software requirement described in the Summary of the Inventions (*i.e.*, the use of the DC, OC,

4  or SRE systems) was not required by the claims.  In doing so, the Special Master incorrectly

5  read the invention out of the claims.[8]

6      Finally, Ford respectfully submits that the "multiprocessor" terms cannot be understood

7  in a "nominative sense" and thus defined only by other limitations in the claim.  (*See* Dkt. 165

8  at 38.)  As noted above, Ford preserves its position that the "multiprocessor" terms are limiting,

9  regardless of where they appear in a claim, including the preamble.  But even assuming that the

10 disputed terms are non-limiting where they appear in the ***preamble***, Ford respectfully maintains

11 that the terms must be construed to have meaning where they appear in the ***body*** of the claim.

12 Indeed, this Court has recognized that "case law supports the proposition that duplicative use of

13 a preamble term or phrase in the body of a claim *specifically limits the scope of that claim*

14 . . . ."  Dkt. 184 at 10; *see also Catalina Mktg. Int'l*, 289 F.3d at 810-11 ("While the phrase

15 'located at predesignated sites such as consumer stores' appears only in the preamble of Claim

16 1, ***this language appears in both the preamble and body of Claim 25***.  Hence, the applicants

17 specifically included this language in the claim not once, but twice.  ***By virtue of its inclusion***

18 ***in the body of Claim 25, this phrase limits Claim 25***.").

19 **B.  The Court Should Give the "Multiprocessor" Terms Constructions Tailored to Their Specific Patent Family.**

20

21     In its Order Adopting Claim Constructions, the Court indicated that the multiprocessor

22 terms should not necessarily be given the same meaning across patents.  *See* Dkt. 184 at 10

23

---

[8] *See ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374-75 (Fed. Cir. 2009) (construing term based on "repeated[ ] and uniform[ ]" disclosure of patent); *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1338 (Fed. Cir. 2011) ("[T]he specification, including the figures, consistently and exclusively" discloses a particular feature, and "that is clearly what the inventors of the . . . patent conceived of. . . ."); *Phillips*, 415 F.3d at 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR
FURTHER CLAIM CONSTRUCTION PURSUANT TO THE
COURT'S CLAIM CONSTRUCTION ORDER - 8
Case No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

("[T]here is no case law for the proposition that the construction of the second, more limiting use of a term should be applied to every other use of the term *throughout six patents*."). In order to address the Court's concerns, Ford therefore proposes the following constructions, which are tied directly to the specifications associated with each patent claim and the common software described in those specifications.

For the patents in the '260 family ('260, '739), the terms should be construed as "two or more processors that run a dynamic configuration system to control the execution of applications across processors." As explained above, the '260 patent specification (shared by the '739 patent) makes clear that the central element of the claimed "multiprocessor" invention is the dynamic configuration system running on two or more processors. *See, e.g.*, '260 patent at 1:55-61 (a "multiprocessor system" includes multiple processors and "[a] *dynamic configuration system* [that] runs on the multiple processors. . . ."); *id.* at 2:31-34 ("The processors 14, 16, 18, and 20 *all* include software that run a *Dynamic Configuration (DC) system* 10 that enables new processors or devices to be automatically added and removed from the car multiprocessor system 8."); 2:3-4 ("Fig. 1 is a diagram of a car that has multiple processors that *each run a Dynamic Configuration (DC) system*.").

For the patents in the '136 family ('136, '028, '118, '119), the terms should be construed as "two or more processors that run a secure real-time executive to control the execution of applications across processors." As explained above, the '136 patent specification (shared by the '028, '118, and '119 patents) makes clear that the claimed invention requires the SRE running on at least two processors as the key element that makes the multiprocessor system work as described by the inventors. *See, e.g.,* '136 patent at 2:56-57 ("The *SRE [Secure Real-time Executive]* 14 runs below the JVMs in *each processor* and control tasks, messaging, security, etc."); *id.* at 5:10-14 (". . . The *SRE 14* . . . allows the applications on these different processors to operate as one integrated system."); 2:11-12 ("Fig. 2 is a diagram

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER - 9
Case No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

of a multiprocessor system that runs multiple Java Virtual Machines that *each include a SRE*.").

## IV.   CONCLUSION

The Court should construe the "multiprocessor" terms identified in Exhibit A as proposed by Ford above. Without such constructions, the claims will be eviscerated of the critical element of the entire claimed "invention."

DATED:  December 24, 2013

SAVITT BRUCE & WILLEY LLP

By:   /s/ *Duncan E. Manville*
Duncan E. Manville, WSBA #30304
Fax:  (206) 749-0600
Email:  dmanville@sbwllp.com

WILMER CUTLER PICKERING HALE AND DORR LLP
Michael J. Summersgill (*pro hac vice*)
Sarah Beigbeder Petty (*pro hac vice*)
60 State Street
Boston, Massachusetts  02109
Tel.:  (617) 526-6000
Fax:  (617) 526-5000
Emails: michael.summersgill@wilmerhale.com
          sarah.petty@wilmerhale.com

WILMER CUTLER PICKERING HALE AND DORR LLP
Todd C. Zubler (*pro hac vice*)
Grant K. Rowan (*pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, D.C.  20006
Tel.:  (202) 663-6636
Fax:  (202) 663-6363
Emails: todd.zubler@wilmerhale.com
          grant.rowan@wilmerhale.com

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER - 10
Case No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**BROOKS KUSHMAN P.C.**
Frank A. Angileri (*pro hac vice*)
John S. Le Roy (*pro hac vice*)
1000 Town Center, 22nd Floor
Southfield, Michigan  48075
Tel.:  (248) 358-4400
Fax:  (248) 358-3351
Emails: fangileri@brookskushman.com
          jleroy@brookskushman.com

Attorneys for Defendant Ford Motor Company

---

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER - 11
Case No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**CERTIFICATE OF SERVICE**

I certify that this pleading was filed electronically with the Court and thus served simultaneously upon all counsel of record, this 24th day of December, 2013.

                                           */s/ Duncan E. Manville*
                                            Duncan E. Manville

DEFENDANT FORD MOTOR COMPANY'S MOTION FOR FURTHER CLAIM CONSTRUCTION PURSUANT TO THE COURT'S CLAIM CONSTRUCTION ORDER - 12
Case No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500