The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EAGLE HARBOR HOLDINGS, LLC, and MEDIUSTECH, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 3:11-cv-05503-BHS<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO FORD'S MOTION FOR FURTHER CLAIM CONSTRUCTION**<br><br>NOTED ON MOTION CALENDAR: January 17, 2014 |

*PLAINTIFFS' RESPONSE IN OPPOSITION TO FORD'S MOTION FOR FURTHER CLAIM CONSTRUCTION*
*Case No. 3:11-cv-05503-BHS*

3006986v1/012341

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

**TABLE OF CONTENTS**

**I. BACKGROUND ........ 1**

**II. ARGUMENT ........ 2**

**A. The Court's Markman Order Precludes Ford's Arguments in the Instant Motion. ........ 3**

**B. Ford's Motion Runs Counter to Law. ........ 5**

**C. Even if Ford's Motion Were Viable Under the Court's Markman Order and the Law, Ford's New Proposed Constructions Should Be Rejected Because They Are Inconsistent with the Patent Specifications and Claims. ........ 8**

**D. If the Court Decides to Construe the Multiprocessor Terms, the Court Should Adopt the Alternative Construction Originally Proposed by Medius. ........ 12**

**III. CONCLUSION ........ 12**

*PLAINTIFFS' RESPONSE IN OPPOSITION TO FORD'S MOTION FOR FURTHER CLAIM CONSTRUCTION*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

3006986v1/012341 i

## TABLE OF AUTHORITIES

Cases

*American Med. Systems, Inc. v. Biolitec, Inc.*,
618 F.3d 1354 (Fed. Cir. 2010) ........ 3, 7

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002) ........ 5, 7

*IMS Tech., Inc. v. Haas Automation, Inc.*,
206 F.3d 1422 (Fed. Cir. 2000) ........ 3, 7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........ 9, 11

*Poweroasis, Inc., et al. v. T-Mobile USA, Inc.*,
2006 WL 753206 (D.N.H. March 22, 2006) ........ 6

*Storage Tech. Corp. v. Cisco Systems, Inc.*,
329 F.3d 823 (Fed. Cir. 2003) ........ 3

*PLAINTIFFS' RESPONSE IN OPPOSITION TO FORD'S MOTION FOR FURTHER CLAIM CONSTRUCTION*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

3006986v1/012341
ii

Plaintiffs Eagle Harbor Holdings, LLC, and MediusTech, LLC ("Plaintiffs" or "Medius") respectfully submit this response in opposition to Ford's Motion for Further Claim Construction ("Ford's Motion"), Dkt. No. 202.

## I. BACKGROUND

On March 18, 2013, the Court appointed Lawrence D. Graham, Ford's nominee, as special master for purposes of claim construction. Dkt. Nos. 130, 140. The parties filed comprehensive claim construction briefs, Dkt. Nos. 145, 148, 151, 153, and two expert declarations apiece, Dkt. Nos. 123, 147-1, 147-2.

On July 29, 2013, following two hearings with oral argument, the special master issued his 81-page order construing 12 claim terms. Dkt. No. 165 ("SM Ruling"). Of particular relevance to Ford's Motion, which concerns a set of claim terms known as "the multiprocessor terms," the special master found that:

> The terms "multiprocessor system," "multiprocessor network," and "a processor system, wherein a processor is coupled to at least a second processor" are used in a nominative sense and are defined by the limitations that follow. As such, they should be given their plain and ordinary meaning as defined by the limitations that follow these terms, and need not be separately construed.

*Id*. at 38. As the special master made clear, the multiprocessor terms are used in that same nominative sense whether they appear in the preamble or the body of the claim:

> In the structure of the claims at issue, the term "multiprocessor system" is used in this nominative sense, providing a descriptive name to the set of limitations that follow, and in which the further limitations completely set forth the invention. As such, these multiprocessor terms, particularly where used in the preamble, are not limiting and need not be expressly construed. . . . [I]n this instance even where these terms in the body of a claim rather than in the preamble, they are still used in the same nominative sense.

*Id*. at 37.

Ford filed objections to the special master's ruling regarding the multiprocessor terms and two other terms, Plaintiffs filed two objections relating to different terms, and both parties asked the Court to adopt the special master's claim construction ruling with certain modifications in

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

accordance with their objections. Dkt. Nos. 169, 171, 173, 174.

On November 13, 2013, the Court denied the parties' objections, subject to one "limited exception" relating to the multiprocessor terms, and entered an order adopting all of the special master's claim constructions. Dkt. No. 184 ("Markman Order") at 11. Thus, the Court denied Ford's objection to the special master's decision that the multiprocessor terms are non-limiting, but gave Ford the opportunity to pursue one carefully circumscribed potential issue concerning the multiprocessor terms. *Id*. at 10-11. The Court was very clear about the narrow scope of this opportunity:

> [T]he Court will allow an additional request by motion to construe specific duplicative uses of these terms. Ford must identify a standalone term that is not in a preamble and is not followed by the "configured to" phrase. With this limited exception, the Court adopts the special master's construction of these terms.

*Id*. at 11.

On December 24, 2013, Ford filed its Motion. Dkt. No. 202. As set forth below, Ford's Motion far exceeds the bounds of the opportunity the Court offered and has no merit in any event.

## II. ARGUMENT

This Court has held that the multiprocessor terms are not limiting when they appear in the preamble of a claim or next to the words "configured to." Markman Order at 10. In so holding, the Court endorsed and adopted the special master's conclusion that the claim limitations following the preamble or the transitional language "configured to" are what define the requirements of the multiprocessor system, and not the "multiprocessor system" or "multiprocessor network" term itself. Markman Order at 10. Ford's Motion asks the Court to adopt two brand new and different constructions for 51 appearances of the multiprocessor terms depending on which patent family claims the terms appear in. Ford's Motion should be denied because it seeks construction where there is no "standalone" use of the terms, conflicts with the Court's Markman Order, runs counter to law, and contradicts the patent specifications and claims. And even if the Court decides to construe the terms at issue, it would be error to adopt Ford's proposed constructions—new or old—over the alternative construction originally proposed by

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Medius.

**A. The Court's Markman Order Precludes Ford's Arguments in the Instant Motion.**

The Court's holding that the multiprocessor terms should not be construed when they appear in the preamble or together with the transitional language "configured to" is correct and consistent with numerous decisions of the Federal Circuit. The Federal Circuit has made it crystal clear that such a term is not limiting if it:

- "merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention," *IMS Tech., Inc. v. Haas Automation, Inc.* 206 F.3d 1422, 1434 (Fed. Cir. 2000);
- "serves as a convenient label for the invention as a whole," *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003); or
- "is simply a descriptive name for the invention that is fully set forth in the bodies of the claims," *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (Fed. Cir. 2010).

As the special master recognized, and the Court endorsed, the terms "multiprocessor system" and "multiprocessor network" are used only in this nominative sense—as convenient labels or descriptive names for the inventions that are fully described in the other claim limitations.

Ford's Motion now asks the Court to adopt brand new constructions of "the multiprocessor system" or "the multiprocessor network" whenever those words appear a second or additional time in the asserted claims. That happens 51 times. Ford's Motion, Ex. A ("*The highlighted terms are the uses of 'multiprocessor' for which Ford is requesting claim construction*."). Yet in every one of those instances the multiprocessor term is preceded by the article "the." Thus, all 51 times "the multiprocessor system" or "the multiprocessor network" is referring back to the term as it initially appears in the preamble or next to the language "configured to." *This pattern holds true for every claim at issue. See id*.

At least two fatal flaws in Ford's Motion flow directly from that fact. First, Ford has failed to identify a "standalone" instance of the multiprocessor term to bring its motion within the

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

scope Court's threshold requirement. In every one of the 51 appearances of the multiprocessor term into which Ford wants to import its restrictive and unfounded constructions, the term does not stand alone. Every time "the multiprocessor system" or "the multiprocessor network" appears, it is directly linked to the first use of the term in the claim—its antecedent basis—which this Court already has determined is non-limiting. Those are not "standalone" terms at all, let alone the kind of standalone terms the Court envisioned might exist and might provide some basis for a further claim construction motion by Ford. Ford's Motion fails at the outset because it does not meet the parameters of the opportunity set forth in the Markman Order.

Second, Ford would have the Court import brand new claim constructions into every one of the 51 appearances of "the multiprocessor system" or "the multiprocessor network" even though in every instance the term is explicitly and directly referring back to the first appearance of that term within the claim. The Court and the special master already rejected Ford's effort to import its restrictive and unjustifiable construction into the multiprocessor terms the first time they appear in the claims because the terms are used in the nominative sense and do not define some independent aspect or particular feature of the claimed invention. SM Ruling at 36; Markman Order at 10. That is equally true for the 51 appearances of "the multiprocessor system" and "the multiprocessor network" that Ford now wants to construe by requiring the very particular and restrictive requirements of a "dynamic configuration system" or "secure real-time executive" that must "control the execution of applications across processors." The multiprocessor terms are used in exactly the same way regardless of where they appear in a claim: they provide a convenient label or descriptive name for the claimed invention as a whole, not a constituent part or element with a restrictive meaning like Ford wants to impose. Put another way, since "multiprocessor system" and "multiprocessor network" have no independent meaning the first time they appear—in the preamble or next to the transitional language "configured to"—those terms do not suddenly gain independent meaning when they appear again in the body of the claim and explicitly refer back to the first appearance of the term for their antecedent basis.

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Ford's Motion directly conflicts with what the Court already has ruled. Ford seeks relief that would undermine and negate the Court's reasoning by importing Ford's new proposed constructions throughout numerous claims, even though *every one* of those claims has a non-limiting multiprocessor term in its preamble and/or next to the transitional language "configured to." Ford's Motion must fail in light of the Court's Markman Order.[1]

**B. Ford's Motion Runs Counter to Law.**

Ford cites one relevant case in support of its request to treat the multiprocessor terms differently when they appear a second or subsequent time in a claim, *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc*., 289 F.3d 801, 806, 810-811 (Fed. Cir. 2002), but the case does not support Ford. In *Catalina Marketing*, the court considered a claimed "system for controlling the selection and dispensing of product coupons at a plurality of remote terminals" and found that a phrase appearing in both the preamble and the body of a claim—reciting product coupon terminals "located at predesignated sites such as consumer stores"—was limiting. That phrase, however, is categorically different from the multiprocessor terms at issue in this case for two reasons. First, the phrase in *Catalina* appeared in the body of the claim without reference to the preamble for antecedent basis, i.e., it was a standalone phrase, not preceded by "the." Second, the phrase in *Catalina* recited a specific feature of the claimed system, whereas each of the multiprocessor systems or networks represents a particular combination of other claim limitations that follow the multiprocessor term and the term "configured to" or "comprising." The court in *Catalina* did not suggest, let alone hold, that a claim term can never be used in a nominative sense, or must always

[1] Ford's Motion further exceeds the scope of the opportunity contemplated by the Markman Order with its passing request for further or different construction of the term "distributed processing system." Ford's Motion at 3 n.3. That term already has been construed by the special master based on extensive briefing and argument. SM Ruling at 38-45. Ford did not object to the special master's construction of the term, the Markman Order adopted that construction, and Ford has not filed a motion for reconsideration. In any event, there are no grounds for such a motion under the Local Rules. Ford has waived its objection and its right for a different construction of the term "distributed processing system."

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

be limiting, if it appears in the body of a claim.

Indeed, at least one district court has specifically addressed and rejected such an argument. In *Poweroasis, Inc. v. T-Mobile USA, Inc.*, 2006 WL 753206 at *5 (D.N.H. March 22, 2006), the court considered the disputed claim term "vending machine" that appeared in the preamble and body of a claim relating to "a vending machine for vending telecommunications access to a customer." The parties disagreed whether the term limited the claims or "merely [gave] a name to the disclosed invention." *Id.* The court explained that "[b]ecause"—just as here—"all subsequent citations to 'vending machine' in the body of the claims refer back to its use in the preamble, I resolve this dispute by determining whether the preamble operates as a claim limitation." *Id.* The court then found, correctly, that "[p]atentees may give an invention a name in the preamble and repeat that name in the body of the claim without thereby imbuing the invention with additional limitations." *Id.* The court held that the term "vending machine" was simply "a name for the disclosed invention rather than an independent claim limitation," *id.* at *6, a holding that applied to that term when it appeared in the body of the claim as well as the preamble. The court specifically rejected an argument by the defendant "that 'vending machine' limits the claimed inventions because the patentees used the term in the preamble as the antecedent basis for subsequent references in the body of the claims." *Id.* at *5.

This case has the same fact pattern as *Poweroasis*, and the district court's analysis in that case is highly logical and persuasive. As this Court already has found, the multiprocessor term when it appears in a preamble or with the language "configured to" is a non-limiting label for the invention specifically defined by the other claim limitations. As in the claim at issue in *Poweroasis*, the claims in this case then employ that non-limiting name or label for the invention in the body of the claim in the same manner—as a reference to the whole invention and not as a particular or additional limitation. Based on the decision this Court already made concerning the "multiprocessor system" and "multiprocessor network" terms when they first appear in the claims at issue, it follows directly that subsequent references to those terms as "the multiprocessor



SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

system" and "the multiprocessor network" are also non-limiting names or labels for the whole invention defined by the other particular claim limitations.

It is also significant in this case that "the multiprocessor system" and "the multiprocessor network" are not terms that the applicant ever used to distinguish prior art in the prosecution of the patents. In *Catalina* and other decisions, the Federal Circuit has repeatedly stated the principle that a patentee's lack of reliance on a claim term in prosecuting the patent indicates that a term is not limiting. *Catalina*, 289 F.3d at 809; *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (Fed. Cir. 2010); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed. Cir. 2000). For example, in *Catalina* the court found that even the detailed preamble claim phrase "located at predesignated sites such as consumer stores" was non-limiting because the applicant did not rely on the phrase to define its invention or distinguish the invention over prior art. 289 F.3d at 810. And in *American Medical Systems*, the court referred to the prosecution history—specifically, the absence of any suggestion that the disputed claim term "photoselective vaporization" was used to distinguish the invention from prior art—in determining that the term was "simply a descriptive name of the invention that is fully set forth in the bodies of the claims." 618 F.3d at 1359.

Ford has never cited or argued any prosecution history in support of its construction of the multiprocessor terms—not in its original claim construction briefing to the special master, nor in its objections to the special master's ruling, nor in the present motion. The multiprocessor terms were never used to distinguish prior art because the terms are not used to define an element of the invention. As in *Poweroasis*, and consistent with *Catalina* and other applicable Federal Circuit law, "the multiprocessor system" and "the multiprocessor network" are non-limiting, descriptive names or labels for the invention that is defined by the other claim limitations. Ford's Motion runs counter to those decisions, and Ford has cited no case that would require construction of the multiprocessor terms wherever they appear in the claims.

*PLAINTIFFS' RESPONSE IN OPPOSITION TO FORD'S MOTION FOR FURTHER CLAIM CONSTRUCTION*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

3006986v1/012341

7

**C. Even if Ford's Motion Were Viable Under the Court's Markman Order and the Law, Ford's New Proposed Constructions Should Be Rejected Because They Are Inconsistent with the Patent Specifications and Claims.**

Ford's Motion proposes new claim constructions that are different and even more restrictive than the proposed construction it originally filed with the Court, argued to the Special Master, and argued to this Court in its objections to the Special Master's Ruling. Ford originally proposed a single construction requiring "two or more processors that run common software to control the execution of applications across processors." Ford's brand new proposed constructions are even more restrictive because they specify the "common software" that must run on the multiple processors. Thus, for the '260 patent and its continuations Ford now wants to require a "dynamic configuration system" on the multiple processors, and for the '136 patent and its continuations Ford wants to require a "secure real-time executive" on the multiple processors.

Medius objects to Ford's introduction of brand new claim constructions at this stage of the case. Ford is either misinterpreting or trying to take advantage of the comment in the Court's Order about the potential problem with the parties' agreement that the multiprocessor terms should be interpreted to mean the same thing throughout the claims. *See* Markman Order at 10. The Court's comment seemed to be directed at the possibility that "standalone" appearances of the multiprocessor terms—i.e., in the body of the claim and unconnected to the preamble or transitional language "configured to"—might need to be treated differently than appearances in the preamble or with the words "configured to." It was not an invitation for Ford to propose two new and different constructions that would apply differently depending on whether the term appeared in one patent family or another. Ford should not be allowed to take advantage of any ambiguity in the Court's order to start over with new constructions.

But even if Ford is permitted to proceed with its new proposed constructions, they should be rejected for multiple reasons. First, as a threshold matter, it makes no sense to define the multiprocessor terms differently according to whether they appear in a claim of the '260 family of patents or the '136 family of patents because the latter family shares the specification of the '260 patent family. The '136 patent specification incorporates the '260 specification by reference. *See*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

'136 patent, col. 1, ll. 9-15. Given the common specification, claims in the '136 patent that use the same multiprocessor term that has been used in the '260 family of patents should have the same meaning—not a different one.

Second, Ford's new constructions conflict with the patent specifications and the claims to an even greater degree than its original construction did, and the special master's analysis is doubly strong with respect to Ford's new constructions. As the SM Ruling reflects, the special master carefully considered and evaluated the expert opinion testimony presented by both parties, as well as the language and structure of the patent claims and written descriptions, to reach his conclusion that Ford's restrictive construction was not supported and that the inventions of the claims are "completely set forth" in the claim limitations that follow the multiprocessor term in each claim. SM Ruling at 37.

The special master correctly began with the claims themselves, which "provide substantial guidance as to the meaning of particular claim terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). And he acknowledged the important claim construction principle that "the context in which a term is used in the asserted claim can be highly instructive." *Id.* Under these principles, the conflicts between Ford's new constructions and the claim language are even starker than they were with Ford's original construction. For example, claim 9 of the '260 patent recites: "A multiprocessor system used in a car, comprising: multiple processors …; different communication links …; ***and a dynamic configuration system*** …." (emphasis added.) Ford's new construction would require that multiple processors in every claimed multiprocessor system must "run a dynamic configuration system," even though claim 9 explicitly includes such a limitation and none of the other claims do. It would be absurdly redundant to interpret the multiprocessor term to require a "dynamic configuration system" when a different claim limitation already explicitly recites a "dynamic configuration system," and when that limitation itself includes three references to "multiprocessor system." *See* Ford's Motion, Exh. A at 1. It would also be plainly improper to import that same requirement into other claims that do ***not***

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

recite a "dynamic configuration system."[2]

Ford's new construction for the '136 patent family of claims is equally flawed. It would require "a secure real-time executive" on multiple processors, but only some claims in that family recite an "executive" on even one processor, while most claims omit it entirely. Claims 1 and 18 of U.S. Patent No. 7,178,049, the parent of the '136 patent family, each recite "at least one of the processors operating as an executive," and thus allow an executive on a single processor. No claims in the other patents in the '136/'049 family—and none of the claims asserted in this case—recite an "executive" at all. Ford wants to impose a requirement across the board that is limited, by the claim language itself, to only a few claims and even then to only one processor.

Ford's new constructions directly conflict not only with the claims, but also with the patents' written descriptions. Ford points to passages and figures that describe or depict a Dynamic Configuration ("DC") system, but the DC system need not run on every processor in the system. For example, Figure 1 of the '260 depicts a laptop 38 that is automatically integrated into a multiprocessor system, *see* '260 2:58-60, but Figure 1 does not depict the laptop or its processor as having a DC system. Similarly, Figure 3 of the '260 depicts a CD player and a DVD player that have been "dynamically added to the multiprocessor system 8 in car 12." '260 3:50-52. Figure 3 depicts the DVD player with a DC system, but the CD player does not have one. Figure 3 also shows incorporation of a drive-in restaurant's processor and transmitter into a car's multiprocessor system, thereby enabling ordering from a menu and other communications between the drive-in and the car. '260 4:10-23. Again, the drive-in is not shown to have a DC system. '260 Fig. 3. The specifications never state that all processors must run "***one***" or "***the***

[2] Other claims also demonstrate that it would be improper to impose the "dynamic configuration system" on multiple processors because those claims clearly provide that a configuration manager (which is part of the "dynamic configuration manager" recited in claim 9 of the '260 patent) can run on just one processor, not multiple ones. *See, e.g.,* '136 claim 18 ("operating a configuration manager in one of the multiple processors in the multiprocessor system"); '028 claim 18 ("operating a configuration manager in one of the multiple processors in the multiprocessor system"). That some claims supported by the '260 patent specification expressly allow only one processor to run a configuration manager defeats Ford's new construction requiring a dynamic configuration system to run on multiple processors.

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

***same***" system or software. *See, e.g.*, '033 1:66-67; '260 2:3-6; '136 2:11-12. Thus, the very evidence that Ford must rely on for its new proposed construction requiring a dynamic configuration system on every processor contradicts its argument.

Ford particularly emphasizes the "background" and "summary of the invention" sections of the patent specifications in a re-hash of arguments it made in its prior claim construction briefing and objections to the SM Ruling. *See* Ford's Motion at 12, 14-16. But Ford continues to be wrong about the meaning and significance of those portions of the specifications, for the reasons stated in Plaintiffs' Responsive Claim Construction Brief, Dkt. No. 151, at 1-2 & 4-5, and Plaintiffs' Response in Opposition to Ford's Motion to Modify and Adopt Order of the Special Master, Dkt. No. 173, at 15-16, incorporated herein by reference.

Ford also re-hashes its argument that the invention will be "read out of the claims" unless the multiprocessor terms are deemed limiting and construed. Ford's Motion at 1. But Ford continues to misunderstand the determination made by the special master and this Court. *See* Markman Order at 10. The special master expressly found that "[a] person of ordinary skill would understand that the limitations following the preamble or the 'configured to' transition would define the requirements of the multiprocessor system." Order at 36-37. No elements of the invention are "read out," because the other limitations in each claim define the invention. Conversely, Ford seeks to import into every claim with a multiprocessor term a particular embodiment in which multiple processors run a "dynamic configuration system" or "a secure real-time executive to control the execution of applications across processors." The special master and the Court properly rejected Ford's approach with its old construction, and Ford's new constructions, if anything, fall faster and harder. *See Phillips*, 415 F.3d at 1323 (courts should take care not to import limitations from the specification into the claims, even if the specification describes very specific embodiments or only one embodiment).

The special master correctly determined, based on intrinsic evidence and expert testimony, that the claimed multiprocessor systems and networks are defined by the other claim limitations,

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

and that it would be improper to impose a uniform and unsupported set of requirements on every processor in every claim, regardless of variations in the configurations and functionality of the systems and networks claimed in the patents. That analysis applies to the multiprocessor terms not only when they appear in the preamble or next to the words "configured to," but also when they appear as a reference to "the multiprocessor system" or "the multiprocessor network" in the body of the claims and thus clearly refer back to the first use of the multiprocessor term. The multiprocessor terms, wherever they appear in the claims, serve only as a "convenient label" and "a descriptive name" for the invention as a whole. They do not add any claim requirements, let alone the two new restrictions that Ford wants to impose and import into every such claim (and, even worse, differently so depending on the patent family at issue).

**D. If the Court Decides to Construe the Multiprocessor Terms, the Court Should Adopt the Alternative Construction Originally Proposed by Medius.**

If the Court finds that "the multiprocessor system" and "the multiprocessor network" mean something different the second or subsequent time they appear in a claim than when they first appear, in the preamble or followed by "configured to," then the Court should adopt the construction Medius originally proposed: "two or more processors that each run software and are connected by one or more links." That construction would represent the lowest common denominator of all of the claimed multiprocessor systems and networks, and would still respect and allow for the variations among the claims. *See* Opening Claim Construction Brief of Plaintiffs, Dkt. No. 145, at 5-13, and Responsive Claim Construction Brief of Plaintiffs, Dkt. No. 151, at 2-6, incorporated herein by reference.

## III. CONCLUSION

Medius respectfully requests that the Court deny Ford's Motion.

Dated: January 13, 2014

By: */s/ Floyd G. Short*

Parker C. Folse III (WSBA No. 24895)
pfolse@susmangodfrey.com
Ian B. Crosby (WSBA No. 28461)
icrosby@susmangodfrey.com
Floyd G. Short (WSBA No. 21632)

*PLAINTIFFS' RESPONSE IN OPPOSITION TO FORD'S MOTION FOR FURTHER CLAIM CONSTRUCTION*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

3006986v1/012341 12

fshort@susmangodrey.com
Genevieve Vose Wallace (WSBA No. 38422)
gwallace@susmangodfrey.com
Patrick C. Bageant (WSBA No. 44268)
pbageant@susmangodfrey.com
E. Lindsay Calkins (WSBA No. 44127)
lcalkins@susmangodfrey.com

SUSMAN GODFREY L.L.P.
1201 3rd Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 516-3861
Fax: (206) 516-3883

*Counsel for Plaintiffs*

*PLAINTIFFS' RESPONSE IN OPPOSITION TO FORD'S MOTION FOR FURTHER CLAIM CONSTRUCTION*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

3006986v1/012341 13

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who have registered for electronic notifications, and will cause the foregoing to be served upon the following by email:

Duncan E. Manville
**Savitt Bruce & Willey, LLP**
1425 Fourth Ave, Suite 800
Joshua Green Building
Seattle, WA 98101
dmanville@jetcitylaw.com

**Wilmer Cutler Pickering Hale & Dorr LLP**
60 State Street
Boston, MA 02109
michael.summersgill@wilmerhale.com
sarah.petty@wilmerhale.com

**Wilmer Cutler Pickering Hale & Dorr LLP**
1875 Pennsylvania Avenue NW
Washington, DC 20006
elise.miller@wilmerhale.com
grant.rowan@wilmerhale.com
todd.zubler@wilmerhale.com

**Brooks Kushman P.C.**
1000 Town Center, 22nd Floor
Southfield, MI 48075
fangilero@brookskushman.com
jleroy@brookskushman.com

Dated: January 13, 2014 By: */s/ Floyd G. Short*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883