The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| EAGLE HARBOR HOLDINGS, LLC, and MEDIUSTECH, LLC,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>FORD MOTOR COMPANY,<br><br>　　　　Defendant. | Case No. 3:11-cv-05503-BHS<br><br>**DEFENDANT FORD MOTOR COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**<br><br>NOTE ON MOTION CALENDAR: February 28, 2014 |

FORD'S REPLY IN SUPPORT OF ITS MOTION
FOR PROTECTIVE ORDER
No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

I.  INTRODUCTION

Plaintiffs make four arguments in support of their purported right to take Ford Executive Vice President Jim Farley's deposition. Each of these arguments fails on the facts and the law.

*First*, Plaintiffs argue that Ford has applied the incorrect legal standard. But in fact it is Plaintiffs, who—apparently recognizing the weakness of their position under the legal standard for apex depositions—have incorrectly urged the application of the legal standard that applies to non-apex depositions. (Opp. at 3.)  *Second*, Plaintiffs argue for the first time that Mr. Farley—who is the head of marketing and one of only five Executive Vice Presidents for all of Ford Motor Company—is not an "apex" executive (opp. 2, 6-7)—even though Plaintiffs themselves have previously conceded that he is, in fact, a "senior executive."  *Third*, Plaintiffs argue that Mr. Farley has made public statements about SYNC and that these statements are allegedly relevant to their damages claim in this case. (Opp. at 8-11.) But this is precisely the rationale that other courts within this jurisdiction and throughout the Ninth Circuit have found insufficient to warrant the taking of executive depositions.  *Finally*, Plaintiffs argue that there is "no less burdensome means" of obtaining the information Plaintiffs seek through Mr. Farley's deposition (Opp. 12)—even though Plaintiffs have never served a single discovery request directed to Mr. Farley's statements and have canceled the deposition of another Ford employee who made statements virtually identical to those at issue here.

For five months, Ford has asked Plaintiffs to articulate a specific, compelling reason to take this apex deposition, and for five months, Plaintiffs have offered nothing but the same generic rationalizations that courts have repeatedly rejected. Plaintiffs' opposition confirms that Ford's motion for a protective order should be granted.

FORD'S REPLY IN SUPPORT OF ITS MOTION
FOR PROTECTIVE ORDER - 1
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue, Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## II.    ARGUMENT

**A.    Plaintiffs' Opposition Applies the Wrong Legal Standard and Fails to Discharge Plaintiffs' Burden to Establish Entitlement To An Executive Deposition.**

Recognizing that they cannot satisfy their burden under the proper legal standard for apex depositions, Plaintiffs instead rely on the standard for a typical motion for a protective order under Rule 26.  (Opp.  3.)  Plaintiffs wholly fail to address the standard that actually applies here on a motion for a protective order under apex principles.  The law is clear: it is *Plaintiffs'* burden, not Ford's, to show they are entitled to this deposition:

> … a ***party seeking*** an "apex deposition" must establish that the executive
>
> [1] has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and
>
> [2] that other less intrusive means of discovery such as interrogatories and depositions of other employees, have been exhausted without success.

*Robinett v. Opus Bank*, No. C12–1755MJP, 2013 WL 5850873, at *5 (W.D. Wash. Oct. 30, 2013) (emphasis added) (quoting *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)).  Plaintiffs' arguments that Ford failed to show "specific prejudice" are inapposite.  (Opp. at 5-6.)  "Specific prejudice" does not need to be proven on a motion for a protective order from an apex executive deposition.  *See Robinett*, 2013 WL 5850873, at *5.

**B.    Mr. Farley Is One of the Most Senior Executives at Ford Motor Company, and His Deposition Would Impose Significant, Undue Burdens on Ford.**

Plaintiffs assert, incorrectly and for the first time, that Ford has not established that Mr. Farley is an apex executive.  (Opp. at 2, 6-7.)

As the Executive Vice President for Global Marketing and Sales, and the head of Ford's Lincoln division, Mr. Farley is one of Ford's "most senior executives."  (Dkt. 226 [Ford's Motion] at 2; Dkt. 227 [Farley Decl.] ¶ 1; Dkt. 228-1, Ex. 5 [9/13/13 Ltr. From L. Pearlson to F. Short] ("Regarding Plaintiffs' request to depose Jim Farley, Mr. Farley is a senior executive at Ford….").)  He is the head of worldwide marketing for all of Ford Motor Company.  (Dkt.

FORD'S REPLY IN SUPPORT OF ITS MOTION
FOR PROTECTIVE ORDER - 2
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue, Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

226 [Ford's Motion] at 2-3; Stec Decl. ¶ 2.)  He is one of just five "Executive Vice Presidents" at Ford and a member of Ford's "Executive Officer Group," along with Ford's Executive Chairman, William Clay Ford, Jr., and President and CEO Alan Mullaly.  (Stec Decl. ¶ 3; Petty Decl. Ex. 1 [excerpt from Ford's 2012 Annual Report]).  Indeed, in correspondence that Plaintiffs fail to mention in their opposition, ***Plaintiffs themselves*** previously referred to Mr. Farley as one of Ford's "***senior executives***."  (Dkt. 228-1, Ex. 2 [12/10/13 Email from J. Connors to Counsel]; *see also* Dkt. 228-1, Ex. 4 [1/21/14 Email from J. Connors to Counsel].)[1]

The demands on Mr. Farley's time are great.  He supervises, directly or indirectly, all of the individuals employed by Ford's Marketing, Sales & Service Division and Lincoln, including two Ford Vice Presidents, and, since he is responsible for global marketing, his position requires him to travel several months out of the year.  (Stec Decl. ¶¶ 4-5.)  Sitting for a deposition would cause a significant and unnecessary disruption to Mr. Farley's work and Ford's business, especially where, as here, Mr. Farley has extremely limited knowledge of the issues in this lawsuit.  (*See* Dkt. 226 [Ford's Motion] at 3; Dkt. 227 [Farley Decl.] ¶¶ 2-5.)  These are precisely the circumstances that the law regarding "apex" depositions is intended to prevent.  *Celerity, Inc. v. Ultra Clean Holding, Inc*., No. C 05–4374, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.").

### C. Plaintiffs Have Not Shown Any Unique Knowledge on the Part of Mr. Farley.

Plaintiffs argue that Mr. Farley has made public statements about SYNC, and that these statements are relevant to damages.  (Opp. at 8-11.)  But all the inflammatory language and

---

[1] Plaintiffs incorrectly argue that Ford cannot present additional facts supporting its prior showing that Mr. Farley is an "apex" executive.  (Opp. at 6-7, nn.1-2.)  But Ford is of course entitled to respond to issues raised in Plaintiffs' opposition brief, particularly when those issues contradict Plaintiffs' own prior admissions.  *See Grays Harbor Adventist Christian Church v. Carrier Corp*., No. C05-5437, 2007 WL 2156601, at *2 (W.D. Wash. July 26, 2007) (party permitted to raise in reply arguments made "in response to the non-moving parties' arguments to a non-dispositive motion").

FORD'S REPLY IN SUPPORT OF ITS MOTION
FOR PROTECTIVE ORDER - 3
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue, Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

attempted misdirection contained in Plaintiffs' opposition do not and cannot change the fact that the courts within this Circuit that have specifically addressed *this exact issue* have concluded that the type of evidence on which Plaintiffs rely is simply not enough.

In *Affinity Labs of Texas v. Apple*, the plaintiff in a patent infringement case sought to depose Apple CEO Steve Jobs based on public statements about the success of Apple's accused products. No. C 09–4436 CW, 2011 WL 1753982, at *3 (N.D. Cal. May 9, 2011). Affinity specifically contended, as Plaintiffs do here, that these statements were relevant to their damages claims. *Id*. In addressing this argument, the Northern District of California explicitly held that Mr. Jobs's public statements <u>did not</u> justify the taking of his deposition:

> The mere fact that Jobs made public statements, *even on issues that Affinity considers relevant to its claims*, are insufficient to justify his deposition. Courts have repeatedly denied apex depositions *even on a showing that the executive made public statements on relevant issues*.

*Id.* at *16 (emphasis added). Courts in this district have followed this reasoning to preclude depositions of executives on the basis of public statements. *See Robinett,* 2013 WL 5850873, at *6 ("Case law abounds with opinions which stand for the proposition that the 'mere fact that [a CEO] made public statements . . . [is] insufficient to justify his deposition.'" (quoting *Affinity*, 2011 WL 1753982, at *16)).

Plaintiffs argue, in an attempt to distinguish these cases, that *Affinity* and *Robinett* stand only for the proposition that public statements are insufficient if the public statements are "irrelevant." (Opp. at 9 ("Neither order held that public statements cannot show unique, non-repetitive knowledge, *just that irrelevant public statements cannot do so*." (emphasis added)).) This representation is plainly contradicted by the specific language of the holdings themselves. *See Affinity*, 2011 WL 1753982, at * 16 ("Courts have repeatedly denied apex depositions *even on a showing that the executive made public statements on relevant issues***.**" (emphasis added)); *Robinett,* 2013 WL 5850873, at *6 ("[T]he mere fact that [a CEO] made public statements, *even on issues that [the plaintiff] considers relevant to its claims,* [is] insufficient to justify his deposition." (emphasis added) (internal quotation marks omitted)).

FORD'S REPLY IN SUPPORT OF ITS MOTION
FOR PROTECTIVE ORDER - 4
No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY** LLP
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

Plaintiffs further argue that, because Mr. Farley made public statements about SYNC, he must have unique personal knowledge about those statements. (Opp. at 12 ("[N]obody could possibly understand what Mr. Farley meant by his many statements extolling the virtues of SYNC … better than Mr. Farley himself.").) But this rationale, too, has been rejected by courts that have considered it. *See Affinity Labs*, 2011 WL 1753982, at *10 ("Affinity's sole support for its claim that Mr. Jobs has unique, non-repetitive, firsthand knowledge is that he must know about the statements because he made them."). Moreover, Ford's 30(b)(6) witness testified that Mr. Farley and other Ford executives make public statements based on "talking points" provided by Ford's public affairs office and vetted by Ms. Moody. (Dkt. 228-1, Ex. 8 [Moody Dep. Trans.] at 224:8-12; 225:2-5.) Thus, information underlying Mr. Farley's public statements is not unique to him.

Finally, Plaintiffs point to several "private" statements by Mr. Farley that they contend warrant his deposition. But these statements are wholly consistent with (and in many instances, duplicative of) the public statements at issue about SYNC demand. (Opp. at 10.)[2] The "private" statements on which Plaintiffs rely include statements like "SYNC is a big deal for us" and SYNC is a "proof points . . . that ford is back!"—these statements no more justify Mr. Farley's deposition than his public statements do. (Opp. at 10.)

### D. Plaintiffs Cannot Establish that There Is No Less Burdensome Means of Obtaining The Discovery They Seek.

Plaintiffs' claim that there is no less burdensome means of discovery than a deposition of Mr. Farley is without merit. Plaintiffs apparently intend to inquire as to what Mr. Farley "meant" by statements made in various emails and public documents (opp. at 12), and yet Plaintiffs wholly fail to address Ford's point that Plaintiffs could have served written discovery directed at this information. *See Affinity Labs,* 2011 WL 1753982, at *10, *17 (granting protective order of where plaintiff "could have served interrogatories" about the statements at

---

[2] In any event, general statements praising SYNC that are not connected to any allegedly infringing aspect of SYNC have marginal relevance, at best, to damages. *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318-19 (Fed. Cir. 2011).

FORD'S REPLY IN SUPPORT OF ITS MOTION
FOR PROTECTIVE ORDER - 5
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue, Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

issue).  Similarly, Plaintiffs could have pursued the deposition of senior Ford employees, such as Doug VanDagens, who made public statements <u>virtually identical</u> to those made by Mr. Farley.  (*See, e.g.*, Petty Decl. Ex. 2 [2/17/14 Email from G. Wallace to Counsel]; Petty Decl. Ex. 3 ["Q&A With Doug VanDagens," @FORDONLINE (Oct. 28, 2009 11:19 PM ET)]; Dkt. Nos. 187-40, 187-41, 187-42, 187-43 [Exhibits to Connors Decl.]).  Indeed, Plaintiffs' own prior motions address Mr. VanDagens' and Mr. Farley's statements together.  (Dkt. 187 [Expedited Joint Discovery Motion] at 8-9.)  But rather than pursuing the agreed-upon deposition of Mr. VanDagens, Plaintiffs instead—while this motion was pending—canceled that deposition with only three days' notice and without explanation.  (Petty Decl. Ex. 2 [2/17/14 Email from G. Wallace to Counsel]).

### III.   CONCLUSION

Plaintiffs' continued pursuit of Mr. Farley's deposition in light of the factual record and the relevant case law makes clear that this is simply a litigation tactic—precisely the type of abuse of the discovery process that protective orders under apex principles were designed to avoid.  Ford respectfully requests that the Court grant its motion for a protective order precluding Plaintiffs from taking the deposition of James Farley.

DATED:  February 28, 2014

**SAVITT BRUCE & WILLEY LLP**

By:   */s/ Duncan E. Manville*
Duncan E. Manville, WSBA #30304
Tel.:  (206) 749-0500
Fax:  (206) 749-0600
Email: dmanville@sbwllp.com

FORD'S REPLY IN SUPPORT OF ITS MOTION
FOR PROTECTIVE ORDER - 6
No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue, Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Michael J. Summersgill *(pro hac vice)*
Sarah Beigbeder Petty *(pro hac vice)*
60 State Street
Boston, Massachusetts  02109
Tel.:  (617) 526-6000
Fax:  (617) 526-5000
Email:  michael.summersgill@wilmerhale.com
           sarah.petty@wilmerhale.com

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Todd C. Zubler *(pro hac vice)*
Grant K. Rowan *(pro hac vice)*
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Tel.:  (202) 663-6636
Fax:  (202) 663-6363
Email:  todd.zubler@wilmerhale.com
           grant.rowan@wilmerhale.com

**BROOKS KUSHMAN P.C.**
Frank A. Angileri (*pro hac vice*)
John S. Le Roy (*pro hac vice*)
1000 Town Center, 22nd Floor
Southfield, Michigan  48075
Tel.:  (248) 358-4400
Fax:  (248) 358-3351
Email:  fangileri@brookskushman.com
           jleroy@brookskushman.com

Attorneys for Defendant Ford Motor Company

---

FORD'S REPLY IN SUPPORT OF ITS MOTION
FOR PROTECTIVE ORDER - 7
No. 3:11-cv-05503-BHS

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue, Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was filed electronically with the Court and thus served simultaneously upon all counsel of record, this 28th day of February, 2014.

                                  */s/ Duncan E. Manville*
                                  Duncan E. Manville

CERTIFICATE OF SERVICE
No. 3:11-cv-05503-BHS

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue, Suite 800
Seattle, Washington  98101-2272
(206) 749-0500