The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EAGLE HARBOR HOLDINGS, LLC, and MEDIUSTECH, LLC, | Case No. 3:11-cv-05503-BHS |
| Plaintiffs, | **COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S COUNTERCLAIM FOR TRADE SECRET MISAPPROPRIATION** |
| *v.* | |
| FORD MOTOR COMPANY, | NOTED ON CALENDAR: January 26, 2015 |
| Defendant. | |

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

I.      SUMMARY JUDGMENT LEGAL STANDARD ....................................................2

II.     FORD CANNOT ESTABLISH THAT IT HAS BEEN HARMED OR WILL
BE HARMED BY ALLEGED TRADE SECRET MISAPPROPRIATION .....................2

       A.     Ford Cannot Establish That Receipt of any Alleged Trade Secret
Caused Counterclaim Defendants to Add or Amend any Patent Claim .................3

       B.     Ford's Unjust Enrichment Theories Fail as a Matter of Law .................................5

       C.     Ford Has Produced No Evidence to Support Any Claim That Ford Has
or Will Be Harmed .................................................................................................7

III.    FORD'S CLAIM IS BARRED BY THE *NOERR-PENNINGTON* DOCTRINE
AND IS PREEMPTED BY FEDERAL PATENT LAW ....................................................8

       A.     The First Amendment and *Noerr-Pennington* Doctrine Bar Ford's
Trade Secret Counterclaim ....................................................................................8

             1.     Ford's Trade Secret Counterclaim Invokes the *Noerr-
Pennington* Doctrine in Two Ways............................................................10

             2.     Ford Has Failed to Plead and Cannot Prove Knowing and
Willful Fraud...............................................................................................11

             3.     Ford Has Failed to Plead and Cannot Prove That Counterclaim
Defendants Lawsuit Against Ford Is a Sham...............................................12

       B.     Federal Patent Law Preempts Ford's Trade Secret Counterclaim ........................13

IV.    FORD CANNOT ESTABLISH A MATERIAL ISSUE OF FACT WITH
REGARD TO TRADE SECRET MISAPPROPRIATION FOR ANY OF THE
ALLEGED MISAPPROPRIATED TRADE SECRETS.....................................................14

       A.     Ford Has No Evidence That the 2007 Navox Documents Were
Misappropriated ...................................................................................................16

       B.     Ford Has No Evidence That the Traffic, Directions, & Information
Spec Was Misappropriated ...................................................................................18

       C.     Ford Has No Evidence That any Nonpublic Information Within the
Schematic and BOM Derive Independent Economic Value From Being
Secret....................................................................................................................18

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM –
i
Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1.  Ford Has Failed to Specify What Non-Public Information From the Schematic or BOM Derives Independent Economic Value From Remaining Secret, or Provide Evidence Supporting Such Specific Claims ........................................................................................... 19

2.  Ford Admits That It Has No Evidence to Suggest That Its Trade Secrets Are More Efficient or Effective Than Its Competitors ................. 23

CONCLUSION ......................................................................................................... 24

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM – ii*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1

## <u>TABLE OF AUTHORITIES</u>

2

3

4   Cases

5   *800 Adept, Inc. v. Murex Sec., Ltd.*,
       539 F.3d 1354 (Fed. Cir. 2008) ............................................................. 13, 14

6

7   *Ada Motors v. Butler*,
       2014 WL 4067876 (W.D. Wash. Aug. 18, 2014) ............................................. 2, 6, 10

8   *Anderson v. Liberty Lobby, Inc.*,
       477 U.S. 242 (1986) ............................................................................ 2

9

10  *C.R. Bard, Inc. v. M3 Systems, Inc.*,
       157 F.3d 1340 (Fed. Cir. 1998) ................................................................ 11

11  *California Motor Transp. Co. v. Trucking Unlimited*,
       404 U.S. 508 (1972) .......................................................................... 8, 11

12

13  *Celotex Corp. v. Catrett*,
       477 U.S. 317, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986) ........................................ 2

14  *Crabtree v. Bowers*,
       102 Wash. App. 1017 (2000) ................................................................... 8

15

16  *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
       524 F.3d 1254 (Fed. Cir. 2008) ............................................................... 13

17  *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
       362 F.3d 1367 (Fed. Cir. 2004) ............................................................. 9, 13

18

19  *Golan v. Pingel Enter., Inc.*,
       310 F.3d 1360 (Fed. Cir. 2002) ............................................................... 13

20  *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
       No. C14-0950, 2014 WL 6452173 (W.D. Wash. Nov. 17, 2014) ................................... 9

21

22  *Int'l Electronics, Inc. v. Human Electronics, Inc.*,
       320 F. Supp. 2d 1085 (W.D. Wash. 2004) ...................................................... 9

23  *Kassa Ins. Servs., Inc. v. Pugh*,
       180 Wash. App. 1051 (2014) ................................................................ 5, 14

24

25  *Krasnyi Oktyabr, Inc. v. Trilini Imports*,
       578 F. Supp. 2d 455 (E.D.N.Y. 2008) ......................................................... 12

26  *Lloyd v. Ridgefield Lumber Ass'n*,
       38 Wash. 2d 723, 231 P.2d 613 (1951) ........................................................ 6

27

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM –
iii
Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

*Lynch v. Deaconess Med. Ctr.*,
   113 Wash. 2d 162, 776 P.2d 681 (1989) ........................................................ 6

*Machen, Inc. v. Aircraft Design, Inc.*,
   65 Wash.App. 319, 828 P.2d 73 (1992)........................................................ 23

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
   695 F.3d 1322 (Fed. Cir. 2012) ................................................................... 13

*MedImmune, Inc. v. Genentech, Inc.*,
   No. CV 03-2567MRP, 2003 WL 25550611 (C.D. Cal. Dec. 23, 2003)................... 11

*Murphy Electronics, Inc. v. K.R. Anderson Co.*,
   102 Wash. App. 1029 (2000) ................................................................... 2, 5

*Nobelpharma AB v. Implant Innovations, Inc.*,
   141 F.3d 1059 (Fed. Cir. 1998) ........................................................ 9, 11, 12

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) .................................................................................. 12

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
   360 F.3d 1295 (Fed. Cir. 2004) ................................................................ 8, 9

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ..................................................................... 9

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008) ..................................................................... 9

*United Mine Workers of Am. v. Pennington*,
   381 U.S. 657, 85 S. Ct. 1585 , 14 L. Ed. 2d 626 (1965)................................... 11

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
   382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965)..................................... 9, 11

*Waterjet Technology, Inc. v. Flow Intern. Corp.*,
   140 Wash.2d 313, 996 P.2d 598 (2000) ....................................................... 23

*Woo v. Fireman's Fund Ins. Co.*,
   137 Wash. App. 480, 154 P.3d 236 (2007)................................................ 23, 24

**Statutes**

RCW 19.108.010 ...................................................................... 14, 15, 18

RCW 19.108.030 ..................................................................................... 5

U.S. Const. amend. I ................................................................................ 8

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY*
*JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM –*
*iv*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Rules

Fed. R. Civ. P. 56(c) ................................................................................................. 2

Federal Rule of Evidence 502(d) ............................................................................ 4

Other Authorities

Restatement (First) of Restitution § 1 (1937) ......................................................... 6

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY*
*JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM –*
*v*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

**INTRODUCTION**

Eagle Harbor Holdings, LLC ("Eagle Harbor"), MediusTech, LLC ("MediusTech"), and Dan Preston (together "the Counterclaim Defendants") respectfully submit the following motion for summary judgment on Ford Motor Company's ("Ford's") counterclaim for misappropriation of trade secrets (Count XIII).

Ford is suing the Counterclaim Defendants for suing Ford.  Ford says that the Counterclaim Defendants used Ford's trade secrets to come up with a new set of continuation patent claims.  According to Ford, the Counterclaim Defendants then applied to the United States Patent and Trademark Office ("USPTO") for patents containing those claims, and then, once they issued as valid patents, asserted them in a patent infringement lawsuit against Ford.

Ford's counterclaim is infected with numerous infirmities that warrant summary judgment.  Ford has no evidence to establish a genuine issue of material fact with respect to the required elements of a trade secret misappropriation claim.  But more fundamentally, the First Amendment *Noerr-Pennington* doctrine immunizes from statutory and tort liability ***both*** the filing of patent claims so long as they are not filed with knowing and willful fraud, ***and*** the filing of any lawsuit that is not a sham.  Additionally, under black letter Federal Circuit law, federal patent law preempts state-law claims directed at the assertion of patent rights so long as the assertion is not objectively baseless.  If Ford had any evidence that Counterclaim Defendants' continuation patent claims were based on Ford's trade secrets—and not on Counterclaim Defendants' own inventions, as described in Counterclaim Defendants' own specifications to which the continuation patent claims claim priority—Ford's remedy lies in challenging the validity of those patent claims in this lawsuit.  Ford may not simply sue Counterclaim Defendants for suing Ford.

Part I of this Motion sets forth the legal standard for granting summary judgment.  Part II explains that the Court should grant summary judgment because Ford has failed to produce evidence to support any claim that Ford has been damaged or will be damaged as a result of misappropriation of trade secrets.  Part III explains that even if Ford had the required proof of harm, both the *Noerr-Pennington* doctrine and Federal Circuit law on federal patent law

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1   preemption bar Ford's counterclaim.  Part IV describes, for each of the documents that Ford says

2   contains Ford trade secrets, the elements of a trade secret misappropriation claim that Ford

3   cannot meet as a matter of law.

### I. SUMMARY JUDGMENT LEGAL STANDARD

5   A Court should grant summary judgment on a claim if there is no genuine issue of

6   material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P.

7   56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party must

8   first establish a basis for the motion and identify the evidence that shows an absence of material

9   fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d. 265 (1986). After

10   Medius meets its initial burden, Ford must demonstrate that a genuine issue of material fact

11   exists. *See id.* at 324. A genuine issue of material fact is one that would allow a finder of fact to

     return a verdict for the non-movant. *Anderson*, 477 U.S. at 248.

### II. FORD CANNOT ESTABLISH THAT IT HAS BEEN HARMED OR WILL BE HARMED BY ALLEGED TRADE SECRET MISAPPROPRIATION

14   A required element of Ford's trade secret claim is that Counterclaim Defendants' alleged

15   misappropriation "was a proximate cause of damages" to Ford.  *Ada Motors v. Butler*, 2014 WL

16   4067876, at *2 (W.D. Wash. Aug. 18, 2014).  If Ford cannot provide evidence to support its

17   claim that alleged trade secret misappropriation ***caused*** or ***will cause*** Ford harm, then the Court

18   must grant summary judgment in Counterclaim Defendants' favor.  *Murphy Electronics, Inc. v.*

19   *K.R. Anderson Co.*, 102 Wash. App. 1029 (2000) (affirming grant of summary judgment on trade

20   secret claim because "we find that the evidence in the record to support the claim that Murphy's

     losses were caused by the defendants' actions is insufficient to defeat summary judgment.").

22   In Ford's sworn answers to interrogatories, Ford asserts that alleged trade secret

     misappropriation caused harm to Ford in three ways:

24   • Counterclaim Defendants used Ford trade secrets to draft continuation patent claims that
     read on Ford products, and then asserted those continuation claims in this lawsuit against
     Ford;

26   • Counterclaim Defendants were "unjustly enriched" by reaching a Manufacturing
     Agreement with a company called Invotronics ████████████████████████████
     ████████████████████████████████████ and

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 2*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

- Counterclaim Defendants were unjustly enriched "by receiving a ████████████ ████████ loan from Northwater Intellectual Property Fund L.P.2 ("Northwater") to fund Counterclaim Defendants' patent litigation."

Ford cannot establish that a genuine issue of material fact exists with regard to any of these causal theories.  The first theory, related to the drafting of continuation patent claims, fails because Ford has failed to establish a link between its alleged misappropriated trade secrets and any patent claim that was added or amended following Counterclaim Defendants receipt of the alleged trade secrets.  The second and third theories fail as a matter of law because any claim for unjust enrichment must involve enrichment *at the expense* of the party asserting the claim, and Ford does not even allege—much less establish—that the funds Medius received pursuant to its Invotronics agreement or Northwater loan were at the expense of Ford.  Finally, all theories fail because Ford failed to produce any evidence supporting any award of damages, or threat of damages.

**A.  Ford Cannot Establish That Receipt of any Alleged Trade Secret Caused Counterclaim Defendants to Add or Amend any Patent Claim**

Ford's first theory that Counterclaim Defendants' actions caused Ford harm rests on the allegation that Counterclaim Defendants have added or amended continuation patent claims as a result of Counterclaim Defendants' access to Ford's alleged trade secrets.  If that actually happened, one would expect that Counterclaim Defendants' continuation patent claims would be full of information from Ford's alleged trade secrets.  But they are not.

Throughout discovery, despite numerous requests from Counterclaim Defendants that Ford identify information from specific patent claims that was added or amended related to Ford's alleged trade secrets, Ford failed to identify any such information.

- Counterclaim Defendants served an interrogatory on Ford requesting that Ford "[d]escribe in detail all facts that you contend support your allegation that 'Counterclaim Defendants' conduct has caused and is causing damage to Ford,' *including but not limited to all facts that you contend support your allegation that 'Counterclaim Defendants used that information to prosecute patent claims* that they have attempted to direct at SYNC and subsequently asserted in this litigation.'"[1]  X-1[1] (Interrogatory No. 22) at 100. ████████████████

---

[1] All emphasis in this Motion is added, unless otherwise specified.

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 3*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883



- Counterclaim Defendants served an interrogatory on Ford requesting that Ford "[i]dentify what claim or claim terms, within any patent or patent application owned by any Counterclaim Defendant, were created or amended as a result of misappropriation of that trade secret." *Id.* (Interrogatory No. 23) at 108.

- Additionally, during a Rule 30(b)(6) deposition of Ford regarding "damage to Ford by [each alleged trade secret's] misappropriation," Ford admitted that ████████ ████████████████████████████████████████████████████████████ (X-2 (Van Dagens Dep.) at 134:14-137:4).

---

[1] References to exhibits (e.g., X-1) in this brief are to exhibits attached to the Declaration of Jordan Connors, filed concurrently herewith, unless otherwise specified.

[2] Ford purported to serve a further fourth supplementation of its trade secret interrogatory responses the night before this Motion was due to be filed (more than one month after the close of discovery). Defendants have not had a reasonable opportunity to consider any new information that may have been disclosed in such supplementation, and reserve their right to move to strike any such information that Ford may cite in its opposition as having been unseasonably disclosed.

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 4*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

- While Ford has the burden to establish causation for its counterclaim, Ford served no expert report on the expert report deadline related to causation or any alleged Ford trade secret contained within any patent claim.

- Medius served an expert report on this issue from Professor Vijay Madisetti, a Professor in Electrical and Computer Engineering at the Georgia Institute of Technology with more than twenty-five years of experience in the area of embedded computing systems, wireless communications, and digital signal processing, and the author of numerous relevant publications. Madisetti Decl., X-A ¶¶ 8-22. Professor Madisetti explained that he reviewed each of the claims-in-suit that was added or amended after May 2007, and he "concluded that none of the material comprising Ford's alleged trade secrets was used to draft or amend any of the claims listed above." *Id.* ¶¶ 107-110; Madisetti Decl. ¶¶ 94-97.

- Ford served a rebuttal report to Professor Madisetti's report from Professor Philip Koopman. X-3. Even Professor Koopman in his rebuttal report failed to cite to any alleged Ford trade secret information contained within any patent claim that was added or amended after Medius received the alleged Ford trade secrets. *Id.* ¶¶ 75-80.

Thus, Ford's trade secret misappropriation claim related to the prosecution of Counterclaim Defendants' patent claims has a fatal flaw. Ford cannot meet its burden to establish an essential link in the alleged causal chain. Ford says that Counterclaim Defendants took Ford trade secrets and amended their continuation patent claims based on those trade secrets, ***but Ford has not even argued that any continuation patent claim contains an alleged Ford trade secret.*** Because Ford cannot establish this basic connection between the trade secret misappropriation Ford alleges, and the patent claims that Ford says harmed Ford, Ford cannot meet its burden to establish causation. Accordingly, the Court must grant summary judgment in Counterclaim Defendants' favor. *See, e.g.*, *Kassa Ins. Servs., Inc. v. Pugh*, 180 Wash. App. 1051 (2014) ("Under RCW 19.108.030(1), the complainant in an action for misappropriation of trade secrets may recover damages "for the actual loss caused by misappropriation."); *Murphy Electronics, Inc. v. K.R. Anderson Co.*, 102 Wash. App. 1029 (2000).

**B.    Ford's Unjust Enrichment Theories Fail as a Matter of Law**

Under RCW 19.108.030 (1), one of the remedies for misappropriation of trade secrets is that a "complainant also may recover for the ***unjust enrichment*** caused by misappropriation that is not taken into account in computing damages for actual loss." Unjust enrichment is an equitable doctrine "that one shall not be allowed to profit or enrich himself ***at the expense of***

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 5*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

*another contrary to equity.*"  *Lloyd v. Ridgefield Lumber Ass'n*, 38 Wash. 2d 723, 736, 231 P.2d 613, 620 (1951); *Lynch v. Deaconess Med. Ctr.*, 113 Wash. 2d 162, 165, 776 P.2d 681, 683 (1989) ("Quasi contracts are founded on the equitable principle of unjust enrichment which simply states that one should not be unjustly enriched *at the expense of another*."); Restatement (First) of Restitution § 1 (1937) ("A person who has been unjustly enriched *at the expense of another* is required to make restitution to the other.").  Unjust enrichment damages in the trade secret misappropriation context are typically recovered when one company uses the trade secrets of a competitor to increase sales in a market in which the two companies compete.  *See, e.g.*, *Ada Motors, Inc. v. Butler*, 2014 WL 4067876, at *2 (Wash. Ct. App. Aug. 18, 2014).  In that context, the party accused of trade secret misappropriation sometimes receives sales revenue that would have gone to the party's competitor, absent the misappropriation.  *See, e.g.*, *Id.*  That lost sales revenue is then recoverable under a theory of unjust enrichment, upon a showing of proof that the sales revenue was acquired as a result of the misappropriated trade secret. *See, e.g.*, *Id.*

Ford's two unjust enrichment theories of damages fail as a matter of law because neither theory involves a benefit to Counterclaim Defendants *at the expense of* Ford.  Ford tacked on these theories to its second supplemental response to Counterclaim Defendants' interrogatory regarding damages, without explaining how Medius's agreement with Invotronics or its loan from Northwater could have possibly occurred at Ford's expense.  X-1 (Ford Second Supp. Response to Interrogatory No. 22) at 103.   Medius's agreement with Invotronics ███████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████  X-4 (Hemingway Dep.) at 66:5-23; X-5.  Ford's loan from Northwater was for the purpose of "the continued development and execution of a licensing strategy for the EHH patent portfolio related to its MediusTech subsidiary."  X-6.  Ford failed to include any facts in its responses to interrogatories on these subjects to suggest that Ford had some entitlement to these funds, competed in the same market with Medius for these funds, or that Medius received them "at Ford's expense."   X-1 (Ford Supp. Response to Interrogatory No. 22) at 105-07. Accordingly, Ford's claims fail as a matter of law.

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 6*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

**C.   Ford Has Produced No Evidence to Support Any Claim That Ford Has or Will Be Harmed**

Ford's trade secret misappropriation claim also fails because Ford has failed to produce any evidence to support *any* damages claim or claim for an injunction.  Ford alleges that it has it "has been forced to defend itself in litigation against patent claims that were the fruit of improper and illegal conduct by Counterclaim Defendants" and alleges that it is entitled to "damages for the actual loss and unjust enrichment" caused by Counterclaim Defendants' misappropriation. Dkt. No. 330 ¶ 104.  But Ford has produced no evidence to support its claim to any particular amount of damages or to suggest that there is any threat that Ford will be damaged.[1]

Counterclaim Defendants asked Ford's corporate designee regarding Ford's damages to provide specifics on what damages Ford was claiming, and he answered ▮▮▮▮▮▮▮▮▮▮▮▮:



Ford also served no expert report to support any damages related to its counterclaim.

Because Ford has failed to produce any evidence to meet its burden to prove an amount of damages, the Court must grant summary judgment in Counterclaim Defendants' favor.

---

[1] In July, Plaintiffs requested documents "related to or showing the actual loss that Ford has incurred as a result of Plaintiffs' and/or Dan Alan Preston's alleged misappropriation of Ford's trade secrets," as well as documents "related to or showing the attorney's fees and costs that Ford has incurred as a result of Plaintiffs' and/or Dan Alan Preston's alleged misappropriation of Ford's trade secrets."  Connors Decl., X-24 (Plaintiffs' Fifth Set of Requests for Production to Ford), at 6-7. Ford produced two invoices that appeared to show legal costs, but Ford testified that it did not know whether Ford had paid those invoices.  X-2 (Van Dagens Dep.) at 176-77.

[2] X-2 (Van Dagens Dep.) at ; 174:7-17; 178:18-179:3.

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1

2

3

*Crabtree v. Bowers*, 102 Wash. App. 1017 (2000) ("Crabtree has failed to show either the existence or the amount of any damages. Thus, there is no genuine issue of material fact as to this claim and summary judgment was proper.")

4

5

### III. FORD'S CLAIM IS BARRED BY THE *NOERR-PENNINGTON* DOCTRINE AND IS PREEMPTED BY FEDERAL PATENT LAW

6

7

8

9

10

11

12

13

14

15

16

Ford's trade secret claim also fails as a matter of law based on two related doctrines that bar certain claims involving a litigant's right to petition the government or assert patent rights. As discussed above, Ford's only claim that Counterclaim Defendants' conduct harmed **Ford** is that Counterclaim Defendants applied to the USPTO for continuation patent claims, the USPTO granted those continuation patent claims, and Counterclaim Defendants then asserted those claims in this lawsuit against Ford.  Ford's claim is barred by the First Amendment and the *Noerr-Pennington* doctrine because petitioning activity, such as applying to a government agency for a patent, or filing a lawsuit, is immune from tort liability, absent a showing that the patent-owner procured the patent through knowing and willful fraud or that the lawsuit was a sham.  Ford's claim is also barred because federal patent law preempts all state-law claims for liability related to the assertion of a patent, absent a showing that the patent infringement lawsuit is objectively baseless.  Ford has not pled any of the exceptions to these doctrines, and has no evidence to support them.

17

18

### A.   The First Amendment and *Noerr-Pennington* Doctrine Bar Ford's Trade Secret Counterclaim

19

20

21

22

23

24

25

The *Noerr–Pennington* doctrine derives from the First Amendment's guarantee of "the right of the people…to petition the Government for a redress of grievances." U.S. Const. amend. I.  Pursuant to the *Noerr-Pennington* doctrine, "[a] patent owner who brings a suit for infringement, without more, is generally exempt from the antitrust laws for that action." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004); *see also California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (extending the "philosophy" of *Noerr* and *Pennington* to "the approach of citizens or groups of them to administrative

26

27

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

agencies...and to courts"); *accord Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 930 (9th Cir. 2006).[1] While the *Noerr-Pennington* doctrine arose in the antitrust context, it now protects petitioning activity from liability for all statutes and torts. See *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) (applying *Noerr-Pennington* doctrine to state-law tort claims and noting that "plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless"); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) ("[B]ecause *Noerr–Pennington* protects federal constitutional rights, it applies in all contexts, even where a state law doctrine advances a similar goal.").

Under the *Noerr-Pennington* doctrine, a patent owner may be subject to liability for petitioning activity to procure or assert a patent only if the accused infringer pleads and proves one of two exceptions. First, the accused infringer may show that the asserted patent was obtained through "knowing and willful fraud" within the meaning of *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). *Q-Pharma*, 360 F.3d at 1304-05. Second, the accused infringer may show that the infringement suit or other petition was "a mere sham." *Id.* (quoting *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998)).

If petitioning activity—such as applying for a patent to the PTO or asserting a claim for patent infringement—does not meet one of these two exceptions, it is immune from liability. *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) (affirming grant of summary judgment because party asserting state law claims "fail[ed] to show that Globetrotter's assertions of infringement were objectively baseless."); *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, No. C14-0950, 2014 WL 6452173, at *3 (W.D. Wash. Nov. 17, 2014) (Martinez, J.) (granting motion to dismiss state law tort claims aimed at petitioning activity, and stating "[t]o defeat immunity under the *Noerr-Pennington* doctrine, the

---

[1] Federal Circuit law governs the question whether a state law claim is preempted by the federal patent law or barred by the First Amendment. *Globetrotter Software, Inc. v. Elan Computer Group,* 362 F.3d 1367, 1374 (Fed.Cir.2004); *Int'l Electronics, Inc. v. Human Electronics, Inc.*, 320 F. Supp. 2d 1085, 1089 (W.D. Wash. 2004).

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 9*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1   non-moving party must show that the moving party's efforts to protect its legal rights were a

2   'sham.'").

3           **1.      *Ford's Trade Secret Counterclaim Invokes the* Noerr-Pennington *Doctrine in*

4                   *Two Ways***

        Ford's trade secret counterclaim seeks to impose liability on Counterclaim Defendants

5   for their petitioning activity.   A required element of Ford's trade secret claim is that

6   Counterclaim Defendants' alleged misappropriation "was a proximate cause of damages" to

7   Ford.  *Ada Motors v. Butler*, 2014 WL 4067876, at *2 (W.D. Wash. Aug. 18, 2014).   While Ford

8   has failed to prove that any alleged misappropriation caused Ford damage, Ford's only

9   allegations relate to Counterclaim Defendants' petitioning activity—(1) that Counterclaim

10  Defendants applied to a federal agency (the USPTO) for patents, and (2) that Counterclaim

11  Defendants filed a patent infringement lawsuit against Ford to enforce Counterclaim Defendants'

12  patent rights.

13          *First*, Ford alleges that "Counterclaim Defendants used [alleged Ford trade secrets] to

14  prosecute patent claims that they have attempted to direct at SYNC."  Dkt. No. 239 ¶ 104.  Ford

15  elaborated in sworn interrogatory responses that, while Ford could not identify any patent claims

16  that Counterclaim Defendants added or amended as a result of access to Ford's alleged trade

17  secrets, "Counterclaim Defendants have used Ford's trade secrets for the purpose of prosecuting

18  continuation patent applications."  X-1 (Ford Third Supp. Response to Interrogatory No. 22) at

    105.

19          *Second*, Ford alleges that Counterclaim Defendants used patents that it allegedly drafted

20  with the help of Ford's alleged trade secrets to file this lawsuit against Ford.  Dkt. No. 330 ¶ 104

21  ("Ford has been forced to defend itself in litigation against patent claims that were the fruit of

22  improper and illegal conduct").   Ford confirmed in deposition that it had ████████████

23  ██████████████████████████████████████████████████████████████

24  ██████████████████████████████████████  X-2 (Van Dagens Dep.) at 174:7-

25  17.

26          Counterclaim Defendants' applications to the USPTO and lawsuit enforcing patent rights

27  represent government petitions that are protected by the *Noerr-Pennington* doctrine absent one of

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM -
Page 10*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1    the two exceptions. Patent applications are petitions to a government agency—the USPTO—and

2    are therefore protected. *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670, 85

3    S. Ct. 1585, 1593, 14 L. Ed. 2d 626 (1965) ("Joint efforts to influence public officials do not

4    violate the antitrust laws even though intended to eliminate competition. Such conduct is not

5    illegal, either standing alone or as part of a broader scheme . . . ."); *Nobelpharma AB v. Implant*

6    *Innovations, Inc.*, 141 F.3d 1059, 1071 (Fed. Cir. 1998) (explaining that *Noerr-Pennington*

7    immunity can be defeated only by showing of "sham" exception or "knowing assertion of a

8    patent procured by fraud on the PTO"); *MedImmune, Inc. v. Genentech, Inc.*, No. CV 03-

9    2567MRP, 2003 WL 25550611, at *8 (C.D. Cal. Dec. 23, 2003) ("The parties agree that attempts

10   to obtain the issuance of a patent from the PTO are ordinarily covered by *Noerr-Pennington.*").

11   *Noerr-Pennington* protection has also been extended to lawsuits of all kinds, including patent

12   infringement lawsuits. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508,

13   510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition.").

14           There are only two exceptions to *Noerr-Pennington* immunity—knowing and willful

     fraud under *Walker Process*, and "sham" litigation. Ford has pled neither, and can prove neither.

15           **2.      Ford Has Failed to Plead and Cannot Prove Knowing and Willful Fraud**

16           In order for the *Walker Process* fraud exception to apply to *Noerr-Pennington* immunity,

17   "[t]he plaintiff in the [underlying] patent infringement suit must…have been aware of the fraud

18   [on the USPTO] when bringing suit." *Nobelpharma AB,* 141 F.3d at 1068 (citing *Walker*

19   *Process,* 382 U.S. at 177 & n. 6 (1965)). Moreover, the party alleging fraud "must make a

20   greater showing of scienter and materiality than when seeking unenforceability based on conduct

21   before the Patent Office." *C.R. Bard, Inc. v. M3 Systems, Inc.,* 157 F.3d 1340, 1364 (Fed. Cir.

22   1998) (citations and internal quotations omitted). Indeed, the party alleging fraud must show by

23   clear and convincing evidence that the patent was obtained through an intentional, deliberately

24   planned and carefully executed scheme to defraud the Patent Office. *Id.*

25           Ford has not alleged that Counterclaim Defendants engaged in an intentional scheme to

26   defraud the USPTO, and Ford has no evidence to support such a claim. Ford has already

27   attempted to submit evidence to support a claim of inequitable conduct in this case, and Ford's

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY*
*JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM -*
*Page 11*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

only evidence was a single prior art reference that Medius's counsel inadvertently failed to disclose to the USPTO regarding one patent in 2003.  Dkt. No. 335 at 2.  Ford's evidence is insufficient to support inequitable conduct, (*see* Dkt. No. 374), but even if it were sufficient, Ford alleges that Counterclaim misappropriated Ford trade secrets beginning in ***2007***, so conduct that occurred in 2003 has no bearing on Ford's counterclaim.  Additionally, according to the Federal Circuit:  "[F]or an omission such as a failure to cite a piece of prior art to support a finding of *Walker Process* fraud, the withholding of the reference must show evidence of fraudulent intent.[1]  A mere failure to cite a reference to the PTO will not suffice." *Nobelpharma*, 141 F.3d at 1071.

### 3.  Ford Has Failed to Plead and Cannot Prove That Counterclaim Defendants Lawsuit Against Ford Is a Sham

The Supreme Court has outlined a two-part test for the "sham" litigation exception to *Noerr-Pennington*.  A "sham" lawsuit is one where the suit is both "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and "an attempt to interfere directly with the business relationship of a competitor through the use of the governmental process—as opposed to the outcome of that process."  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).

Ford has not pled that Eagle Harbor and MediusTech's patent infringement lawsuit is either objectively baseless, or an attempt to interfere with Ford's business through an abuse of process.  Ford has no evidence to suggest either prong of the test.  *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 63 (1993) (affirming summary judgment on *Noerr-Pennington* grounds because "Columbia had probable cause to sue PRE for copyright infringement."); *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 475 (E.D.N.Y. 2008) (granting summary judgment based on *Noerr-Pennington* because fact that "plaintiff's claims had enough merit to survive defendants' motion to dismiss" proved that "these allegations cannot be viewed as objectively baseless or blatantly false").

---

[1] Additionally, because Ford's inequitable conduct theory relates to a single patent, among nine patents-in-suit, even if Ford were to present evidence of knowing and willful fraud related to that one patent, Ford would still lack evidence that Eagle Harbor's litigation as a whole was the result of that knowing and willful fraud.

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 12*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Accordingly, Ford's state-law tort claim is barred by the *Noerr-Pennington* doctrine to the extent that it rests on either Counterclaim Defendants' patent applications to the USPTO, or the filing of this lawsuit to enforce Counterclaim Defendants' patent rights.   Ford has no evidence to suggest that any exception to *Noerr-Pennington* applies, and the Court should grant Counterclaim Defendants' summary judgment motion on that basis.

**B.      Federal Patent Law Preempts Ford's Trade Secret Counterclaim**

It is black letter Federal Circuit[1] law that "[s]tate tort claims against a patent holder . . . based on enforcing a patent in the marketplace, are 'preempted' by federal patent laws, unless the claimant can show that the patent holder acted in 'bad faith' in the publication or enforcement of its patent."  *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008).  "A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless."  *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) (affirming grant of summary judgment because party asserting state law claims "fail[ed] to show that Globetrotter's assertions of infringement were objectively baseless."); *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1332 (Fed. Cir. 2012) (affirming dismissal of state-law claims for trade libel, defamation, and tortious interference with contractual relations because they involved defendants' conduct in asserting patent claims in good faith).

To establish that patent infringement claims are objectively baseless, Ford would have to provide clear and convincing evidence that Counterclaim Defendants' "infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (citation and internal quotation marks omitted); *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002).

Again, Ford alleges a state-law claim against Counterclaim Defendants, alleging that they harmed Ford by ***bringing the above-captioned patent infringement lawsuit***.  Dkt. No. 330 ¶

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 13*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

104; X-2 (Van Dagens Dep.) at 174:7-17.  Thus, Ford's trade secret counterclaim is a "[s]tate tort claim[] against a patent holder . . . based on enforcing a patent in the marketplace" and is preempted by federal patent laws, unless Ford can show that the lawsuit is objectively baseless. *800 Adept, Inc.*, 539 F.3d at 1369.  But Ford makes no allegation that Eagle Harbor and MediusTech's patent infringement claims are objectively baseless.  Ford has **no evidence** to meet its burden on this issue, let alone the required clear and convincing evidence.  As such, the Court must grant summary judgment on Ford's state law counterclaim for the additional and independent reason that the claim is preempted by federal patent law.

### IV. FORD CANNOT ESTABLISH A MATERIAL ISSUE OF FACT WITH REGARD TO TRADE SECRET MISAPPROPRIATION FOR ANY OF THE ALLEGED MISAPPROPRIATED TRADE SECRETS

In addition to the various independent grounds discussed above to grant summary judgment on Ford's entire trade secret counterclaim, each of the alleged trade secrets that Ford alleges were misappropriated fail for specific, individualized reasons.

Under Washington's Uniform Trade Secrets Act:

"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4).

A claimant under the statute may recover damages "for the actual loss caused by misappropriation."  *Kassa Ins. Servs., Inc. v. Pugh*, 180 Wash. App. 1051 (2014).  Under the statute, "misappropriation" means:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 14*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

(i) Used improper means to acquire knowledge of the trade secret; or

(ii) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was (A) derived from or through a person who had utilized improper means to acquire it, (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

RCW 19.108.010(2).

Ford alleges that Counterclaim Defendants misappropriated Ford trade secrets contained in six documents in three basic categories.  X-1 (Ford Third Supp. Response to Interrogatory No. 14) at 13-16.



While Ford cannot establish numerous required elements with respect to each alleged trade secret, there are particular issues with regard to each alleged secret that lend themselves to summary judgment in Counterclaim Defendants' favor.



*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 15*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Subsection A explains why Ford cannot meet its burden to establish that any of the Counterclaim Defendants misappropriated the 2007 Navox Documents. Subsection B explains why Ford cannot meet its burden to establish that any of the Counterclaim Defendants misappropriated the Traffic, Directions, & Information Spec. And Subsection C explains why Ford cannot meet its burden to establish that the aspects of the Schematic and BOM that were non-public derive independent economic value at all, let alone from being not generally known and not readily ascertainable by proper means.

**A.    Ford Has No Evidence That the 2007 Navox Documents Were Misappropriated**

The 2007 Navox Documents relate to work Medius performed for two companies called Navox and Cross Country beginning in 2007.

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883



- None of the 2007 Navox Documents that Ford says contain its trade secrets are marked with any confidentiality designation. *See* X-7; X-8.

- According to David Patterson, who worked on the project on behalf of Navox and Invotronics,

- Similarly, William Tolhurst,

As such, Medius could not have knowingly obtained the documents by improper

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY*
*JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM -*
*Page 17*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

means, and Ford has no evidence that could create a genuine issue of material fact regarding any Counterclaim Defendant's **misappropriation** of the 2007 Navox Documents.

**B.      Ford Has No Evidence That the Traffic, Directions, & Information Spec Was Misappropriated**

Ford also alleges that Counterclaim Defendants misappropriated a document entitled "SYNC Traffic, Directions, & Information," which Ford says is a Ford trade secret.   X-9. However, Ford has no evidence that Medius misappropriated Traffic, Directions, & Information Spec, and has uncovered no evidence concerning under what circumstances Medius obtained the Traffic, Directions, & Information Spec.

Counterclaim Defendants served an interrogatory on Ford, asking Ford to "Describe in detail what conduct on behalf of each Counterclaim Defendant constituted 'misappropriation,' under RCW 19.108.010 (2), including all facts You contend support Your allegation that each Counterclaim Defendant misappropriated that particular trade secret."   X-1 (Interrogatory No. 15) at 17.   In Ford's 21 pages of responses, Ford identifies no facts related to the Traffic, Directions, & Information Spec, and does not assert or meet its burden to establish that the document was obtained wrongfully.  *Id.* at 17-37.   As such, Ford appears to have abandoned its claim with respect to the SYNC Traffic, Direction, & Information Spec.  Ford cannot establish the absence of a genuine issue of material fact with respect to that document, as Ford's interrogatory answer impliedly concedes.

**C.      Ford Has No Evidence That any Nonpublic Information Within the Schematic and BOM Derive Independent Economic Value From Being Secret**

Ford also alleges that Counterclaim Defendants misappropriated trade secrets within the Schematic and BOM.  X-10.

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 18*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

[REDACTED]

[REDACTED]

Ford cannot establish a genuine issue of material fact as to the independent economic value of the Schematic or BOM for two reasons. *First*, Ford can only offer general evidence about the value of SYNC Generation 2, Ford has failed to specify what ***non-public*** information from either the Schematic or BOM derives independent economic value from remaining secret. *Second*, [REDACTED] —Ford has admitted that it has no evidence that its alleged trade secrets are novel or unique. Each of these issues independently warrants summary judgment.

> ### 1. Ford Has Failed to Specify What Non-Public Information From the Schematic or BOM Derives Independent Economic Value From Remaining Secret, or Provide Evidence Supporting Such Specific Claims

Ford has attempted to identify elements within the Schematic and BOM that constitute Ford's alleged trade secrets, but Ford has failed to identify precisely any alleged trade secrets that were both secret, and that derive independent economic value from being secret. *See* X-1 (Ford Third Supp. Response to Interrogatory No. 14) at 13-16. [REDACTED]

[REDACTED]

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 19*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883



SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27



*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY*
*JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM -*
*Page 21*
*Case No. 3:11-cv-05503-BHS*

S U S M A N  G O D F R E Y  L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

In fact, Ford's expert admits that ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████

██ ██████████████████████████████████████

██ ████████████████████████████████

████████████████████████████████████████

██████████████████

██ ████████████████████████████████████

████████████████████████████████████████

█████████████████████████████

████████████████████████████████████████

██████████████████████████████

████████████████████

X-23 (Koopman Dep.) at 213:22-216:5.

Ford has not specified what particular aspects of the Schematic and BOM derive independent economic value from remaining secret, especially considering the substantial information about SYNC that was already available to the industry and the public in 2010, when the information was disclosed to Medius.

Counterclaim Defendants served an interrogatory requesting that Ford, for each alleged trade secret, "Describe in detail all facts You contend support Your allegation that the particular trade secret derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use."  X-1 (Interrogatory No. 16) at 37.  Ford responded with general information about the costs to develop Ford SYNC Generation 1 and Generation 2, as well as the general statement that ████████████████████████████████████

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 22*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1 ███████████████ *Id.* (Ford Third Supp. Response to Interrogatory No. 16) at 45-49.

2 But Ford's response provided no facts regarding:

3 █ ████████████████████████████████████████

4 ██████████████

5 █ ████████████████████████████████████████

6 ████████████████

7 █ ████████████████████████████████████████

8 ████████████████

9 █ ████████████████████████████████████████

10 ████████████████████████

11 █ ████████████████████████████████████████

████████████████████

12 *Id.*  Accordingly, Ford only has evidence that SYNC Generation 1 and SYNC Generation 2 have

13 value, Ford has no evidence to establish the independent economic value of the precise trade

14 secrets Ford is asserting.

15     **2.**    ***Ford Admits That It Has No Evidence to Suggest That Its Trade Secrets Are More Efficient or Effective Than Its Competitors***

16

17     Additionally, for a particular piece of information or combination of information to

18 qualify as a trade secret, "it must still be shown to have 'novelty and uniqueness." *Woo v.*

19 *Fireman's Fund Ins. Co.*, 137 Wash. App. 480, 489, 154 P.3d 236, 240 (2007) (quoting *Machen,*

20 *Inc. v. Aircraft Design, Inc.*, 65 Wash.App. 319, 327, 828 P.2d 73 (1992), *overruled on other*

21 *grounds*, *Waterjet Technology, Inc. v. Flow Intern. Corp.*, 140 Wash.2d 313, 323, 996 P.2d 598

22 (2000)).  In *Woo*, the Fireman's Fund asserted that a set of manuals contained valuable trade

23 secrets, and attempted to substantiate those claims by submitting declarations stating that:

24         the claims manuals "took several thousand people hours to produce and have evolved over several years." There would be "a serious loss of our property interest" if they were made public. The manuals contained "claims handling philosophies and strategies believed to be unique to Fireman's Fund." The company believed that allowing a competitor to gain access to the materials "would result in economic value to the competitor and place it in a competitive advantage." Smaller insurance companies in particular would gain a competitive

25

26

27

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 23*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

advantage "if they could simply copy the materials it took thousands of hours for Fireman's Fund to prepare."

*Id.* at 239-40.  The *Woo* court rejected the Fireman's Fund's claim to trade secret protection using language that would be appropriate for Ford's trade secret claims in this case:  "The declarations of the claims managers are ***too conclusory to prove that the claims manuals compile information in an innovative way***. The declarations ***do not supply any concrete examples to illustrate how the strategies or philosophies*** of Fireman's Fund claims handling procedures ***differ materially from the strategies or philosophies of other insurers***."  *Id.* at 240. As such, the court reversed a trial court ruling that the manuals deserved protection as trade secrets, stating further that:  "The declarations provide ***no proof that any rival company would want to copy the manuals*** nor do they ***quantify*** in any meaningful way the competitive advantage that the hypothetical plagiarizer would enjoy."  *Id.*

Similarly, Ford has no evidence that any non-public information contained in the Schematic or BOM is novel or unique.  Ford has offered no evidence in discovery that any rival company would want to copy one of Ford's alleged trade secrets, and Ford has failed to quantify in any meaningful way any competitive advantage that the hypothetical plagiarizer would enjoy. In fact, Ford's own rebuttal expert on this topic admitted at deposition that



X-23 (12/9/14 Koopman Dep.) at 197:18-198:8.

Accordingly, Ford cannot establish the absence of a genuine issue of material fact that the Schematic or BOM contains Ford trade secrets.

## CONCLUSION

For each of the independent, foregoing reasons, the Court should grant summary judgment in Counterclaim Defendants' favor on Ford's counterclaim for misappropriation of trade secrets.

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM - Page 24*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

Dated:  December 19, 2014          By: */s/ Jordan Connors*
                                       Parker C. Folse III (WSBA No. 24895)
                                       Ian B. Crosby (WSBA No. 28461)
                                       Floyd G. Short (WSBA No. 21632)
                                       Genevieve V. Wallace (WSBA No. 38422)
                                       Jordan Connors (WSBA No. 41649)
                                       E. Lindsay Calkins (WSBA No. 44127)

                                       SUSMAN GODFREY L.L.P.
                                       1201 3rd Avenue, Suite 3800
                                       Seattle, WA 98101
                                       Tel: (206) 516-3861
                                       Fax : (206) 516-3883
                                       E-Mail:    pfolse@susmangodfrey.com
                                                  icrosby@susmangodfrey.com
                                                  fshort@susmangodrey.com
                                                  gwallace@susmangodfrey.com
                                                  jconnors@susmangodfrey.com
                                                  lcalkins@susmangodfrey.com

                                       *Counsel for Plaintiffs*

*COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY*
*JUDGMENT ON FORD'S TRADE SECRET COUNTERCLAIM -*
*Page 25*
*Case No. 3:11-cv-05503-BHS*

S U S M A N   G O D F R E Y   L . L . P .
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who have registered for electronic notifications as follows:

| | |
|---|---|
| Duncan E. Manville<br>**Savitt Bruce & Willey LLP**<br>1425 Fourth Ave, Suite 800<br>Joshua Green Building<br>Seattle, WA 98101<br>Tel: (206) 749-0500<br>Fax: (206) 838-2661<br>Email: dmanville@sbwllp.com | Michael J. Summersgill<br>Sarah Beigbeder Petty<br>Rebecca Izzo<br>Michaela P. Sewall<br>Michael Heyison<br>Jonathan Woodard<br>Alexandra Amrhein<br>**Wilmer Cutler Pickering Hale & Dorr LLP**<br>60 State Street<br>Boston, MA 02109<br>Tel: (617) 526-6000<br>Fax: (617) 526-5000<br>Emails:<br>   michael.summersgill@wilmerhale.com<br>   sarah.petty@wilmerhale.com<br>   rebecca.izzo@wilmerhale.com<br>   michaela.sewall@wilmerhale.com<br>   michael.heyison@wilmerhale.com<br>   jonathan.woodard@wilmerhale.com<br>   alexandra.amrhein@wilmerhale.com |
| Todd C. Zubler<br>Grant K. Rowan<br>Elise Miller<br>Stuart Allen<br>**Wilmer Cutler Pickering Hale & Dorr LLP**<br>1875 Pennsylvania Avenue NW<br>Washington, DC 20006<br>Tel: (202) 663-6636<br>Fax: (202) 663-6363<br>Emails: grant.rowan@wilmerhale.com<br>   todd.zubler@wilmerhale.com<br>   elise.miller@wilmerhale.com<br>   stuart.allen@wilmerhale.com | David Smith<br>**Wilmer Cutler Pickering Hale & Dorr LLP**<br>950 Page Mill Road<br>Palo Alto, CA 94304<br>Tel: (650) 858-6168<br>Fax: (650) 858 6100<br>Emails: david.smith@wilmerhale.com |
| Cosmin Maier<br>**Wilmer Cutler Pickering Hale & Dorr LLP**<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Tel: (212)230-8816 | Frank A. Angileri<br>John S. LeRoy<br>Amy C. Leshan<br>Johnathan D. Nikkila<br>**Brooks Kushman P.C.**<br>1000 Town Center, 22nd Floor |

*CERTIFICATE OF SERVICE*
*Case No. 3:11-cv-05503-BHS*
*Page 1*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

| | |
|---|---|
| Fax: (212) 230 8888<br>Emails: cosmin.maier@wilmerhale.com | Southfield, MI 48075<br>Tel:  (248)358-4400<br>Fax: (248) 358-3351<br>Emails: fangileri@brookskushman.com<br>       jleroy@brookskushman.com<br>       aleshan@brookskushman.com<br>       jnikkila@brookskushman.com |
| Peter T. Petrich<br>**DAVIES PEARSON P.C.**<br>920 Fawcett Ave.<br>P.O. Box 1657<br>Tel: (253) 620-1500<br>Fax: (253) 572-3052<br>Email: ppetrich@dpearson.com | |

_/s/ Karon Allen_

*CERTIFICATE OF SERVICE*
*Case No. 3:11-cv-05503-BHS*
*Page 2*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883