UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EAGLE HARBOR HOLDINGS, LLC, and MEDIUSTECH, LLC,

    Plaintiffs,

v.

FORD MOTOR COMPANY,

    Defendant.

CASE NO. C11-5503 BHS

ORDER DENYING COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Counterclaim Defendants Eagle Harbor Holdings, LLC, and MediusTech, LLC's (collectively "Eagle Harbor") motion for summary judgment on counterclaim for trade secret misappropriation (Dkt. 392). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On February 24, 2012, Eagle Harbor filed a second amended complaint alleging Defendant Ford Motor Company ("Ford") infringes numerous patents. Dkt. 61. On July 16, 2014, Ford filed an amended answer and asserted numerous counterclaims, including

a counterclaim for misappropriation of Ford's trade secrets and a counterclaim for a violation of Washington's Uniform Trade Secrets Act, RCW Chapter 19.108 ("UTSA"). Dkt. 329, ¶¶ 75-105.

On December 19, 2014, Eagle Harbor filed a motion for summary judgment on Ford's counterclaim for misappropriation of trade secrets. Dkt. 392. On January 16, 2015, Ford responded. Dkt. 410. On January 26, 2015, Eagle Harbor replied. Dkt. 432.

## II. FACTUAL BACKGROUND

Ford alleges that Eagle Harbor misappropriated Ford trade secrets contained in six documents in three basic categories. Dkt. 393, Exh. 1 at 13-16. Three of the documents relate to Medius's work as an advisor to a company called Navox in 2007. *Id*. Exhs. 7 & 8 (the "2007 Navox Documents"). Medius received one of the documents—a "SYNC Traffic, Directions, & Information" specification in 2007— from Invotronics pursuant to a confidentiality agreement. *Id*., Exh. 9 ("TDI specification"). The other two documents are a schematic and bill of materials for Ford SYNC Gen 2 related to Medius's manufacturing agreement with Invotronics in 2010. *Id*., Exh. 10 & 11 (the "Schematic" and "BOM").

## III. DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Eagle Harbor's Motion**

Eagle Harbor moves for summary judgment on Ford's counterclaim for trade secret misappropriation because (1) Ford has no evidence of injury, (2) the claim is either preempted by federal law or barred by the *Noerr-Pennington* Doctrine, and (3) Ford is unable to establish a material question of fact for trial.  Dkt. 392 at 8-30.

**1.     UTSA**

The UTSA defines misappropriation to include "[a]cquisition of a trade secret" or "[d]isclosure or use of a trade secret . . . ."  RCW 19.180.010.  The act provides for both injunctive and monetary relief.  RCW 19.180.020 & 19.180.030.

In this case, Eagle Harbor argues that Ford's claim fails because Ford has failed to establish grounds for an injunction and failed to establish recoverable damages.  First, Eagle Harbor argues that, when considering injunctive relief, "Washington courts have adopted a test . . ., which requires 'a high degree of probability of inevitable and immediate . . . use of . . . trade secrets.'"  Dkt. 432 at 10 (citing *Solutec Corp. v. Agnew*, 88 Wn. App. 1067 (1997)).  Contrary to Eagle Harbor's contention, an unpublished decision from one Washington appellate court, does not establish that "Washington courts" have adopted this standard for the issuance of an injunction.  Moreover, under the statute, a court may compel "affirmative acts to protect a trade secret . . . ."  RCW 19.108.020(3).  If Ford proves that Eagle Harbor actually possesses Ford's trade secrets, then Ford is correct that, at the very least, it is entitled to an injunction compelling Eagle Harbor to return those confidential trade secrets to Ford.  Dkt. 410 at 12.  To the extent that Eagle Harbor is arguing that "Ford seeks an expansive and debilitating injunction"

(Dkt. 432 at 11), the extent of a requested injunction is irrelevant to the issue of whether Ford may be entitled to any injunction. Moreover, the scope of any injunction is a post-verdict issue that, if necessary, would most likely require additional briefing. Therefore, the Court denies Eagle Harbor's motion on the issue of injunctive relief.

Second, Ford's damages claim is based on theories of unjust enrichment. In Washington, once liability is shown, then the law

> requires the defendant to explain why any particular portion of the money that it received as a result of the misappropriating transaction should not be considered an "actual loss" suffered by the plaintiff under RCW 19.108.030(1).

*Petters v. Williamson & Associates, Inc.*, 151 Wn. App. 154, 165 (2009). This is a question of fact. *Id*. at 166. Ford presents evidence that, at the very least, Eagle Harbor granted a license and obtained money from Invotronics based on the alleged misappropriated material. Dkt. 410 at 16–17. Even if Ford would not have licensed its technology to Invotronics, Eagle Harbor has been unjustly enriched by allegedly obtaining funding with misappropriated trade secrets. This establishes a question of fact for trial, and Eagle Harbor bears the burden of showing why any particular portion of this license was not based on Ford's information. Therefore, the Court denies Eagle Harbor's motion on this issue.

    **2.**    **Preemption and *Noerr-Pennington***

The only dispute under these doctrines revolves around the basis for Ford's claim. Eagle Harbor argues that Ford's claim is either completely preempted or is barred by the

ORDER - 5

*Noerr-Pennington* doctrine.[1]  Dkt. 392 at 14–20.  While Ford doesn't explicitly concede that certain types of claims are preempted and/or barred, it argues that its claim is neither preempted nor barred because it is based on the improper acquisition of trade secrets *before* Eagle Harbor petitioned the government.  Dkt. 410 at 18-23.  According to Ford, there is a complete absence of case law showing that its claim is improper.  *Id*.  The Court agrees.  To the extent that Ford's claim is limited to the unauthorized acquisition of trade secrets, this is a valid state law claim that is neither preempted nor barred by *Noerr-Pennington*.  Therefore, the Court denies Eagle Harbor's motion on these issues.

### 3.  Trade Secrets

Eagle Harbor argues that the 2007 Navox Documents and the TDI specification were not misappropriated and that the Schematic and the BOM are not trade secrets.  Dkt. 392 at 22.  In order to meet its burden, Ford must show that "[a]t the time of disclosure or use" of the trade secret, Eagle Harbor "knew or had reason to know" that the information was a trade secret.  RCW 19.108.010(b)(ii).  Eagle Harbor argues that Ford lacks evidence showing that Eagle Harbor knew or should have known that the 2007 Navox documents contained any of Ford's confidential information.  Dkt. 392 at 23.  Ford responded and cited the depositions of three people who stated that the documents contained Ford's confidential information.  Dkt. 410 at 31–32.  The Court finds that Ford

---

[1] Pursuant to the *Noerr-Pennington* doctrine, "[a] patent owner who brings a suit for infringement, without more, is generally exempt from the antitrust laws for that action." *QPharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004).  The parties agree that the doctrine has also been used to bar some state law tort claims.  Ford, however, correctly argues that the "*Noerr-Pennington* doctrine protects the right to petition the government; it does not protect the underlying theft of trade secrets."  Dkt. 410 at 22.

has submitted sufficient evidence to raise a question of fact on this issue.  Therefore, Eagle Harbor's motion is denied on this issue.

With regard to the TDI specification, Eagle Harbor argues that Ford has produced no evidence of how this document was improperly acquired.  Dkt. 392 at 24.  Ford responds that there is sufficient circumstantial evidence that Mr. Preston possessed the document containing Ford's confidential information.  Dkt. 410 at 30.  If this was the only document in question, then it would be difficult to conclude that mere possession of confidential information establishes a question of fact that the information was improperly acquired.  Ford, however, has evidence that Eagle Harbor acquired other confidential information that, when construing the inferences in Ford's favor, creates a question of fact for the jury.  Therefore, the Court denies Eagle Harbor's motion on this issue.

With regard to the Schematic and the BOM, Eagle Harbor argues that this information does not qualify as a trade secret.  The determination in a given case whether specific information is a trade secret is a question of fact.  *Rucker*, 137 Wn.2d 437 (1999).  "A trade secrets plaintiff need not prove that every element of an information compilation is unavailable elsewhere."  *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 50 (1987) (citing *Hayes-Albion Corp. v. Kuberski*, 364 N.W.2d 609 (1984)).  "Such a burden would be insurmountable since trade secrets frequently contain elements that by themselves may be in the public domain but together qualify as trade secrets."  *Boeing*, 108 Wn.2d at 50.

In this case, Ford has submitted evidence that creates a question of fact whether the Schematic and the BOM contain valuable, non-public information. Ford's engineers have submitted declarations attesting to the confidential nature of the disclosures and to the large investment Ford made to develop the information. Dkt. 410 at 25–27. Moreover, the engineers declare that, while the information itself may be in the public domain, the specific compilation that Ford created is not publically available. While Eagle Harbor disputes these contentions, those are matters that must be resolved by the fact finder and are not susceptible to resolution on summary judgment. Therefore, the Court denies Eagle Harbor's motion on this issue.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Eagle Harbor's motion for summary judgment (Dkt. 392) is **DENIED**.

Dated this 11th day of February, 2015.

BENJAMIN H. SETTLE
United States District Judge