UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EAGLE HARBOR HOLDINGS, LLC,
and MEDIUSTECH, LLC,

                    Plaintiffs,

v.

FORD MOTOR COMPANY,

                    Defendant.

CASE NO. C11-5503 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Plaintiffs Eagle Harbor Holdings, LLC, and

MediusTech, LLC's (collectively "Medius") motion for summary judgment of no

inequitable conduct and no failure to comply with 35 U.S.C. § 287. Dkt. 380. The Court

has considered the pleadings filed in support of and in opposition to the motion and the

remainder of the file and hereby grants the motion in part and denies the motion in part

for the reasons stated herein.

## I. PROCEDURAL HISTORY

On February 24, 2012, Medius filed a second amended complaint alleging

Defendant Ford Motor Company ("Ford") infringes numerous patents, including U.S.

1    Patent No. 6,615,137 ("'137 patent") and U.S. Patent No. 7,146,260 ("'260 patent"). Dkt.

2    61. On July 16, 2014, Ford filed an amended answer and asserted affirmative defenses of

3    (1) inequitable conduct in the prosecution of the '137 patent and (2) failure to mark

4    devices that practice the '260 patent. Dkt. 329.

5         On May 29, 2014, Medius filed a motion for summary judgment on Ford's claim

6    of inequitable conduct. Dkt. 276. On August 12, 2014, the Court denied Medius's motion

7    for summary judgment. Dkt. 335.

8         On December 17, 2014, Medius filed the instant motion for summary judgment of

9    no inequitable conduct and no failure to comply with 35 U.S.C. § 287. Dkt. 380. On

10   January 14, 2015, Ford responded. Dkt. 400. On January 23, 2015, Medius replied. Dkt.

11   423.

12                          **II. FACTUAL BACKGROUND**

13        The facts relevant to the motion of no inequitable conduct are undisputed. The

14   parties, however, dispute the inferences that may be drawn from these facts. On June 26,

15   2001, patent prosecution attorney Stephen Ford filed the '137 patent application on

16   behalf of Dan Preston. On June 26, 2002, Mr. Ford filed a European patent application

17   that in all material respects was identical to and relied upon the '137 application. On

18   January 27, 2003, the European Patent Office sent Mr. Ford an international search report

19   identifying prior art references, including European Patent Application No. 841,648 (the

20   "Hitachi Reference"). Approximately two months later, Mr. Ford submitted an

21   information disclosure statement to the U.S. Patent Office, but failed to cite the Hitachi

22   Reference. Mr. Ford declares that he intended to cite the Hitachi Reference, but did not

because of a clerical mistake. Dkt. 276-2 at 13–15. Mr. Ford asserts that an information

disclosure packet of the wrong patent application (the '364 patent) was inadvertently sent

to the U.S. Patent Office. *Id.* Since their last motion for summary judgment (Dkt. 276),

Medius has submitted the information disclosure statement of the disputed '137 patent

(Dkt. 343-3) and the unrelated international search report of the mistaken '364 patent

(Dkt. 343-1).  The two documents show an identical list of references.

   The affirmative defense under the marking statute, 35 U.S.C. § 287, stems from a

prototype of the '260 patent. Medius licensed the '260 patent to Takata, a separate

company. Dkt. 380 at 9. Medius assisted Takata with installing the software onto

Takata's own hardware device for use as a development tool. Dkt. 386-4. In his

deposition testimony, the named inventor, Mr. Preston, states that the software licensed to

Takata would be an embodiment of the '260 patent if used on the "appropriate

hardware." *Id.* at 8–9. Mr. Preston also testified in a line of questioning:

> Q: Did you ever supply a fully working product that embodied any
> of the asserted patents?
> A: Yes….
> Q: And it's your belief that software embodied some of the asserted
> patents in this case?
> A: Yes.
> Q: And just generally, can you tell us which asserted patents?...
> A: …we have embodied the '260….

Dkt. 400 at 22.

   Mr. Preston declared that Medius assisted Takata in installing and implementing

that software. *Id.* ("I believe Takata paid $175,000, as I recall, for – and they come [sic]

out and worked with us and the tool for two or three weeks in 2007… but I believe they

paid … for some software and some time to implement the software with their system.")
It is now disputed whether that device, created by both Takata and Medius, was an
embodiment of the '260 patent. *See* Dkt. 423 at 15.

### III. DISCUSSION

This motion presents two issues for summary judgment. Firstly, Medius requests
that the Court rule that there was no inequitable conduct in the prosecution of the '137
patent Medius now seeks to enforce against Ford. Secondly, Medius requests that the
Court rule that Ford is not entitled to an affirmative defense of failure to mark protected
devices under 25 U.S.C. § 287.

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).
The moving party is entitled to judgment as a matter of law when the nonmoving party
fails to make a sufficient showing on an essential element of a claim in the case on which
the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323
(1986). There is no genuine issue of fact for trial where the record, taken as a whole,
could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must
present specific, significant probative evidence, not simply "some metaphysical doubt").
*See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if
there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

1   jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

2   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

3   626, 630 (9th Cir. 1987).

4        The determination of the existence of a material fact is often a close question. The

5   Court must consider the substantive evidentiary burden that the nonmoving party must

6   meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

7   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

8   issues of controversy in favor of the nonmoving party only when the facts specifically

9   attested by that party contradict facts specifically attested by the moving party.  The

10  nonmoving party may not merely state that it will discredit the moving party's evidence

11  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

12  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

13  nonspecific statements in affidavits are not sufficient, and missing facts will not be

14  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

15  **B.    Inequitable Conduct**

16       Ford accuses Medius of inequitable conduct in the prosecution of the '137 patent,

17  which Medius seeks to enforce against Ford. To prevail on this affirmative defense, Ford

18  has the burden of proving, by clear and convincing evidence, that Medius made a

19  material misrepresentation or omission, and that Medius acted with intent to deceive the

20  U.S. Patent Office. *Therasense, Inc. v. Becton, Dickinson & Co.,* 649 F.3d 1276 (Fed.

21  Cir. 2011) (*en banc*). With respect to deceptive intent, to meet the clear and convincing

22  standard of proof, specific intent to deceive must be "the single most reasonable inference

able to be drawn from the evidence." *Id.* at 1290–91. The Court is the fact finder of an

inequitable conduct affirmative defense. *PerSeptive Biosys., Inc. v. Pharmacia Biotech,*

*Inc.,* 225 F.3d 1315, 1318 (Fed. Cir. 2000); *see also Am. Calcar, Inc. v. Am. Honda*

*Motor Co., Inc.,* 651 F.3d 1318, 1333 (Fed. Cir. 2011). Under these standards, to succeed

at summary judgment, Medius must demonstrate that Ford cannot show that an intent to

deceive is the single most reasonable inference to be drawn from the facts.

The parties do not dispute the materiality of the undisclosed reference. Dkts. 380,

400, & 423.  The question presented is whether Medius had specific intent to deceive the

U.S. Patent Office. Ford is correct that inferences may be drawn from the facts in order to

establish inequitable conduct, however, that inference must be the "single most

reasonable inference able to be drawn from the evidence." *Thereasense,* 649 F.3d at

1290. New evidence, submitted for consideration of this motion, shows an identical

submission of references to the U.S. Patent Office as was received from the European

Patent Office concerning the '364 search report. In light of this new information, the

Court recognizes that a clerical error is equally as reasonable of an explanation for

Medius's conduct. Consequently, no fact finder could decide by clear and convincing

evidence that Medius engaged in inequitable conduct. Ford has, therefore, failed to show

that Medius had specific intent to deceive the U.S. Patent Office. The Court grants

Medius's motion for summary judgment on Ford's affirmative defense of inequitable

conduct.

**C.     35 U.S.C. § 287**

Patentees who fail to comply with the marking statute may only recover damages for infringement after notice is given to the alleged infringer. The statute provides in relevant part:

> Patentees ... making, offering for sale, or selling ... any patented article ... may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure to so mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). Generally, under the marking statute, a party "is entitled to damages from the time when it either began marking its products in compliance with section 287(a) or when it actually notified [the infringer] of its infringement, whichever is earlier." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.,* 6 F.3d 1523, 1537 (Fed. Cir. 1993).

The patentee bears the burden of proving compliance with the marking statute by a preponderance of the evidence. *Nike, Inc. v. Wal-Mart Stores, Inc.,* 138 F.3d 1437, 1446 (Fed. Cir. 1998). "*Where the moving party has the burden* – the plaintiff on a claim for relief or the defendant on an affirmative defense – *his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.*" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation omitted).  Medius must, therefore, show that no reasonable fact finder could find

ORDER - 7

1    that Medius, or any of its licensees, ever produced an unmarked device that practiced any

2    of its protected technology.

3         Ford asserts that the device created by Medius and Takata fully embodied the '260

4    patent and that the device was not marked. Dkt. 300 at 21. Though Medius now denies a

5    device with the "appropriate hardware" existed (Dkt. 423 at 15), Mr. Preston, testifying

6    for Medius, has declared that the Takata device embodied the '260 patent. Dkt. 386-4 at

7    8–9. Viewing the facts in the light most favorable to Ford, there exists a reasonable

8    inference that Takata had a prototype that embodied the '260 patent. At the present time,

9    Medius has failed to produce evidence conclusively showing that such a device never

10   existed, or if it did exist, that it was properly marked.  Based on the evidence and lack

11   thereof, Medius has failed to show that no reasonable trier of fact could find other than

12   for Medius.  Therefore, the Court denies Medius's summary judgment motion regarding

13   Ford's affirmative defense for failure to mark.

14                                      **IV. ORDER**

15        Therefore, it is hereby **ORDERED** that Medius's motion for summary judgment

16   (Dkt. 380) is **GRANTED** in part and **DENIED** in part as stated herein.

17        Dated this 11th day of February, 2015.

18

19   _____

20   BENJAMIN H. SETTLE
     United States District Judge

21

22

ORDER - 8