UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EAGLE HARBOR HOLDINGS, LLC, and MEDIUSTECH, LLC,

Plaintiffs,

v.

FORD MOTOR COMPANY,

Defendant.

CASE NO. C11-5503 BHS

ORDER GRANTING IN PART AND DENYING IN PART FORD'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Ford Motor Company's ("Ford") motion for summary judgment. Dkt. 373. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On February 24, 2012, Plaintiffs Eagle Harbor Holdings, LLC, and MediusTech, LLC (collectively "Medius") filed a second amended complaint alleging Ford infringes numerous patents. Dkt. 61.

On July 29, 2013, the Court-appointed Special Master, Lawrence Graham, issued an order construing disputed terms of the asserted patents. Dkt. 167. On November 13, 2013, the Court adopted that order as an order of the Court. Dkt. 184. On February 26,

2014, Ford filed a motion to strike Medius's undisclosed infringement theory. Dkt. 239. On March 17, 2013, the Court granted the motion in part and denied the motion in part and ordered further claim construction regarding the movement of applications with the system of processors. Dkt. 267. On August 8, 2014, the Special Master issued an order construing additional limitations. Dkt. 333. On September 22, 2014, the Court adopted the constructions as an order of the Court. Dkt. 345.[1]

On December 17, 2014, Ford filed the instant motion for summary judgment. Dkt. 373. Ford contends that (1) U.S. Patent No. 6,615,137 (the "'137 Patent") is not infringed or is invalid as anticipated; (2) U.S. Patent Nos. 7,146,260 (the "'260 Patent"), 7,778,739, 7,793,136, 8,006,117, 8,006,118, 8,006,119, 8,020,028, and 8,027,268 (collectively "Processor Patents") are not infringed or are invalid for lack of written description; (3) damages should be limited for failure to mark; and (4) Medius fails to submit sufficient evidence of willful infringement. *Id*. On January 14, 2015, Medius responded. Dkt. 404. On January 23, 2015, Ford replied. Dkt. 427.

## II. FACTUAL BACKGROUND

With regard to the '137 Patent, Medius asserts that Ford induces its customer to infringe the patent by using Ford's Active Park Assist ("APA") system. The '137 Patent discloses a collision avoidance technology. *See* Dkt. 404 at 16–19 (overview of technology). Ford contends that "APA is a parking assistance system that is designed to automatically steer a car into a parallel parking space." Dkt. 373 at 15. Medius asserts

---

[1] For purposes of clarity, the Court will refer to the Special Master's reports and the Court orders adopting those reports collectively as actions of the Special Master.

1  that Ford induces its customers to use the APA with owner's manuals and other
2  instructive materials. Medius's expert, Dr. Paul Min, asserts that APA directly infringes
3  the '137 Patent. Dkt. 404-3 (expert report).

4  With regard to the Processor Patents, Medius contends that Ford's SYNC system
5  infringes these patents. The SYNC system is an "infotainment system . . . designed for
6  simplicity, reliability, and cost-effectiveness . . . ." Dkt. 373 at 31. Ford asserts
7  numerous non-infringement contentions and asserts that the patents lack a proper written
8  description of the claimed subject matter.

9  With regard to the marking issue, the facts are set forth in the Court's order
10 denying Medius's motion on this issue. Dkt. 483.

11 With regard to willful infringement, Ford asserts that Medius has failed to support
12 its claim as a matter of law. Dkt. 373 at 76–82. Medius responds citing numerous facts
13 evidencing an ongoing business relationship that began in early 2001. Dkt. 404 at 68.
14 The relationship appears to have broken down sometime in 2008. Dkt. 404-44 at 45.
15 After that, Medius's counsel sent multiple emails to Ford alleging patent infringement.
16 *Id*. at 46–48.

17                     **III.  DISCUSSION**

18 **A.     Summary Judgment Standard**

19 Summary judgment is proper only if the pleadings, the discovery and disclosure
20 materials on file, and any affidavits show that there is no genuine issue as to any material
21 fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).
22 The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### B. Induced Infringement

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To establish liability under section 271(b), a patent holder must prove that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc).

In this case, Medius asserts that Ford induces infringement of claim 29 of the '137 Patent by encouraging its customers to use Ford's APA system. The parties do not dispute Ford's knowledge of the patent. Ford, however, does dispute whether Medius has submitted evidence of Ford's specific intent to encourage its users to infringe, whether APA generates a "steering queue" as required by the patent, and, if APA does infringe, whether the patent is invalid over prior art. Dkt. 373 at 20–30.

#### 1. Specific Intent

Evidence that a defendant "instructed its . . . customers about how to use [the claimed invention] . . . is sufficient to create a genuine issue of material fact as to whether [the defendant] had the requisite specific intent to induce infringement." *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1376 (Fed. Cir. 2011).

In this case, there is no dispute that Ford supplies owner's manuals and instructions on how to use APA. Such evidence is sufficient to create a question of fact on the issue of specific intent. Ford argues that more evidence is required, but fails to cite a binding case for this proposition. Therefore, the Court denies Ford's motion on this issue.

### 2. Direct infringement

Infringement is a question of fact. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129-31, 1135 (Fed. Cir. 2011). To determine infringement, the fact-finder compares the construed claims to the allegedly infringing device and determines whether every limitation is present. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). Application of the Court's constructions to the accused product is a fact question for the jury, even where the parties agree on how the accused product works. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301–02 (Fed. Cir. 2011). A conflict between the parties' experts on a material issue constitutes a fact question that defeats summary judgment. *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011).

In this case, Ford moves for summary judgment arguing that Medius's "new" theory of infringement is procedurally improper and, even under the allegedly new theory, APA does not actually infringe. Dkt. 373 at 20–24.

### a. Disclosure

The Local Patent rules require Medius to provide Ford with a "chart identifying specifically where each element of each Asserted Claim is found within each Accused Device." Local Patent Rule 120(c). "Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process." *Id*. 120(b). "These rules are designed to streamline the pre-trial and claim construction process, and generally to reduce the cost of patent litigation." *Id*. 101.

In this case, the Court recognizes that an ambiguity may exist in Medius's infringement contentions on the issue of when the APA calculates a steering queue. Those contentions disclosed that "[t]he APA System's onboard computer generates a trajectory or path for the vehicle to travel for parking in the identified parking space that avoids collision with the identified objects defining the space." Dkt. No. 375-1, Exhibit 15 at 3. Ford reads this sentence to disclose only an initial trajectory. Dkt. 373 at 24. Medius, on the other hand, argues that its theory was never constrained to an initial trajectory and that Dr. Min's report adequately discloses an iterative process of determining the kinematic state of objects, evaluating collision conditions, and then instructing the driver. Dkt. 403-3 at ¶¶ 86–88. The Court finds that any ambiguity should have been brought to the Court's attention before this stage of the proceeding so that the ambiguity could have been resolved during the second claim construction. Moreover, the case Ford cites in support of its request to strike is distinguishable because it involved a new contention under the doctrine of equivalents that was asserted, in a footnote to a summary judgment response, with a motion to amend the previously asserted contentions. *See Microscan Sys., Inc. v. Cognex Corp.*, No. C08-833RSM, 2010 WL 3584448, at *6 (W.D. Wash. Sept. 10, 2010). Here, the alleged ambiguity does not rise to the level of prejudice that would justify restriction, as a matter of law, to the calculation of only an initial trajectory. Therefore, the Court denies Ford's motion on this issue.

### b.     Actual Infringement

In this case, the parties submit expert reports with competing theories of whether APA infringes the '137 Patent.  Issues exist mainly because the '137 Patent discloses a dynamic collision avoidance system that Medius contends is infringed by a parking assistance feature.  While there will be significant issues for cross-examination, the Court is unable to conclude that, taking the facts and inferences in the light most favorable to Medius, no reasonable juror could accept Dr. Min's theory.[2]  Therefore, the Court denies Ford's motion for summary judgment on this issue.

### 3.     Invalidity

In this case, Ford asserts the alternative argument that, if APA infringes, then the '137 Patent is invalid in light of U.S. Patent No. 4,931,930 ("Shyu Patent").  Dkt. 373 at 25–29.  Patents, however, are presumed valid.  35 U.S.C. § 282.  Ford can only overcome this presumption if it shows invalidity by clear and convincing evidence.  *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003).  Anticipation of a patent is "a question of fact."  *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1331 (Fed. Cir. 2010) (citation omitted)

Ford has failed to meet its burden on this issue.  When a question of fact exists whether a feature infringes a patent, then a question of fact almost necessarily exists whether a patent is invalid if it infringes.  Regardless, Ford has failed to show an absence

---

[2] It may be that there is confusion on how APA actually works.  For example, it seems that Dr. Min's report is based off an analysis of Ford's engineering documents.  Such analysis, however, could potentially be easily disproven with a video showing a Ford vehicle running over a cardboard box while performing a complete APA maneuver.

of questions of material facts regarding anticipation. Therefore, the Court denies Ford's motion on this issue.

**C.  The Processor Patents**

Ford argues that SYNC does not infringe Medius's Processor Patents and, if it does, some of Medius's patents are invalid for a lack of written description. Dkt. 373 at 30–69.

    **1.  Infringement**

Ford asserts seven non-infringement contentions, which the Court will address individually.

        **a.  Configuration Managers**

Ford argues that SYNC does not include the required configuration managers set forth in claim 9 of the '260 patent. Dkt. 373 at 39–41. First, Ford asserts that claim 9 includes a specific limitation based on the prosecution history and "proposed interpretations." Dkt. 427 at 20–21. To the extent that Ford requests additional claim construction, the Court declines to engage in any such exercise. The parties, the Special Master, and the Court have engaged in two separate claim constructions, and Ford's attempt to narrow the claims as a matter of law at this point of the proceeding is improper.

With regard to whether Ford's product infringes claim 9, Ford argues that Medius's expert has failed to identify a configuration manager in the SYNC system. Dkt. 373 at 41. Dr. Min, however, identified this feature in his opening report. Dkt. 404-6 at 48. Ford counters that Dr. Min failed to explicitly identify the actual code comprising a

1  configuration manager. Dkt. 373 at 41. But, in his deposition, Dr. Min stated that a

2  configuration manager need not be composed entirely of code. These statements are

3  sufficient to create questions of fact for the jury. Moreover, Ford has failed to show that

4  a limitation of the patent claim is that the configuration manager must be composed

5  entirely of software code. Therefore, the Court denies Ford's motion on this issue.

### b. Distributed Processing System

7  Ford argues that SYNC is not a "distributed processing system" as required by

8  five of the asserted claims. Dkt. 373 at 41–44. The problem with Ford's argument is

9  that, although the Special Master's discussion of this claim limitation covers the

10  requirement of distributed tasks, Ford's proposed construction included the term "can be

11  distributed . . . ." Dkt. 165 at 42–45. Thus, Ford requested and the Special Master

12  adopted a construction that is permissive, not mandatory. This is fatal to Ford's motion

13  for summary judgment on this issue, which is based *completely* on the requirement of the

14  distribution of software between processors. Moreover, the Court declines Ford's

15  attempt to limits the claims based on the deposition of the named inventor.[3] Dkt. 427 at

16  22–23. Therefore, the Court denies Ford's motion on this issue.

### c. Loading Applications

18  Ford argues that SYNC does not infringe some asserted claims because SYNC

19  loads applications at initial boot whereas the asserted claims require loading applications

---

[3] Ford repeatedly relies on the concept of what "the inventors came up with." *See*, *e.g.*, Dkt. 373 at 44–45. This is irrelevant because "[n]o inquiry as to the subjective intent of the applicant or PTO is appropriate or even possible in the context of a patent infringement suit." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995).

1 | some time after boot when a new device is connected to the system.  Dkt. 373 at 44–49.

2 | For example, claim 1 of US patent 7,778,739 provides the limitation that the claimed

3 | system must "automatically move the second software application from the memory in

4 | the multiprocessor network to the particular one of the on-board processors selected by

5 | the data manager."  '137 Patent, col. 9, ll. 25–28; *see also* Dkt. 333 at 2 (listing seven

6 | independent claims).  The Special Master construed this limitation to mean "make the

7 | second software application from the memory in the multiprocessor network available in

8 | an address space for execution by the particular one of the on-board processors selected

9 | by the data manager."  Dkt. 333 at 21.  Ford argues that SYNC does not meet this

10 | limitation.  Ford, however, simply rehashes arguments that were presented to the Special

11 | Master and explicitly rejected as questions of fact pertinent to an infringement analysis.

12 |      First, Ford asserts that, at initial boot, SYNC makes every application available for

13 | use by any on-board processor.  Dkt. 373 at 45–46.  This is accomplished via the memory

14 | management concept of virtual memory and demand paging.  *Id*.  The Special Master

15 | addressed these arguments as follows:

> Both parties devote considerable attention to the use of "demand paging," including whether demand paging is a process for running an application that has already been loaded or whether some part of demand paging also includes downloading or moving pages or instructions into a working memory or a processor. While I have reviewed these arguments and the related materials, I form no opinion regarding whether demand paging, in the abstract, fits within the scope of any of the asserted claims. Likewise, I offer no opinion regarding whether Ford's particular use of demand paging (if indeed Ford actually does employ demand paging) fits within the scope of the claims. **This issue is a matter of infringement to be decided by the finder of fact**, and in any event the task at hand is to interpret the claims from the perspective of a person of ordinary skill in the

ORDER - 11

        relevant art, not to craft an interpretation that reads on (or around) specific concepts.

Dkt. 333 at 19 (emphasis added). The Court adopted this finding as a part of the Special Master's order but also recognizes that Dr. Min has provided a plausible explanation on this issue. Dkt. 404-7 at 65–70. It is improper for a court to disagree with experts at the summary judgment stage. *Crown Packaging*, 635 F.3d at 1384. Therefore, the Court denies Ford's motion on this issue.

        Ford's other argument is based on what constitutes an application. Dkt. 373 at 48–49. The Special Master addressed the parties' dispute as follows: "it is ultimately a question for the finder of fact to decide whether a sufficiently large portion of an application has been moved or downloaded such that the application has been moved or downloaded, either literally or by equivalents." Dkt. 333 at 19. Although the Court agrees that a question of fact exists, Ford cites the Special Master's order wherein he stated that "[i]n every case, the claims expressly require downloading or moving an application, not instructions, threads, or some other indicator of a subset of an application." Dkt. 33 at 18. The term "application" was not construed by the Court or the Special Master, and there is no basis to categorically exclude threads as applications under the current scope of the asserted patents.[4] While Dr. Min contends that what Ford and Microsoft identify as a thread, he considers an application, Dr. Min also admits that the issue is due to "two different terminolog[ies]." Dkt. 404-35, Min Dep. at 615–616.

---

[4] The Court recognizes that, in light of the Special Master's statement, this issue may be subject to determination as a matter of law. At this time, however, due process precludes the Court from ruling on the issue based solely on the briefs.

Usually, such a conclusory statement is insufficient to overcome a motion for summary judgment. However, accepting Dr. Min's testimony, his "terminology," and construing all inferences in favor of Medius, the Court finds that a question of fact exists on the issue of whether this minimal amount of code constitutes downloading or moving an application.[5] Therefore, the Court denies Ford's motion on this issue.

### d. Reconfiguration Process

Ford argues that claims 33, 35, and 39 of the '118 Patent are not infringed because SYNC does not implement a reconfiguration process configured to terminate an application. Dkt. 373 at 49–51. Medius counters with two arguments. First, Medius contends that, through a convoluted series of cross citations, Dr. Min disclosed a theory of infringement based on the termination of a single thread. Dkt. 404 at 49–50. Ford objects to this theory because it was never properly disclosed. Dkt. 427 at 26–27. The Court agrees. Unlike the issue in the previous section, this theory is more than a mere ambiguity. Medius's theory is based on an elaborate combination of what was disclosed for infringement of other claims and is essentially a new theory of infringement. Disclosure of such a theory for purposes of defeating summary judgment unduly prejudices Ford this late in the proceedings. Therefore, the Court will not allow or recognize this theory of infringement.

---

[5] This appears to be an issue of how many whiskers makes a beard. Once Dr. Min's terminology is further clarified as to how many instructions are actually downloaded, Ford may move for judgment as a matter of law that either the term "application" can not be construed to include this minimal amount of code or no reasonable juror could ever find that this amount of code infringes the relevant patents.

1    Second, Medius argues that SYNC infringes because a system reboot would
2 necessarily terminate an application. Dkt. 404 at 50. In support of this argument, Medius
3 cites to the portion of Dr. Min's report regarding claim 1 of the '118 Patent. *Id*. (citing
4 Exh. 3H at 9). This argument fares no better because Medius fails to cite facts in support
5 of its theory of infringement as opposed to attorney argument. It is undisputed that claim
6 1 of the '118 Patent discloses a different apparatus than claims 33, 35, and 39 of the '118
7 Patent, and Medius fails to show that an expert opinion in support of claim 1 also governs
8 claims 33, 35, or 39. Therefore, the Court grants Ford's motion as to these claims.

9              **e.     Selecting Processors**

10    Ford argues that the SYNC system does not "select a particular one of the on-
11 board processors for operating" an application, as required by claims 1, 3, 5, and 16 of
12 the '739 Patent and claims 1, 3, 5, and 16 of the '136 Patent. Dkt. 373 at 51–53. Ford's
13 argument is based on the claims being construed to mean that selecting a processor means
14 selecting another or different processor than the one currently running an application. *Id*.
15 Ford has failed to show that the limitations were construed to include such a limitation.
16 Moreover, Dr. Min has provided sufficient opinion evidence that SYNC meets the
17 limitation as construed by the Special Master. Therefore, the Court denies Ford's motion
18 on this issue.

19              **f.     Security Limitations**

20    Ford argues that SYNC does not infringe certain asserted claims because SYNC
21 does not meet the security limitations of the claims. Dkt. 373 at 54–59. The claims
22 require a feature that prevents a connected device from accessing applications within the

multiprocessor system. *See*, *e.g.*, the 7,793,136 Patent, col. 7 ll. 18–21 (last limitation of claim 1). On this issue, Medius has created a question of fact on the slimmest of facts. While Ford is correct that the majority of Medius's infringement theory is based on security protocols before a communication link is established, Dr. Min did disclose one plausible theory that security is established after a link is established. This particular theory is that the device communicates with the system, the system searches the list of stored profiles, and then either accepts the device or terminates all communication with the device. *See* Dkt. 404-7 at 174. Although buried in a larger infringement analysis, the theory was disclosed and creates a question of fact whether it is an embodiment that falls within the scope of the claim. Therefore, the Court denies Ford's motion on this issue.

The Court recognizes that apple devices may develop a secure connection in such a way that they do not infringe the patents. Ford raised this issue in a footnote. Dkt. 373 at 59 n.17. Medius responded with a citation to a document Ford produced in discovery, but that document only supports Ford's contention that Apple devices connect differently than Bluetooth devices. *See* Dkt. 427 at 34. This distinction appears to be irrelevant because questions of fact exist on the issue of whether other devices infringe the asserted claims.

        **g.    Control and Operation of Mobile Device**

Ford argues that SYNC does not infringe certain asserted claims because it does not "take over control and operation" of a connected device. Dkt. 373 at 60–63. Ford admits, however, that at the very least, certain legacy Apple devices are fully controlled by SYNC when they are connected via a USB cable. *Id*. at 61. To overcome this

1 infringement, Ford first argues that the patents are limited to wireless devices. *Id*. at 62.
2 The Court declines to read such a limitation into the patents at this point of the
3 proceeding. Ford's other argument is essentially disputing the facts of what constitutes
4 control and operation. However, it is a question of fact whether such control and
5 operation falls within the scope of the patents. Therefore, the Court denies Ford's motion
6 on this issue.

7       **2.     Lack of Written Description**

8       "[I]n ruling on a motion for summary judgment, the judge must view the evidence
9 presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S.
10 at 254. "A patent shall be presumed valid." 35 U.S.C. § 282. The party asserting
11 invalidity carries "[t]he burden of establishing invalidity of a patent or any claim
12 thereof." *Id*. Invalidity, as a defense to infringement, must be proved by clear and
13 convincing evidence. *Microsoft Corp. v. i4i Ltd.*, 564 U.S. ___, 131 S. Ct. 2238, 2242
14 (2011).

15       In this case, Ford argues that the Processor Patents should be declared invalid for
16 lack of a sufficient written description. Dkt. 373 at 63–69. In asserting this defense, Ford
17 bears the burden of showing invalidity with clear and convincing evidence. At most,
18 Ford has submitted some evidence to support its defense, but the evidence in the form of
19 an expert's opinion is far from establishing by clear and convincing evidence that there
20 are no questions of fact. Moreover, Medius has submitted its own expert's opinion that
21 the 2001 and 2002 patent applications sufficiently disclosed the subject matter of the
22 continuation patents. Therefore, the Court denies Ford's motion on this issue.

### D. Damages

Ford argues that Medius's claim for damages should be limited for failure to properly mark products and that Medius's claim for willfulness should be dismissed. Dkt. 373 at 69–82.

#### 1. Marking

Ford moves for summary judgment on the issue of whether Medius failed to properly mark a prototype that fully embodied the '260 Patent. The Court has denied Medius's motion on this issue because a question of fact exists whether Takata ever created a relevant prototype. Dkt. 483 at 7–8. Nothing related to this motion resolves that question of fact. Therefore, the Court denies Ford's motion on the issue of marking.

#### 2. Willfulness

To establish willful infringement, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Technology, LLC* ("*Seagate*"), 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). When an issue requires clear and convincing evidence, "the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the [party] has shown [willfulness] by clear and convincing evidence or that the [party] has not." *Anderson*, 477 U.S. at 255.

In this case, the parties dispute numerous issues regarding the law of willfulness and its application to the issues in this case. Despite these disputes, it is Medius's burden to submit clear and convincing evidence of willful infringement. It has failed to do so.

The Court has ruled on this issue as a matter of law where the patentee submitted evidence of more egregious acts of reckless infringement. *See Syntrix Biosystems, Inc. v. Illumina, Inc.*, Cause No. 13-5870BHS (W.D. Wash.). The mere fact that Ford may have known about Medius's patents and that the parties were engaged in some business relationship does not constitute clear and convincing evidence of recklessness. Dkt. 404 at 67–69. Moreover, the fact that Medius's lawyers sent letters to Ford alleging infringement does not establish the high likelihood of infringement. In any event, Ford has substantial legitimate defenses to both non-infringement of APA and non-infringement of SYNC. Therefore, the Court grants Ford's motion on Medius's claim for willful infringement.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Ford's motion for summary judgment (Dkt. 373) is **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 26th day of February, 2015.

BENJAMIN H. SETTLE
United States District Judge