UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EAGLE HARBOR HOLDINGS, LLC, and MEDIUSTECH, LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>FORD MOTOR COMPANY,<br><br>　　　　　　Defendant. | CASE NO. C11-5503 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART COUTERCLAIM DEFENDANTS' MOTION FOR CLARIFICATION |

This matter comes before the Court on Counterclaim Defendants Eagle Harbor Holdings, LLC, and Dan Preston's ("Counterclaim Defendants") motion for clarification of scope and elements of trade secret counterclaim (Dkt. 546). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On February 24, 2012, Plaintiffs Eagle Harbor Holdings, LLC, and MediusTech, LLC ("Plaintiffs") filed a second amended complaint alleging Defendant Ford Motor

Company ("Ford") infringes numerous patents. Dkt. 61. On July 16, 2014, Ford filed an amended answer and asserted numerous counterclaims, including a counterclaim for misappropriation of Ford's trade secrets and a counterclaim against Counterclaim Defendants for a violation of Washington's Uniform Trade Secrets Act, RCW Chapter 19.108 ("UTSA"). Dkt. 329, ¶¶ 75-105.

On December 19, 2014, Eagle Harbor filed a motion for summary judgment on Ford's counterclaim for misappropriation of trade secrets. Dkt. 392. On February 11, 2015, the Court denied the motion. Dkt. 482. On March 2, 2015, The Court held a pretrial conference and Counterclaim Defendants asserted that, despite the order from the Court, the parties disagree as to the scope of Ford's missappropriation claim. Dkt.544. The Court requested supplemental briefing on the issue. On March 3, 2015, Counterclaim Defendants filed the instant motion. Dkt. 546. On March 4, 2015, Ford responded. Dkt. 551.

## II. DISCUSSION

As a threshold matter, Ford argues that the Court should reject Counterclaim Defendants' motion because it "largely rehashes the same arguments that this Court correctly rejected on summary judgment." Dkt. 551 at 2. Counterclaim Defendants, however, argue that the parties have a genuine disagreement regarding the interpretation of the Court's order denying summary judgment. Dkt. 546 at 7. The Court agrees with the Counterclaim Defendants that a dispute exists because the disputed instructions, as well as Ford's requested relief, are beyond the issues that the Court considers to be remaining in this action. Moreover, clarification may assist Ford in properly weighing

the benefits of pursuing the counterclaim with the detriments of opening the door to the parties' past business relationship.

The parties disagree on the scope of damages and the elements of the misappropriation claim. With regard to monetary damages, Ford alleges three types of harm, which are as follows:

> Counterclaim Defendants have been unjustly enriched by their misappropriation of Ford's trade secrets, including, without limitation, receiving $250,000 from Invotronics, Inc. ("Invotronics").
> Counterclaim Defendants have also been unjustly enriched by receiving a several million dollar interest-free loan from Northwater Intellectual Property Fund L.P. ("Northwater") to fund Counterclaim Defendants' patent litigation.
> Should Plaintiffs obtain judgment in their favor, despite the absence of sufficient evidence to support a finding of infringement and the presence of substantial evidence of invalidity, such judgment would be harm and damages caused by Plaintiffs' unlawful misappropriation of Ford's trade secrets.

Dkt. 551 at 3.

With regard to the Invotronics license, the Court found that a question of fact exists for trial and that Counterclaim Defendants bear the burden of proving "why any particular portion of this license was not based on Ford's information." Dkt. 482 at 5. Counterclaim Defendants argue that Ford must prove that the license was obtained "at the expense" of Ford. Dkt. 546 at 10 (citing *Young v. Young*, 164 Wn. 2d 477, 484 (2008)). Counterclaim Defendants initially argued that, even if the license was based on Ford's information, it was not obtained at the expense of Ford because Ford would never have attempted to obtain this particular license. Dkt. 434 at 9–10. In other words, Ford had no interest in licensing technology to Invotronics. While this is a valid argument, there is

another formulation of the rule which provides that Ford is entitled to damages if, as a result of the misappropriation, Counterclaim Defendants received money or benefits that in justice and fairness belong to Ford. 6A Wash. Prac., Pattern Jury Instr. Civ. WPI 351.01 (6th ed.); *Bailie Comm'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 160 (1991).

The Court finds that the "justice and fairness" phrase is applicable to this case because, under the other formulation, there would essentially be no harm if there was no foul. In other words, an entity could misappropriate trade secrets at will as long as it was able to show that the other company would never have sought the business that the misappropriating party obtained based in whole or in part on the trade secrets. This seems illogical, and unless the parties find a binding authority factually similar and with a contrary holding, the Court will allow Ford's claim for the Invotronics damages under the "justice and fairness" formulation.

With regard to Ford's assertion that they are entitled to patent infringement damages, the Court must further clarify its ruling that Ford has asserted a proper claim to "the extent that Ford's claim is limited to the unauthorized acquisition of trade secrets . . . ." Dkt. 482 at 6. Ford has asserted a circular theory of damages beginning with Counterclaim Defendants acquiring Ford's trade secrets, obtaining patent rights based on those secrets, and ending with enforcement of those rights in this infringement litigation. This theory is either preempted by federal law or irrelevant to the infringement action. First, if Ford's technology is within the scope of Counterclaim Defendants' patent claims, then Ford should have brought an inequitable conduct claim based on inventorship.

"[T]he field of federal patent law preempts any state law that purports to define rights based on inventorship." *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999) ("*Cyanamid I*"). Later, in a return to the Federal Circuit, the court upheld the district court's conclusion that the patent holder was not the inventor of the claimed subject matter. *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1308–09 (Fed. Cir. 2003) ("*Cyanamid II*"). Ford has not raised this issue as an affirmative defense. *See* Dkt. 536 at 80–97 (Ford's proposed verdict form). Moreover, in *Cyanamind II*, the Federal Circuit upheld an award of incremental profits from the patent holder to the true inventor based on the patent holder's enforcement of the patent against other companies. 342 F.3d at 1311–1312. There is an absence of authority for the situation before the Court, an allegation that the patent is being enforced against either the true inventor or, at least, a co-inventor. In such a case, the claim is "patent like" and an "an attempt to enforce property rights . . . ." *Id*. at 1306. Therefore, the Court excludes any evidence or argument based on the theory that Ford's technology is within the scope of any asserted patent.

       Second, if the technology is not within the scope of any asserted patent claim, then it is not part of this infringement action because an entity may only infringe what is claimed. It is a "bedrock principle" of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004)). Therefore, the Court excludes any evidence or argument that Ford is entitled to damages based on the theory that, even if

1   the trade secrets are not technically within the scope of any asserted patent, Ford is
2   entitled to damages for this infringement action.
3       With regard to the loan, the Court will exclude any evidence or argument related
4   to this theory.  First, it is questionable whether a reasonable juror could find that a loan
5   could be considered a benefit when by definition it must be repaid.  But, in no case could
6   a loan to Counterclaim Defendants reasonably be considered a benefit that in justice and
7   fairness belongs to Ford.  Second, Ford concedes that the loan was obtained to "fund
8   Counterclaim Defendants' patent litigation."  Dkt. 551 at 3.  The Court, however,
9   concludes that funds for the patent litigation fail for the same reason that funds
10  conceivably obtained from the litigation fail.  Unless Ford can prove inventorship, they
11  have no right to any benefit Counterclaim Defendants have obtained on the asserted
12  patents.  Therefore, the Court excludes this theory of damages.

### III. ORDER

14      Therefore, it is hereby **ORDERED** that Counterclaim Defendants' motion for
15  clarification of scope and elements of trade secret counterclaim (Dkt. 546) is **GRANTED
16  in part** and **DENIED in part** as stated herein.
17      Dated this 5th day of March, 2015.

BENJAMIN H. SETTLE
United States District Judge