The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EAGLE HARBOR HOLDINGS, LLC, and MEDIUSTECH, LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>*Defendant.* | Case No. 3:11-cv-05503-BHS<br><br>**PLAINTIFFS' TRIAL BRIEF** |

*Plaintiffs' Trial Brief*
*Case No. 3:11-cv-05503-BHS*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
T(206) 516-3880/F(206) 516-3883

## I. INTRODUCTION

This case is set for a jury trial beginning March 10, 2015. At the Pretrial Conference the Court stated that each side shall have 20 hours of jury time for its opening statement, presentation of evidence, and closing arguments. Although Plaintiffs and Ford both requested 25 hours per side at the Pretrial Conference, Plaintiffs have evaluated the witnesses and evidence further, particularly in light of the Court's ruling on the permissible scope of Ford's trade secret claim, and now believe that 20 hours per side is sufficient.

This case involves Defendant Ford Motor Company's infringement of numerous Eagle Harbor patents that apply to automotive infotainment and parking assistance systems. Eagle Harbor has narrowed the list of asserted patents and claims for trial to five patents and eight claims: Claim 29 of U.S. Patent No. 6,615,137; Claim 9 of U.S. Patent No. 7,146,260; Claims 1 and 3 of U.S. Patent No. 7,778,739; Claim 1 of U.S. Patent No. 8,006,119; and Claims 1, 6, and 10 of U.S. Patent No. 8,027,268 (hereinafter referred to by their last three digits).

The evidence will show that Ford induces infringement of Claim 29 of the '137 patent by its customers using Ford's Active Park Assist system ("APA"), and Ford directly infringes the other asserted claims by making and selling vehicles with the SYNC infotainment system ("SYNC"). Eagle Harbor's predecessor Medius, Inc. shared its technology with Ford and notified Ford of its patents in a series of contacts from 2001, when the first patent applications were filed, to 2006, when Ford began work on SYNC. For several more years Medius continued to work with tier 1 automotive suppliers in an effort to work with Ford. These facts are relevant to show notice to Ford and Ford's knowledge of the '137 patent for purposes of inducement liability; to show Ford's interest in the technology as secondary evidence of non-obviousness; to defend against Ford's trade secret claim; and to rebut disparaging themes that Ford has pursued with multiple witnesses that Medius was a "failed" business and a patent assertion entity that never tried to develop products.

The inventions of the asserted claims are fundamental to SYNC and APA, and those systems have been tremendously successful. Ford has sold more than 10 million SYNC units

*Plaintiffs' Trial Brief*  
*Case No. 3:11-cv-05503-BHS*  
*Page 1*

SUSMAN GODFREY L.L.P.  
1201 Third Avenue, Suite 3800  
Seattle, WA 98101-3000  
T(206) 516-3880/F(206) 516-3883

and nearly 400,000 APA units through 2014. And Ford has used SYNC and APA to build its brand reputation as an innovator in infotainment and advanced driver assistance systems.

Ford disputes infringement and will attempt to prove that the patents are invalid, but the evidence of infringement is convincing and Ford will not be able to carry its burden of proving invalidity by clear and convincing evidence. Ford also will not prevail on its trade secrets misappropriation counterclaim against Eagle Harbor and patent co-inventor Dan Preston. There is no evidence that they ever misappropriated a Ford trade secret, were unjustly enriched as a result, or actually damaged Ford in any way. The counterclaim is nothing more than a retaliatory effort to smear Eagle Harbor and Mr. Preston and distract the jury.

## II.  PROCEDURAL BACKGROUND

Eagle Harbor filed its original complaint on June 30, 2011, and an amended complaint on February 24, 2012. Dkts. 1, 61. On November 13, 2013, and September 22, 2014, the Court issued claim construction orders based on reports of the Special Master. Dkts. 184, 345. On July 16, 2014, Ford amended its pleading to add its trade secrets counterclaim. Both sides filed summary judgment and *Daubert* motions, resulting in the Court's orders dismissing Ford's inequitable conduct defense; allowing Ford's counterclaim to proceed in substantially narrowed form; dismissing Eagle Harbor's willfulness claim; and allowing nearly all of Eagle Harbor's patent infringement claims to go to trial. Dkts. 482, 483, 530.

At the Pretrial Conference on March 2, 2015, the Court issued rulings on the parties' motions in limine, denied Eagle Harbor's *Daubert* motions, and ordered a hearing on Ford's *Daubert* motion.[1] The Court and the parties also discussed various trial stipulations and procedures as set forth in the Joint Pretrial Statement and the Pretrial Conference transcript. Dkts. 537, 543. The parties have filed a Joint Set of Jury Instructions, having reached agreement on a set of proposed preliminary instructions and 41 proposed final jury instructions. Dkt. 533. The parties' Joint Statement of Disputed Jury Instructions and Verdict Forms includes 12 disputed instructions, half relating to the remaining scope and nature of Ford's counterclaim at

---

[1] As set forth *infra*, Plaintiffs seek clarification of the Court's ruling on one of the motions in limine.

*Plaintiffs' Trial Brief*
*Case No. 3:11-cv-05503-BHS*
*Page 2*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
T(206) 516-3880/F(206) 516-3883

trial. Dkt. 536. Given the Court's Order of March 5, 2015, on counterclaim defendants' motion for clarification (Dkt. 553), Eagle Harbor expects that the parties will confer further and that additional disputes now can and should be resolved, as discussed later in this trial brief.

### III. FACTS

The evidence will show that Dan Preston is an engineer and inventor who founded Airbiquity, a Seattle company that developed and licensed automotive telematics technologies, including to GM (OnStar) and Ford. In late 2000, Mr. Preston left Airbiquity to pursue new technologies and ideas. He and his colleague at Airbiquity, Robert Pierce Lutter, co-founded Medius, Inc. and proceeded to invent and patent numerous technologies applicable to the automotive industry, including applications for infotainment and Advanced Driver Assistance Systems ("ADAS") like collision avoidance and parking assistance that rely on sensor fusion technology. They conceived the '260 and '137 inventions by the end of March 2001 and filed the respective applications on April 24 and June 26, 2001. By July 2001 they had also conceived what became U.S. Patent No. 7,178,049 (unasserted), which was filed on April 24, 2002, and is the parent of a patent in suit, the '119 patent. The other two patents in suit—the '739 patent and the '268 patent—are continuations of the '260 patent.

The patents in suit cover two types of automotive technology. The '137 patent relates to improving driver and passenger safety by avoiding collisions. It teaches the use of sensors to measure the kinematic states of objects around a vehicle. Those kinematic states are compared and, if a collision is likely to occur, a warning is automatically generated to notify the driver. The patent discloses several embodiments, including one relating to parking. *See* '137 patent, FIGS. 11 and 12, 6:42-60.

The second set of patents ("the infotainment patents") includes the '260 patent and the '739 and '268 continuations. The '260 specification also incorporates by reference unasserted U.S. Patent No. 6,629,033. The specification of the other infotainment patent in suit, the '119 patent, incorporates by reference the '260 and '033 specifications. The '260 specification discloses vehicle multiprocessor systems that include dynamic configuration to perform various

*Plaintiffs' Trial Brief*
Case No. 3:11-cv-05503-BHS
Page 3

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
T(206) 516-3880/F(206) 516-3883

tasks and enable detecting, connecting, and integrating new devices or processors into the system. '260 patent at 1:59-67. FIG. 1 shows a preferred embodiment: "a car **12** that includes a car multiprocessor system **8** having multiple processors **14**, **16**, **18** and **20**," '260 patent at 2:20-21. The '260 and incorporated '033 patent specifications disclose numerous embodiments and details about integrating new devices and their processors into a vehicle's multiprocessor system that includes software applications corresponding to the applications on the new device, enabling use of the vehicle's own human machine interfaces ("HMIs") to control and operate the device to perform tasks like making a phone call or playing a song. The '119 specification discloses additional inventions that build on those disclosed in the '260 patent.

From the inception of Medius, Inc. in 2001, the inventors began seeking opportunities throughout the automotive industry to develop and implement their inventions, including those claimed in their patent applications. They helped Ford develop a Request for Information ("RFI") for a concept car that included infotainment and ADAS technology, and they submitted a formal proposal in response to the RFI. This resulted in numerous meetings and other communications between Medius personnel and Ford personnel.

By 2002 Medius was working with Motorola, a tier 1 auto industry supplier, on a project for Ford involving sensor fusion and ADAS technology. And Medius began making direct contacts with Ford that culminated in meetings in September and October of 2002. In the latter meeting, Medius presented a video demonstration of its sensor fusion technology to several Ford employees, including Jeff Rupp and Trent Yopp, who expressed interest in learning more about Medius's technology and seeing an in-vehicle demonstration. Medius began working on that demonstration but ran out of money before the end of 2002 and was unable to complete a driving demonstration until a few years later. Without money Medius also had to stop paying employees by late 2002. Some employees left the company, but employees who could afford to do so continued to work without pay because they believed in Medius's technology.

Although Ford has maligned Medius as a "failed" company, Dan Preston and Medius did not give up. They scraped by for years, continuing to seek business and investors and to

*Plaintiffs' Trial Brief*  
*Case No. 3:11-cv-05503-BHS*  
*Page 4*

SUSMAN GODFREY L.L.P.  
1201 Third Avenue, Suite 3800  
Seattle, WA 98101-3000  
T(206) 516-3880/F(206) 516-3883

communicate with Mr. Rupp and numerous others at Ford, presenting information about Medius's technology and exploring ways in which Medius could work with Ford. Medius provided Ford with presentations that referenced Medius's patents, and in 2003 Mr. Preston sent emails directly to Mr. Rupp and another Ford employee named Ron Miller after the '137 patent issued that included a hyperlink to the patent itself. Mr. Rupp advised Medius to work with tier 1 suppliers that could provide integrated systems to Ford that included Medius technology, but also suggested that Medius and Ford could work together directly.

Mr. Preston and Medius took that advice to heart by developing relationships with tier 1 suppliers including Magna and Autoliv, and they also reached out to Volvo, which was owned by Ford at the time but managed separately. Mr. Rupp was eager to learn about Medius's contacts with Volvo and even expressed concern that Medius was competing with his group at Ford in offering technology to Volvo. Medius shared its information with Mr. Rupp too.

In 2005, Ford held a meeting with Medius and one of the tier 1 suppliers Medius was working with, and it became clear that the relationship between Medius and Ford was a one-way street: Medius would provide extensive information about its technology, its plans, and its partners, while Ford provided little in return. By 2006 Ford was no longer meeting with Medius, but Medius continued to work with tier 1 suppliers who had worked with Ford, including Invotronics, on projects and proposals to supply systems and technology to Ford.

The '260 patent issued on December 5, 2006, and earlier that year Ford began developing SYNC together with Microsoft. Ford sold the first vehicles including SYNC in July 2007. SYNC is a factory-installed, in-vehicle communications and entertainment system that enables users to connect and integrate personal electronic devices, including cell phones and mp3 players, with SYNC via Bluetooth wireless connections or USB wired connections, and then use SYNC software applications corresponding to the applications on the devices to control and operate the devices through the vehicle's HMIs. Ford has been infringing the '260 patent since SYNC was first released, and Ford began infringing the '739, '119, and '268 patents as they issued, on August 17, 2010, August 23, 2011, and September 27, 2011, respectively.

*Plaintiffs' Trial Brief*  
*Case No. 3:11-cv-05503-BHS*  
*Page 5*

SUSMAN GODFREY L.L.P.  
1201 Third Avenue, Suite 3800  
Seattle, WA 98101-3000  
T(206) 516-3880/F(206) 516-3883

Ford was first informed of the '137 patent, in 2003 when it issued. Ford began inducing infringement of the '137 patent when it began selling vehicles with APA in July 2009 and instructing its customers through owner manuals on how to use the system with the intent and knowledge that they would use APA in the manner instructed.

Medius notified Ford that it was infringing Medius's patent portfolio by letter on January 16, 2009, and provided additional details in letters to Ford later in 2009 and 2010.

In the spring of 2010, near insolvency, Medius was restructured to provide an opportunity for new financing. Eagle Harbor was formed and acquired Medius's assets, including its patents, in exchange for assuming Medius's outstanding debts and obligations. Although Ford has relied upon the transaction as evidence of the value of the patents in suit, no money changed hands between Medius and Eagle Harbor (both of which are majority owned by Mr. Preston) and even the nominal purchase price of $12 million that is stated in the documentation for the transaction merely reflects the sum of the various debts and obligations assumed or addressed by Eagle Harbor and bears no relationship to the value of the patents. Eagle Harbor filed suit against Ford in 2011.

## IV. LEGAL AND EVIDENTIARY ISSUES

The parties have presented numerous legal and evidentiary issues to the Court already in summary judgment motions, *Daubert* motions, motions in limine, and proposed jury instructions. Here Eagle Harbor will focus on a few important issues that it requests the Court resolve at the hearing on March 9 before trial begins.

### A. Stipulation for the Jury Regarding Medius, Inc., Eagle Harbor Holdings, LLC, and MediusTech, LLC

At the beginning of the Pretrial Conference, the Court raised its concern that the jury might be confused by the multiple entities associated with the patents in suit and invited a stipulation to be read to the jury. The parties agreed to prepare one. Plaintiffs proposed several alternatives to Ford, but Ford rejected all of them. Accordingly, Plaintiffs propose the following:

> During this trial the lawyers, witnesses, and I will refer to several companies associated with the patents in suit, including Medius, Inc., Eagle Harbor

*Plaintiffs' Trial Brief*  
*Case No. 3:11-cv-05503-BHS*  
*Page 6*

SUSMAN GODFREY L.L.P.  
1201 Third Avenue, Suite 3800  
Seattle, WA 98101-3000  
T(206) 516-3880/F(206) 516-3883

Holdings, LLC, and MediusTech, LLC. Medius, Inc. was the original assignee of some of the patents in suit, and Eagle Harbor is the current owner of all the patents in suit. MediusTech is a subsidiary of Eagle Harbor and is the exclusive licensee of the patents in suit in the field of use of automobiles. The Plaintiffs in this case are Eagle Harbor and MediusTech, and during this trial they will often be referred to together as Eagle Harbor.

### B. Juror Notebooks and Claim Constructions

The Court and the parties have agreed to provide juror notebooks that contain the relevant patents (which should include the '033 patent specification incorporated by reference in four of the patents in suit), the Court's claim constructions, and an agreed glossary of patent terms. Unfortunately, the parties have not reached agreement on the claim constructions to include in the notebooks. The parties' respective proposals are reflected in charts in their proposed final jury instructions on claim construction. Dkt. 536 at 11-19. Plaintiffs' proposal includes the claim constructions adopted by the Court and only those constructions. Ford's proposal includes not only the Court's constructions but also language taken from the Special Master's report that is not part of the constructions themselves or the Court's orders, including one claim term that the Court determined did not need to be construed ("take over control and operation"). *See* Dkt. 536 at 14-17 (Ford's proposal, including language quoted from Special Master's reports at Dkt. 333 at 17 and 18-19, and Dkt. 165 at 15-16, 17, 51-52, and 71).

In ruling on Plaintiffs' motion in limine to preclude reference to orders of the Court or the Special Master regarding claim construction at the Pretrial Conference, the Court stated that "[g]enerally, explicit references to prior rulings should not be made," and "[t]here should be no reference to the Special Master's report to the Court, for these were not orders. Dkt. 543 (Tr. at 5-6). In light of those statements, Plaintiffs proposed to Ford that Plaintiffs' chart of claim constructions be included in the juror notebooks, but Ford has yet to respond to that proposal. Based on the Court's ruling at the Pretrial Conference and the arguments Plaintiffs included in the Joint Statement of Disputed Jury Instructions, Dkt. 536 at 18, Plaintiffs submit that their version of the chart of claim constructions should be included in the juror notebooks.[2]

---

[2] As reflected in the Joint Statement of Disputed Jury Instructions, the parties' proposed claim construction instructions also differ in their preliminary language preceding the chart of constructions. *See* Dkt. 536 at 11, 14,

*Plaintiffs' Trial Brief*  
*Case No. 3:11-cv-05503-BHS*  
*Page 7*

SUSMAN GODFREY L.L.P.  
1201 Third Avenue, Suite 3800  
Seattle, WA 98101-3000  
T(206) 516-3880/F(206) 516-3883

**C. Filing of Continuation Patents and Amending Claims to Read On Ford Products.**

Plaintiffs filed a motion in limine, no. 7, to preclude Ford from offering evidence or argument that particular patent claims were added or amended based on Plaintiffs' receipt of Ford's alleged trade secrets, on the ground that Ford failed to timely identify or disclose any such claims. Dkt. 466 at pp. 5-7. The Court referenced the motion at the Pretrial Conference but did not decide it. Dkt. 543 (Tr. at 8). Plaintiffs believe that such evidence is excluded in light of the Court's March 5 order holding that Ford cannot pursue a damages theory that Plaintiffs improperly wrote patent claims based on Ford's trade secrets. Dkt. 553 at 4-6. But if Ford is still to be permitted to present evidence that patent claims were added or amended based on Ford's trade secrets, then Plaintiffs respectfully request a ruling on their motion in limine.

Patentees have a right to file continuation patents and add and amend claims based on products that enter the market such as Ford SYNC. *See, e.g.*, *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988). Plaintiffs have proposed a final jury instruction to that effect. Dkt. 536 at 64, 66. In accordance with the Court's ruling on Plaintiffs' motion in limine no. 4, Dkt. 543 (Tr. at 7), if Ford is allowed to introduce any evidence or argument suggesting that adding or amending claims to read on its products is improper in any way, Plaintiffs request that the Court give the jury a limiting instruction matching Plaintiffs' proposed final jury instruction whenever Ford introduces such evidence or argument.

The filing of continuation claims also bears on Ford's written description defense. Ford cannot contend that the continuation claims are any more likely than the original claims to fail the written description requirement. *See Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1337 (Fed. Cir. 2006) ("Nothing about a continuation or divisional patent makes it inherently more likely to fail the written description requirement or changes the burden of proof with respect to proving invalidity."). Ford should not be permitted to argue or suggest otherwise to the jury.

**D. Non-Publication Prior Art**

---

18. Plaintiffs believe that dispute does not necessarily need to be resolved before trial because only the chart of constructions needs to be included in the juror notebooks.

*Plaintiffs' Trial Brief*  
*Case No. 3:11-cv-05503-BHS*  
*Page 8*

SUSMAN GODFREY L.L.P.  
1201 Third Avenue, Suite 3800  
Seattle, WA 98101-3000  
T(206) 516-3880/F(206) 516-3883

Ford's invalidity expert relies on multiple prior art references that are neither patents nor printed publications but products, including Clarion Auto PC, Delphi Communiport, and Lincoln Aviator VCSI. Ford has agreed to inform Plaintiffs of its reduced list of the prior art references it will actually rely upon for anticipation and obviousness by March 8, but to the extent Ford tries to rely on products, it must prove by clear and convincing evidence not only that the products anticipate or render obvious the asserted claims by clear and convincing evidence, but must also prove that they were in fact invented prior to the claimed inventions and that they were used, sold, or offered for sale in a manner reasonably accessible to the public.

### E. Jury Instructions

At the Pretrial Conference the Court expressed concern about the large volume of proposed jury instructions. The parties submitted 41 agreed proposed jury instructions and submitted a Joint Statement of Disputed Jury Instructions that includes 12 disputed instructions.[3] Dkts. 533, 536. Plaintiffs will not re-argue its positions on the disputed instructions here, but will address a few outstanding issues.

Half of the disputed instructions pertain to Ford's trade secrets counterclaim. In light of yesterday's Order Granting in Part and Denying in Part Counterclaim Defendants' Motion for Clarification, Dkt. 553, Plaintiffs proposed to Ford that it should now agree with Plaintiffs' proposed disputed instructions 7, 8, and 9. *See* Dkt. 536 at 47-59. As of the time this Trial Brief was filed Ford had not yet agreed to this proposal. But Plaintiffs will continue to make efforts to reach agreements with Ford and eliminate disputes over jury instructions.

In particular, there are three patent damages instructions that Plaintiffs believe the Court can dispense with entirely. *See* Dkt. 536 at 34-46. In each case only one party is advocating that the instruction be given at all, while the other party is offering a different instruction only in the alternative in case the Court decides that the instruction is necessary. Two of the instructions relate to particular Georgia-Pacific factors that are already addressed in the general instruction addressing all of those factors, and the additional instructions are unnecessary. *Compare* Joint

---

[3] Disputed instruction no. 1 is the claim construction instruction already discussed above.

*Plaintiffs' Trial Brief*  
*Case No. 3:11-cv-05503-BHS*  
*Page 9*

SUSMAN GODFREY L.L.P.  
1201 Third Avenue, Suite 3800  
Seattle, WA 98101-3000  
T(206) 516-3880/F(206) 516-3883

Instruction No. 36 ("Damages-Reasonably Royalty-Relevant Factors"), factors 2 and 13, Dkt. 533 at 71, 72, with Disputed Jury Instruction Nos. 4 and 5, Dkt. 536 at 34-42. The third damages instruction, proposed by Ford, addresses induced infringement, but it need not and should not be given because it is not required by law and in fact conflicts with Federal Circuit law. *See* Dkt. 536 at 43-45.

### F. Agreements in Limine

As the Court is aware, the parties negotiated agreements on a number of potential motions in limine both before and after filing their motions in limine. As of the filing of this brief, however, Ford has not yet authorized filing of those agreements. In the event that Ford does not do so before trial begins, Plaintiffs intend to raise any outstanding in limine issues before trial that Plaintiffs did not pursue previously based on Ford's agreement to them.

## V. WITNESS ISSUES

Ford has informed Plaintiffs that Paul Mascarenas, a Ford employee whom Plaintiffs are calling adverse as part of their case-in-chief, is not available until March 17. Plaintiffs are willing to accommodate his schedule, but in light of the Court's time limitations, Plaintiffs may finish their case-in-chief on Friday, March 13, 2015, and do not want to rest until they have the opportunity to examine Mr. Mascarenas, even if Ford begins to present its own case before that happens. If Plaintiffs do finish before March 17, Ford has agreed that it will not move for JMOL on the basis that Plaintiffs had not yet received his testimony during its case-in-chief, and Plaintiffs also have requested a commitment from Ford that they will not be limited to the scope of Ford's direct examination. Ford has not yet responded to the latter request.

Finally, Ford has unrealistically identified 11 live witnesses for trial. That fails to give Plaintiffs fair notice of the witnesses who will actually testify, and two witnesses clearly lack relevant testimony and should be excluded. Bill Taylor is the author of a European patent Ford cites as prior art; his testimony is irrelevant to the contents of the reference. Robert Schumacher is a fact witness about Delphi Communiport, but Ford's expert Mr. Andrews did not rely on his testimony beyond what is in the documents he reviewed.

*Plaintiffs' Trial Brief*
Case No. 3:11-cv-05503-BHS
Page 10

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
T(206) 516-3880/F(206) 516-3883

Dated: March 6, 2015    **SUSMAN GODFREY LLP**

By: */s/ Floyd G. Short*
    Parker C. Folse III (WSBA No. 24895)
    Ian B. Crosby (WSBA No. 28461)
    Floyd G. Short (WSBA No. 21632)
    Genevieve Vose Wallace (WSBA No. 38422)
    Jordan Connors (WSBA No. 41649)
    E. Lindsay Calkins (WSBA No. 44127)
    1201 3rd Avenue, Suite 3800
    Seattle, WA 98101
    Tel: (206) 516-3861
    Fax: (206) 516-3883
    E-Mail: pfolse@susmangodfrey.com
           icrosby@susmangodfrey.com
           fshort@susmangodrey.com
           gwallace@susmangodfrey.com
           jconnors@susmangodfrey.com
           lcalkins@susmangodfrey.com

*Counsel for Plaintiffs*

*Plaintiffs' Trial Brief*
*Case No. 3:11-cv-05503-BHS*
*Page 11*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
T(206) 516-3880/F(206) 516-3883

# CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who have registered for electronic notifications, and I caused the foregoing to be served upon the following by email:

| | |
|---|---|
| Duncan E. Manville<br>**Savitt Bruce & Willey LLP**<br>1425 Fourth Ave, Suite 800<br>Joshua Green Building<br>Seattle, WA 98101<br>Tel: (206) 749-0500<br>Fax: (206) 838-2661<br>Email: dmanville@sbwllp.com | Michael J. Summersgill<br>Sarah Beigbeder Petty<br>Rebecca Izzo<br>Michaela P. Sewall<br>Michael Heyison<br>Jonathan Woodard<br>Alexandra Amrhein<br>Gregory P. Teran<br>William Lee<br>**Wilmer Cutler Pickering Hale & Dorr LLP**<br>60 State Street<br>Boston, MA 02109<br>Tel: (617) 526-6000<br>Fax: (617) 526-5000<br>Emails:<br>michael.summersgill@wilmerhale.com<br>sarah.petty@wilmerhale.com<br>rebecca.izzo@wilmerhale.com<br>michaela.sewall@wilmerhale.com<br>michael.heyison@wilmerhale.com<br>jonathan.woodard@wilmerhale.com<br>alexandra.amrhein@wilmerhale.com<br>gregory.teran@wilmerhale.com<br>William.Lee@wilmerhale.com |
| Todd C. Zubler<br>Grant K. Rowan<br>Elise Miller<br>**Wilmer Cutler Pickering Hale & Dorr LLP**<br>1875 Pennsylvania Avenue NW<br>Washington, DC 20006<br>Tel: (202) 663-6636<br>Fax: (202) 663-6363<br>Emails: grant.rowan@wilmerhale.com<br>todd.zubler@wilmerhale.com | David Smith<br>**Wilmer Cutler Pickering Hale & Dorr LLP**<br>950 Page Mill Road<br>Palo Alto, CA 94304<br>Tel: (650) 858-6168<br>Fax: (650) 858 6100<br>Emails: david.smith@wilmerhale.com |

*Certificate of Service*
*Case No. 3:11-cv-05503-BHS*
*Page 1*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

| | |
|---|---|
| elise.miller@wilmerhale.com | |
| Cosmin Maier<br>**Wilmer Cutler Pickering Hale & Dorr LLP**<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Tel: (212)230-8816<br>Fax: (212) 230 8888<br>Emails: cosmin.maier@wilmerhale.com | Frank A. Angileri<br>John S. LeRoy<br>Amy C. Leshan<br>Johnathan D. Nikkila<br>**Brooks Kushman P.C.**<br>1000 Town Center, 22nd Floor<br>Southfield, MI 48075<br>Tel:  (248)358-4400<br>Fax: (248) 358-3351<br>Emails: fangileri@brookskushman.com<br>            jleroy@brookskushman.com<br>            aleshan@brookskushman.com<br>            jnikkila@brookskushman.com |
| Peter T. Petrich<br>**DAVIES PEARSON P.C.**<br>920 Fawcett Ave.<br>P.O. Box 1657<br>Tel: (253) 620-1500<br>Fax: (253) 572-3052<br>Email: ppetrich@dpearson.com | |

/s/ Floyd G. Short

*Certificate of Service*
*Case No. 3:11-cv-05503-BHS*
*Page 2*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883